```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSLYVANIA

KURTIS E. ARMANN,              )
                               )
       Petitioner,             )
                               )
       vs.                     )      C.A. No. 04-118E
                               )
WARDEN, FCI McKEAN,            )      Judge McLaughlin
                               )      Magistrate Judge Baxter
       Respondent.             )
                               )      (electronic filing)
                               )
```

**RESPONDENT'S MOTION TO UNSEAL AND TO STRIKE PLAINTIFF'S EXHIBITS**

AND NOW, comes Respondent, by his attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christy Wiegand, Assistant U.S. Attorney for said district, and respectfully files the following Motion to Unseal and to Strike documents provided by Plaintiff to the Court at the May 11, 2005 hearing in this matter.

**I.   INTRODUCTION**

Petitioner Kurtis E. Armann ("Petitioner"), has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his military conviction and sentence. Petitioner is challenging his general court-martial conviction and sentence and seeks release from illegal confinement.

In 1999, Petitioner, a former member of the United States Army, was convicted in a court-martial in Germany on the following charges: attempted premediated murder with a firearm; conspiracy to commit premediated murder; violation of a lawful general regulation which prohibited the possession of a weapon

with a "silencer" and required registration of all weapons for U.S. military personnel stationed in Germany; and unlawful use of marijuana, in violation of Articles 80, 81, 92, 112a, Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 880, 881, 892, and 912a (2002), respectively.

Petitioner was tried by a general court-martial. After he pled guilty to all of the above-noted charges, he was found guilty of all charges on March 19, 1999 and sentenced to 38 years confinement, forfeiture of all pay and allowances, and a dishonorable discharge. By pre-trial agreement, the sentence was modified not to exceed 35 years of confinement.

## II.   PROCEDURAL POSTURE

On April 22, 2004, Petitioner filed the instant Petition challenging his military conviction and sentence and seeking release from illegal confinement. Respondent was served with the Petition on August 11, 2004 and filed a Response on September 30, 2004. See Docket Nos. 7, 10. Petitioner also filed voluminous exhibits in support of his Petition. See, e.g., Docket Nos. 2, 14-16. On March 22, 2005, Petitioner filed a Motion to Compel Performance and to submit additional information to the Court. That same day, he also filed a Motion to Amend his Claim for Relief, and an Affidavit in support of his Motions to Compel and Amend. See Docket Nos. 19-21.

On April 11, 2005, the Court granted Petitioner's Motion to Amend his claim for relief in pending writ of habeas corpus, and ordered Petitioner to serve a copy of the Amendment upon Respondent on or before April 28, 2005.  To date, Respondent has not been served with a copy of Petitioner's Amendment to his Petition.

On April 8, 2005, Petitioner filed a Motion for Evidentiary Hearing, as well as a Brief in support thereof.  <u>See</u> Docket Nos. 22-23.  On April 19, 2005, the Court issued an Order setting a hearing for May 11, 2005 regarding: (1) Petitioner's Motion to Compel Performance and to submit additional information to the Court; and (2) Petitioner's Motion for an Evidentiary Hearing.  <u>See</u> Docket Nos. 26, 27.

On May 11, 2005, the Court held a hearing in this matter.  At the hearing, the Court granted Petitioner's request to have counsel appointed, and placed certain documents provided to the Court by Petitioner under seal.  Respondent now moves to unseal and to strike the documents that Petitioner provided to the Court at the May 11, 2005 hearing.

**III.   <u>FACTS</u>**

During the May 11, 2005 hearing, Petitioner asked the Court to view certain documents in camera, and to withhold such documents from the Respondent.  Petitioner indicated that he had been unable to review the documents previously because of "the

policy concerning mail" at the facility where he was incarcerated. Magistrate Baxter then indicated that she would review the documents with the Petitioner, outside the presence of Respondent. During that review, the transcript reflects that Magistrate Baxter questioned Petitioner regarding how he came to possess the documents. Petitioner claimed that, in 2003, while he was located in United States Disciplinary Barracks, he received mail from the Kingdom of the Netherlands, which contained a "large book" and some "immigration information." Petitioner asserted that he received this package despite the fact that he had not solicited such information from the sender. See Exhibit A, Transcript of May 11, 2005 Hearing, at pp. 4-5. Petitioner further informed the Court that, four or five months later, he received "another letter," which was "really short, and it says to look in the bind on the book." Petitioner claimed that he examined the book binding, and discovered a computer disk. He further contended that, because he was incarcerated, he could not review the contents of the computer disk. He informed the Court that he had "no idea" who sent him the computer disk. See Exhibit A, at p. 5.

      Petitioner went on to tell the Court that, after receiving the computer disk hidden in the book binding, he "mailed it out," presumably to a member of his family. See Exhibit A, at p. 5.

4

Thus, Petitioner claimed to be reviewing these documents for the first time during the May 11, 2005 proceeding. As he reviewed the documents with the Court, Petitioner informed the Court that, although certain of the documents bore his signature, he had no recollection of signing such documents. See Exhibit A, at p. 6. In addition, the initials "E.A." appear in the documents, and Petitioner claimed to have no idea who that individual might be. See Exhibit A, at p. 7.

Following the Court's review of the documents with Petitioner, the Court invited Counsel for the Respondent to rejoin the proceedings. At that time, the Court indicated that it "ha[d] not yet determined whether or not to allow [the documents] to be placed out of seal in the record." See Exhibit A, at p. 11.

The Court permitted Counsel for the Respondent to skim the documents provided by Petitioner. Following a brief review of several of the documents, Counsel for the Respondents expressed to the Court the government's belief that the documents were not authentic, but rather had been created by Petitioner to support his claims. See Exhibit A, at p. 16.

However, the Court indicated that, because Petitioner had presented the documents as evidence in a civil case, it would consider receiving the documents as such unless the government

presented an objection to their admission into evidence. See Exhibit A, at p. 19.

Accordingly, Counsel for Respondent voluntarily agreed to contact the CIA to ascertain whether the CIA could assist with determining the authenticity of the documents that Petitioner had presented to the Court.[1] The Court then concluded the hearing with the understanding that Respondent would contact the CIA and report back to the Court.

**IV. ANALYSIS**

    **A. The Documents Petitioner Presented to the Court on May 11, 2005 Must be Unsealed and Stricken from the Record**

The documents provided to the Court by Petitioner must be unsealed and stricken from the record, because they are not authentic. Following the May 11, 2005 proceeding, Counsel for Respondent contacted the General Counsel's Office of the Central Intelligence Agency ("CIA"). The CIA certified that it has no relationship with the Petitioner. Accordingly, the documents that Petitioner supposedly received on a computer disk from an unknown sender, purporting to detail some sort of covert relationship between Petitioner and the Central Intelligence Agency, must be unsealed and stricken from the record.

---

[1] While Counsel for Respondent voluntarily agreed to contact the CIA, Respondent notes that the CIA is not a party to this action, nor could the CIA be a proper party to this action. Accordingly, the Court lacks jurisdiction over the CIA with respect to this lawsuit.

The Directorate of Operations for the CIA is responsible for and maintains records of all clandestine foreign intelligence and counterintelligence activities and operations conducted by the CIA with respect to human sources. See Exhibit B, Declaration of Marilyn Dorn, Information Review Officer for the Directorate of Operations of the CIA, at ¶ 2. The Directorate of Operations maintains its records at the CIA Headquarters in Fairfax, Virginia, and in archival storage in the normal course of CIA business.

In her capacity as Information Review Officer for the Directorate of Operations, Marilyn Dorn has access to all Directorate of Operations records. See Exhibit B, at ¶ 3. Her official responsibilities include the search for and retrieval of Directorate of Operations records pursuant to requests for information concerning CIA operational and intelligence activities. See Exhibit B, at ¶ 3. Ms. Dorn also serves as Records Validation Officer for purposes of the instant case. In that capacity, she has been granted access to all CIA records on any subject relevant to the instant litigation, and is authorized to sign declarations on behalf of the CIA regarding CIA searches for records, as well as the contents of any located records, including those located in or containing information under the cognizance of CIA Directorates other than the Directorate of Operations. See Exhibit B, at ¶ 4.

Based on her personal knowledge, and the information available to her in her official capacity, Ms. Dorn has declared that if the CIA had any sort of involvement or relationship with Kurtis E. Armann, a record indicating such fact would have been created and retained in the normal course of CIA business, and the CIA's searches would have located any such record.  See Exhibit B, at ¶¶ 5-6.

The CIA conducted thorough and diligent records searches of the appropriate CIA records systems for any information pertaining to Petitioner Kurtis E. Armann.  See Exhibit B, at ¶ 7.  The CIA's comprehensive searches located no identifiable records indicating that the CIA had any sort of involvement or relationship with Kurtis E. Armann.  See Exhibit B, at ¶ 7.  Thus, the CIA has had no involvement or relationship with Kurtis Armann.

Mr. Armann's attempt to introduce into evidence documents that are utterly lacking in authenticity, and which purport to establish some sort of longstanding covert relationship between Mr. Armann and the CIA, is a thinly-veiled attempt to obscure and prolong the resolution of his habeas corpus case.  The documents have no indicia of reliability or authenticity, and are directly contradicted by the official Declaration provided by the Central Intelligence Agency.

Accordingly, the documents must be unsealed and stricken from the record.

      **B.    An Evidentiary Hearing on the Petition is Unwarranted, and the Court Must Deny the Petition for Habeas Corpus**

Because the documents Petitioner presented to the Court are not authentic, they should not be considered by the Court in resolving the Petition for Habeas Corpus. Rather, the Court must limit its review to the Petition and Response and accompanying exhibits. Based on the documents submitted to the Court as part of the Response to the Petition for Habeas Corpus, the Petition must be denied.

        **1.    Standard of Review**

When reviewing a military habeas petition, a federal court only determines whether Petitioner's claims were given full and fair consideration by the military courts. Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 810 (10th Cir. 1993), cert. denied, 510 U.S. 1091 (1994); Rios v. Lansing, 186 F.Supp.2d. 1178 (D.Kan. 2002); Brosius v. Warden, 125 F.Supp. 2d 681 (M.D. Pa. 2000), aff'd., 278 F.3d 239 (3d Cir.); cert. denied, 537 U.S. 947 (2002); Jordan v. Warden, 1998 WL 614694, at *2 (M.D. Pa., Aug 31, 1998). If the military courts have given the petitioner full and fair consideration, the inquiry ends and the petition must be dismissed. Lips v. Commandant, 997 F.2d 808, 811 (10th Cir. 1993); Jordan at *2.

Thus, in analyzing military habeas petitions, courts determine whether the military courts have given fair consideration to each of the petitioner's claims. Burns v. Wilson, 346 U.S. 137, 144 (1953). See also, Harris v. Ciccone, 417 F.2d 479 (8th Cir. 1969), cert. denied, 397 U.S. 1078 (1970); Broussard v. Patton, 466 F.2d 816 (9th Cir. 1972), cert. denied, 410 U.S. 942 (1973), reh'g denied, 411 U.S. 923 (1973). The scope of a district court's jurisdiction to review a military court-martial conviction does not include a reassessment of facts and issues fully and fairly considered by the military courts, because "the scope of matters open to review has always been more narrow than in civil cases." Burns, 346 U.S. at 139; Lips, 997 F.2d at 811.

In applying the Burns/Lips "full and fair consideration" standard, the Tenth Circuit has "consistently granted broad deference to the military in civilian collateral review of court-martial convictions." Watson v. McCotter, 782 F.2d 143, 144-45 (10th Cir.), cert. denied, 476 U.S. 1184 (1986)("If an issue is brought before the military board of review and is disposed of, even summarily, the federal habeas court will find that the military tribunal has given the claim full and fair consideration."); see, e.g., Kehrli v. Sprinkle, 524 F.2d 328, 321 (10th Cir. 1975), cert. denied, 426 U.S. 947 (1976); King v.

Moseley, 430 F.2d 732, 735 (10th Cir. 1970); Kennedy v. Commandant, 377 F.2d 339, 342 (10th Cir. 1967).

The Third Circuit has consistently interpreted Burns as limiting review of military convictions to jurisdictional issues and to a determination of whether the military gave full and fair consideration to each of the petitioner's claims. See Brosious v. Warden, United States Penitentiary, 278 F.3d 239 (3d Cir. 2002).

Additionally, the federal court cannot review issues which have not been raised in the military courts. Dees v. United States Commandant, 744 F.Supp. 1044, 1046 (D.Kan. 1990); see also Watson v. McCotter, 782 F.2d 143, 145 (10th Cir.), cert. denied, 476 U.S. 484 (1986)(noting the court will not review habeas claims on the merits if they were not first presented to the military courts).

### 2. Petitioner's Issues Were Fully and Fairly Considered By the Military Courts.

As Respondent previously argued in the Response to the Petition, it is clear that, under the extremely narrow "full and fair consideration" standard of review, the military courts fully and fairly considered the issues raised in the Petition. Petitioner claims that he lacked the capacity to stand trial. (Petition, p. 4e). The only question for the district court to decide is whether or not Petitioner had an opportunity to previously present the insanity issue. Once the district court

decides that Petitioner received that opportunity, the inquiry must end. <u>Whelchel v. McDonald</u>, 340 U.S. 122 (1950); <u>Palomera v. Taylor</u>, 344 F.2d 937, 939 (10th Cir. 1965); <u>cert.</u> <u>denied</u>, 382 U.S. 946 (1965). It is clear from the documentary evidence in this case that Petitioner did receive an opportunity to present his insanity defense, and the Court must deny the Petition for habeas corpus. As Respondent previously argued in its Response, all of the grounds Petitioner enumerates for the habeas writ center upon his mental competency to participate in his own defense. Because these issues were previously raised before the Army trial court, the ACCA, and the CAAF, which fully and fairly considered them, the Petition must be denied.

At trial, the military judge ordered a sanity board, which included a full review of all the Petitioner's medical records. <u>See</u> Exhibit O to Response, Sanity Board Order of January 25, 1999. Petitioner's mental status and voluntary drug treatment were further examined at trial through defense witness Dr. Keith Caruso. <u>See</u> Exhibit S to Response, Trial Record at 320. Dr. Caruso, a board certified forensic psychiatrist, testified extensively about Petitioner's mental condition and drug use.

Petitioner does not allege that the military appellate courts failed to fully and fairly consider the issues, and there is no evidence in the record to support such an allegation. Each

of the issues alleged by Petitioner was raised on direct appeal. Petitioner has twice raised the issue of incapacitating drug ingestion before the two appellate courts. See Exhibit H to Response.

Petitioner's brief to the CAAF mirrored the averments of his current habeas writ. See Exhibit M to Response. Petitioner argued that he "lacked sufficient mental capacity to stand trial or to contract into a pretrial agreement," which "denied the appellant his constitutional right to a fair trial." See Exhibit M to Response, App. B, p. 1. Petitioner claimed that he was "unable to understand the proceedings against [him] or to conduct or cooperate intelligently in the defense case". Id., p. 3. Petitioner also argued that "records of evidence clearly established the Appellant's medical condition did not justify the amount and type of medications that the Appellant was on." Id., p. 6.

Petitioner's current argument that "newly discovered evidence in regard to accutane induced mental disorders was not discovered until after the appellant's trial" (supplemental page 3 of Petition) was also previously raised at ACCA and CAAF. See Exhibits H and M to Response.

Because Petitioner has repeatedly raised his claims, and the military trial court, the ACCA, and the CAAF fully and fairly considered them, this Court should deny Petitioner's

Petition.  See United States v. Triplett, 21 U.S.C.M.A. 497, 502 (1972):

> Once an accused has had a fair opportunity at the trial level to litigate the issues of his mental responsibility for an offense and his capacity to stand trial, those issues should, on appeal, be accorded the same treatment as all other contested matters.  We mean that the question should not be tried de novo at every appellate level.  A day in court means one fair and just trial of contested issues, and when one has been granted to an accused, he does not have a right to a second trial in an appellate forum.

Triplett, 21 U.S.C.M.A. at 502.

> Habeas will not lie to review questions raised and determined, or raisable and determinable, in the established military process, unless there has been such gross violation of constitutional rights as to deny the substance of a fair trial and, because of some exceptional circumstance, the petitioner has not been able to obtain adequate protection of that right in the military process.

Brosious, 278 F.3d at 243 (citing Burns v. Lovett, 202 F.2d 335 (D.C. Cir. 1952), aff'd. 346 U.S. 137 (1953)).

### 3.  **Petitioner's Claims Lack Substantive Merit**

Petitioner is not entitled to relief because the military courts have fully and fairly considered the issues raised.  Moreover, each of the issues raised by Petitioner lacks substantive merit.

Petitioner offers no new credible evidence to support his claim and does not explain the contradictory evidence in the record that illustrates Petitioner's lucid, intelligent state of mind during the attempted murder of his friend and following his

arrest. As a result, not only have the military appellate courts fully and fairly litigated Petitioner's claims, but Petitioner's claims also lack any substantive merit. Therefore, the Petition should be denied.

To the extent that Petitioner seeks to characterize the documents he submitted to the Court on May 11, 2005 as "new evidence," this claim must fail, because the CIA has established that it has no relationship with the Petitioner. Therefore, the documents are not authentic. Moreover, even if Petitioner were to have met his burden to authenticate these documents, which he has not, the documents relate to Petitioner's competency to commit the crime. Petitioner's competency was fully and fairly litigated before the military courts, and therefore the Petition must be denied.

V.     **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should grant Respondent's Motion to Unseal and to Strike Plaintiff's Exhibits, and deny the Petition for Habeas Corpus.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


/s/ Christy Wiegand
CHRISTY WIEGAND
Assistant U.S. Attorney
Western District of PA
U.S. Courthouse
  and Post Office
700 Grant Street, Suite 400
Pittsburgh, PA 15219
(412) 644-3500

**CERTIFICATE OF SERVICE**

      I hereby certify that I have served this date a copy of the within Response, by mail or electronic filing, upon the following at:

> Kurtis E. Armann
> Register No. 15231-045
> FCI McKean
> P.O. Box 8000
> Bradford, PA 16701

> /s/ Christy Wiegand
> CHRISTY WIEGAND
> Assistant U.S. Attorney

Date:   July 7, 2005