# EXHIBIT A

1              IN THE UNITED STATES DISTRICT COURT
2          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

3   KURTIS ARMANN,                    :
              Plaintiff              :
4                                     :
        v.                            :   C.A. No. 04-118 Erie
5                                     :
    WARDEN, FCI McKEAN,               :
6              Defendant             :

7

8

9

10          Hearing in the above-captioned matter held

11      on Wednesday, May 18, 2005, commencing at

12      at 2:20 p.m., before the Honorable Susan Paradise

13      Baxter, Courtroom B, United States Courthouse, 617

14      State Street, Erie, PA 16501.

15

16

17  For the Plaintiff:

18      Kurtis Armann (Pro Se)
        Thomas Patton, Esquire
19

20  For the Defendant:

21      Christine Sanner, Esquire, AUSA
        Captain Jeffrey Phillips, JAG Corps.
22

23

24

25          Reported by Janis L. Ferguson, RPR

1

```
1                           I N D E X
2
3
   Transcript of Proceedings  . . . . . . . . . . . . . . . . . 3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1              THE CLERK:  The case before the Court is Kurtis E.
 2   Armann versus the Warden of FCI McKean.  It's docketed at
 3   No. 04-118-Erie.  Mr. Armann is proceeding pro se.
 4   Representing the Defendant is Christine Sanner of the U.S.
 5   Attorney's Office and Captain Jeff Phillips of the JAG
 6   Corps.
 7              THE COURT:  Good morning.  We are here on the
 8   motion of the Petitioner for an evidentiary hearing and also
 9   a request for an item to be held -- to be seen in camera and
10   to be withheld from the defense, from the Respondent.  Why
11   don't we start with that.  All right?
12              Do you have the documents you wish for me to
13   see in camera in court today?
14              MR. ARMANN:  My family brought them with them,
15   Your Honor.
16              THE COURT:  Why don't I take a look at those right
17   now.  Then, Mr. Armann, would you explain to me just briefly
18   why you wish for these to be held under seal, when, as I
19   understand it, they are documents that the Government has.
20              MR. ARMANN:  These documents, I'm not absolutely
21   sure if the Government has them.
22              THE COURT:  I see.  Okay.  And they can't see them
23   because?
24              MR. ARMANN:  I haven't even got to look at them
25   yet, Your Honor.  I couldn't get the documents into the
```

```
 1    facility at McKean, because of the policy concerning mail.
 2    So basically those documents have been out there since this
 3    action was started -- before this action was started,
 4    actually, while I was at Fort Leavenworth.  And I still
 5    haven't been able to review those documents.
 6                I had to have an attorney out of Harrisburg,
 7    which I wrote in my motion, Mr. Ostrowski out of Harrisburg.
 8    He looked through them and said that I definitely need to
 9    look at these documents, that they -- they bear directly on
10    this case, Your Honor.
11                (Discussion held off the record.)
12                THE COURT:  At the outset, why don't we do that so
13    that the Petitioner can look at the documents with me.  And,
14    Mr. Barton, you'll come with us and the court reporter.  And
15    so give us about a half hour, and we'll be back.  See if I
16    can make a ruling at that point.
17                (Proceedings adjourned to in-camera conference
18                 room.)
19                THE COURT:  We are back on the record.  We are
20    inside my conference room; the Petitioner, the U.S. Marshal,
21    court reporter, my staff attorney, and myself.  We are
22    looking at the documents.  I am asking the Petitioner if he
23    knows who the letter is from and where it was found or how
24    it was discovered.
25                MR. ARMANN:  In 2003, I received some mail at the
```

4

1    United States Disciplinary Barracks.  It was marked from the

2    Kingdom of the Netherlands.  It was Consulate.  There was a

3    large book and some immigration information.  I have never

4    sent to the Kingdom of the Netherlands for that information.

5                    About four or five months after I received

6    that information, another letter came.  It was really short,

7    and it says to look in the bind on the book.  So I went into

8    the bind on the book, and there was a computer disk, but I'm

9    in prison, so --

10                THE COURT:  You couldn't look at it.

11                MR. ARMANN:  I couldn't look at it.

12                THE COURT:  So these came off of the computer

13   disk.

14                MR. ARMANN:  I'm assuming.

15                THE COURT:  That's what you asked your father to

16   do.

17                MR. ARMANN:  I sent those out of the facility,

18   because I knew there was something important there.  And

19   this is after the Army had destroyed the device.

20                THE COURT:  The device in your leg.

21                MR. ARMANN:  Yes, ma'am.  I became concerned that

22   there was more information on the disk, because it had came

23   to me, and so I mailed it out.

24                THE COURT:  So you have no idea who sent you that.

25                MR. ARMANN:  No, ma'am.

1            THE COURT:  Let me just say one other thing.  The

2    information contained in the documents, placed onto this

3    record will be kept under seal until further Order of the

4    Court.

5            (Pause in proceedings.)

6            THE COURT:  Mr. Armann, can you take a look at the

7    second page of that document.

8            MR. ARMANN:  Yes, ma'am.

9            THE COURT:  Second document in the packet.  There

10   is a security agreement on the left side.  Do you see that?

11           MR. ARMANN:  Yes, I do, Your Honor.

12           THE COURT:  Is that your signature on the bottom?

13           THE WITNESS:  Yes, it is, Your Honor.

14           THE COURT:  Do you have any recollection of that?

15           MR. ARMANN:  No, I don't, Your Honor.

16           (Pause in the proceedings.)

17           THE COURT:  In 1995 it says you signed this

18   document.  You were in the Army?

19           MR. ARMANN:  Yes, Your Honor.

20           THE COURT:  When did you enter the Army?

21           MR. ARMANN:  I entered the Army on the 13th of

22   September, 1994, Your Honor.

23           THE COURT:  So you had only been in the Army less

24   than a year.

25           MR. ARMANN:  Less than a year.

1          THE COURT:  I would like a copy of these papers to

2    be placed inside an envelope to be docketed under seal

3    temporarily until I rule.  But I want to make sure they are

4    in the record now.

5          (Discussion held off the record.)

6          MR. ARMANN:  Your Honor, this doesn't have page

7    numbers on it, but I'd like to point out Page 7.

8          THE COURT:  Well, there are several of them that

9    say Page 7.  Which one?

10         MR. ARMANN:  Looks like that, Your Honor

11   (indicating).

12         THE COURT:  That's what they took out of your leg?

13         THE WITNESS:  Yes, it was, Your Honor.

14         THE COURT:  You have no recollection of who E.A.

15   would be?

16         MR. ARMANN:  No, Your Honor.

17         THE COURT:  How are you piecing this together

18   before you saw these documents?  Because, I mean, some of

19   this is accurate in your --

20         MR. ARMANN:  Everything that I pieced together,

21   Your Honor, has been from --

22         THE COURT:  From research or --

23         MR. ARMANN:  From research or from the records

24   that the Army more or less gave to me.

25         THE COURT:  Did they ever give you your medical

1    records?

2              MR. ARMANN:  Sections of them, yes, Your Honor.

3              THE COURT:  So you have those.  Do I have those?

4    Are they in the file?

5              MR. ARMANN:  You have actually the majority of

6    them.

7              THE COURT:  I didn't go through all the

8    appendices.  Okay.  I did go through your writings.  That's

9    how I see the similarities.

10             MR. ARMANN:  A lot of this stuff is just too out

11   in left field.

12             (Pause in the proceedings.)

13             THE COURT:  Is the description of your history

14   correct?  Subject of parents to divorce.  Do you see that

15   one?

16             MR. ARMANN:  I have got to flip back through, Your

17   Honor.

18             THE COURT:  It looks like this (indicating).  What

19   I need for you to do is to identify for me that this is you.

20             MR. ARMANN:  That kind of sums it up for me, Your

21   Honor.

22             THE COURT:  So that you are identifying the

23   subject named in this profile as you.

24             MR. ARMANN:  It appears so, Your Honor.

25             THE COURT:  It seems like you?        ·

1          MR. ARMANN:  Um-hum.

2          THE COURT:  Thank you.

3          MR. ARMANN:  There's some information following

4  it.  It looks like background information, like an FBI

5  profile.

6          THE COURT:  Yes.  That's later.  Some report.

7          (Pause in the proceedings.)

8          MR. ARMANN:  One of these, Your Honor, looks like

9  a phone call between my stepfather and I from --

10         THE COURT:  I see that.

11         MR. ARMANN:  -- about 1996.  It's back there a

12  ways.

13         THE COURT:  It's further back.  I'm just looking

14  at Page 36.

15         (Pause in the proceedings.)

16         THE COURT:  Do you wish to have an attorney

17  appointed?

18         MR. ARMANN:  Yes, I do, Your Honor.  I move to

19  have an attorney appointed.

20         THE COURT:  There is a request pending from

21  Petitioner to have an attorney appointed.  I will suggest

22  that the Federal Public Defender look at the files and see

23  if he wishes to accept the appointment.  I have no power to

24  require someone to represent you, so he will have to accept

25  that appointment.  Do you understand?

1      MR. ARMANN:  I understand, Your Honor.

2      THE COURT:  All right.  His motion is granted.

3  Then he can come back.

4      (Pause in the proceedings.)

5      THE COURT:  I am more concerned at this stage,

6  having been through half of the documents, with the issue of

7  whether or not they should remain under seal in the docket

8  or be in the public record than I am whether or not the

9  Respondent should see them.  I don't believe I have to read

10  the rest of these to realize that the Respondent should see

11  them.  I think that because it takes a while to get through

12  them, perhaps we should make another copy and invite the two

13  attorneys back; Miss Sanner and Captain Phillips.

14      (Discussion held off the record.)

15      THE COURT:  It should no longer be an ex parte

16  proceedings.  So have them come on down, and we'll give them

17  a set.

18      (Pause in the proceedings.)

19      THE COURT:  I am not embarrassed to say to you

20  that I am -- my heart is beating at a fast rate, and I am

21  actually somewhat affected by the documents.

22      MR. ARMANN:  I am sweating, Your Honor.

23      (Pause in the proceedings.)

24      MR. ARMANN:  Is there any way, Your Honor, that we

25  could get my NCIC or NCIS, my --

1            THE COURT:  Your attorney can ask for that.

2            MR. ARMANN:  My fingerprint identification.

3            THE COURT:  I see.  To see if that's your

4    fingerprint?

5            MR. ARMANN:  Yes.

6            THE COURT:  Your attorney can do those kinds of

7    things.  I am not going to order that.  At least not at this

8    point.

9            (Pause in the proceedings.)

10           THE COURT:  Your signature looks less steady in

11   this second one than it did in the first one.  Do you see

12   which one I mean there at the end of that packet?  I'm not a

13   handwriting expert.  It looks similar enough, but it looks

14   more childish, if you understand what I'm saying.

15           MR. ARMANN:  I understand, Your Honor.

16           THE COURT:  Interesting.  It's the difference

17   between August and December of that year.

18           (Discussion held off the record.)

19           (Captain Phillips and Attorney Sanner enter

20            conference room.)

21           THE COURT:  Could you two come over here, Captain

22   Phillips and Miss Sanner.

23               I have not determined whether or not to allow

24   them to be placed out of seal in the record, but I have --

25   I'm not finished reading them all, but I am determined,

1     having been through half of them, that the Respondent has a

2     right to see them.  So you go ahead and read them.  And

3     whatever we are saying or putting on the record, it also

4     became clear to me that I did not want this to any longer be

5     an ex parte proceeding.  All right?

6               CAPTAIN PHILLIPS:  All right.

7               THE COURT:  He has asked, and I have granted his

8     request for counsel.  If the Federal Public Defender is

9     willing to take it on.  He is coming shortly.  When he

10    comes, he is also going to be allowed in.  And that occurred

11    during the ex parte conference.

12               (Discussion held off the record.)

13               MR. ARMANN:  Captain Phillips?  Am I allowed to

14    address --

15               THE COURT:  Ask him questions?  Not at this time.

16    Let him just read.

17               (Pause in the proceedings.)

18               THE COURT:  He has on the record said that that is

19    his signature on that document, Captain Phillips.  He does

20    not recall signing it.

21               (Pause in the proceedings.)

22               CAPTAIN PHILLIPS:  Your Honor, may I interrupt?

23               THE COURT:  Yes.  Have you been through it all?

24               CAPTAIN PHILLIPS:  I read this (indicating) in

25    depth, and I skimmed through it to get a sense of what the

1    rest of it was.  I'm familiar with classified documents and
2    documents from other federal agencies.  And what I would
3    like to do is to go back to the courtroom and make some
4    notes in anticipation that you might want to hear a short --
5    a short argument from the Government's side about what these
6    might be and what we might want to -- what the Government
7    can suggest as a next step from our perspective.
8              THE COURT:  That's fine.  Do you have any problem
9    with my sharing them with the Public Defender?
10             CAPTAIN PHILLIPS:  Oh, not at all.
11             THE COURT:  All right, that's fine.  Thank you,
12   Your Honor.  I'll just leave that copy for you.
13             THE CLERK:  That's your copy.
14             THE COURT:  Do you have a copy of those?
15             CAPTAIN PHILLIPS:  No, but I'll take them.
16             THE COURT:  They are under seal at this point.
17   They are under seal from the public.  What we're going to do
18   is let Mr. Patton meet with Mr. Armann, and we'll leave this
19   location when he comes.  I'm going to continue reading.
20             (Captain Phillips and Attorney Sanner leave
21              conference room.)
22             (Discussion held off the record.)
23             MR. PATTON:  Your Honor, I'm going to have a
24   chance to speak with Mr. Armann here in chambers, but since
25   he is in custody, the United States Marshal's Officer needs

1   to be in the room with us.  I just move that you make a

2   ruling that the presence of the Marshal does not waive the

3   attorney/client privilege.

4           THE COURT:  That motion is granted.

5           MR. PATTON:  And the Marshal is prohibited from

6   disclosing anything that was discussed in the meeting.

7           THE COURT:  You understand, Mr. Barton?

8           MR. BARTON:  I understand completely.

9           (Proceedings adjourned from 11:02 a.m. till 11:25

10          a.m.)

11          (Proceedings resumed in camera with Judge Baxter,

12          the court reporter, Attorney Sanner, and Captain

13          Phillips.)

14          THE COURT:  All right, Captain Phillips, go ahead.

15          CAPTAIN PHILLIPS:  Thank you, Your Honor.

16              Your Honor, I just called my supervisor back

17  in Washington to confirm what I was -- what had sort of

18  become apparent to me.

19              What I'd like to say first, Your Honor, is

20  that if you and the Court are taking what has been provided

21  by Mr. Armann in a serious light, in a non-farcical light --

22          THE COURT:  Well, it's either -- it's either a

23  script for a TV show or it's real.  I don't think there's

24  any gray.

25          CAPTAIN PHILLIPS:  Okay.  If it's the latter, and

14

1    if you choose to look at it as real evidence, then what we

2    would have to do is because he implicates another federal

3    agency, the CIA pretty much, they would, as equity holders

4    of potentially classified information, have to look at that

5    information, confirm its classification review status.

6    Anybody that is potentially looking at this evidence would

7    have to have a classification clearance of that commensurate

8    level.

9            THE COURT:  I have already read it.

10           CAPTAIN PHILLIPS:  And what would have to happen,

11   then, is that if it was classified and somebody without a

12   classified status reviewed it, they would have to get

13   debriefing from CIA about what to do next.

14               But what I would recommend, Your Honor, is

15   that if you think this is something that would -- that is of

16   that nature, then what we -- what I recommend, and what the

17   Government's position is, is that we take the evidence, give

18   it to the CIA and to the general counsel there.  And I have

19   contacts there that would be ready to take it.  They would

20   then send it to the appropriate folks in their agency.  They

21   would do a classification review -- just noting, Your Honor,

22   for instance, having tried classified cases with classified

23   material, confidential is one of the lowest classification

24   levels there are.  There's top-secret.  That's actually

25   compartmentalized for --

1          THE COURT:  I have a clearance up to a certain
2    point as well.  So I understand that somewhat.
3          CAPTAIN PHILLIPS:  Then it was down to top-secret,
4    then secret, and so forth.  So potentially a project like
5    this, it would sort of involve mind experiments and --
6          THE COURT:  You would not expect it to be at the
7    confidential level.
8          CAPTAIN PHILLIPS:  No.  Because that is where
9    you're protecting people's confidential information, like
10   bank records, house records, something like that.  Something
11   not at a national security level, but something that would
12   protect somebody's privacy.
13          So on the face of it, looking at the
14   documents, it is the Government's position that this is
15   something developed by Mr. Armann and now being used by him
16   at the same time.  But if Your Honor thinks differently and
17   wants to look at this in a different light, then I think, as
18   both officers of the Court and as a Government attorney, I
19   think that I have an obligation to articulate sort of what
20   the process is, as I know it.  And at a minimum we would
21   have to give it to the equity holder, the person that owns
22   classified information so we can understand where it's been,
23   give it a proper classification, confirm that, and give it
24   back to you for your use.
25          And then if you were then to use it, and if

1   it -- if it turned out to be classified information, real

2   evidence, then we would have to -- there are things that I

3   would assume you would talk to somebody here about; you

4   know, closed courtroom.  There would be motions about the

5   use of classified information.  If it was real and it was

6   classified, the CIA may not give it up for its use in

7   litigation and so forth.  And so -- but that would all be

8   downstream.

9           THE COURT:  Well, we have it under seal in the

10  docket.  She has written down how many copies we have made

11  and who has looked at them; my courtroom deputy.  So we have

12  all that information.  I don't see why we shouldn't have

13  them take a look at it.

14          But the Court will tell you now, I mean, I

15  will not make a decision as to the -- its credibility

16  determination solely on the response of the -- of your

17  authorities.  Because it's been presented to me as evidence

18  in a civil case.

19          CAPTAIN PHILLIPS:  Right.

20          MS. SANNER:  I was going to mention -- I'm not

21  sure, because I came relatively late into these

22  proceedings -- I'm just standing in for Christy Wiegand --

23  but I kind of thought he had had the opportunity to raise

24  this earlier.  That it doesn't necessarily fit within the

25  newly discovered evidence.  But, again, I'm not familiar

1  with the --

2          THE COURT:  As to exhaustion, you mean?

3          MS. SANNER:  Right.  And I think he has got

4  collateral civil claims as well.

5          CAPTAIN PHILLIPS:  He does.  And I brought for

6  Your Honor -- and I was going to give this to Your Honor in

7  the courtroom, and Your Honor can tell me when you think

8  it's best.  He has another civil litigation action that our

9  civil litigation division is covering right now.  He has

10  named 26 individuals in this action with similar sort of

11  claims --

12          THE COURT:  Civil rights?  Is this a civil rights

13  case?

14          CAPTAIN PHILLIPS:  It's actually -- he's asking

15  for monetary damages.

16          THE COURT:  It might be a prisoner civil rights

17  case.  Go ahead.

18          CAPTAIN PHILLIPS:  So we have drafted a similar

19  sort of brief to the one that -- to the habeas brief as

20  well.  The Army being of counsel.  Obviously, the U.S.

21  Attorney has signed it.  We wanted you to have that so you

22  can see sort of that he's making somewhat similar claims in

23  another Federal Court, the D.C. District.

24          THE COURT:  Okay.

25          CAPTAIN PHILLIPS:  And so I have that for you as

1    well.

2            THE COURT:  Thank you.

3            CAPTAIN PHILLIPS:  But that's all I wanted to say,

4    Your Honor, is that if --

5            THE COURT:  I think we'll just have to suspend

6    proceedings today --

7            CAPTAIN PHILLIPS:  And send this off.

8            THE COURT:  And I'll wait to hear from you.  How

9    long of a time does that take?

10           CAPTAIN PHILLIPS:  A classification review, Your

11   Honor, will take -- it's hard to say, because what they will

12   do is they will ship it out to whichever part of the agency

13   may have jurisdiction over a matter like this, that would do

14   something like counter-espionage or whatever they do.  They

15   would then have a classification review officer look at the

16   data, determine whether or not it's something that they

17   actually do, if they do it.  If this is real, they would

18   confirm its classification status.  And -- or they would

19   basically provide a letter --

20           THE COURT:  If they say it's not, then you're

21   going to have to explain that to me as an objection to its

22   being placed into evidence.  I mean, that's -- it would be a

23   very procedural, technical --

24           CAPTAIN PHILLIPS:  Right.  If they say this is

25   not -- we don't own this, then you would have to decide --

1          THE COURT:  I would have to rule on that.

2          CAPTAIN PHILLIPS:  All right.  I have Armann

3   saying one thing, I have the CIA saying another thing.

4          THE COURT:  The only thing other than that, that I

5   will say is now that I have allowed Mr. Patton to take a

6   look at the case and decide whether or not -- you know, I

7   have no power in a civil case to require someone to take the

8   case.  So if he decides to take the case and he proceeds

9   legally in any way with any motion or anything, we're just

10  going to continue.  I'm not going to place it in hold

11  status, or I'm not going to stay the case at this point.

12         CAPTAIN PHILLIPS:  Okay.

13         THE COURT:  All right?  So we'll see what comes

14  from the Petitioner, and then we'll go from there.

15              Quite candidly, I'm not even sure if

16  successful on the Petition for Writ of Habeas Corpus, if I'm

17  allowed to order the military courts to retry or -- so we

18  have lots of work to do.  We have lots of work to do.

19         CAPTAIN PHILLIPS:  And just, Your Honor, do you --

20  do you need any information about the process that the

21  military -- the military trial process and the appellant

22  trial process?

23         THE COURT:  Well, you know, there is an exhaustion

24  requirement, so I think that any response that the claims

25  are unexhausted -- and I have no jurisdiction to encompass

1    that, so we'll just see how that goes.

2             All right.  I thought, since everybody was

3    here, this would be a great time to have an evidentiary

4    hearing.  But I see that that was totally naive on my part,

5    and I don't think that that is at all -- we get off in a

6    whole new world.

7             (Discussion held off the record.)

8             THE COURT:  You were giving me a history of some

9    of the litigation the Petitioner has.

10            CAPTAIN PHILLIPS:  Yes, Your Honor.  There has

11   been litigation -- although I don't have a record, but I

12   will provide that to the Court -- that Mr. Armann had

13   against the facility at Leavenworth, at the facility in

14   Ohio, and now obviously this one in Pennsylvania.  In

15   addition to his other civil claims --

16            THE COURT:  Similar petitions?

17            CAPTAIN PHILLIPS:  To some degree, yes, Your

18   Honor.  I'll to have get the records of that --

19            THE COURT:  You have to.  We have to know whether

20   or not he's a successive petition.

21            CAPTAIN PHILLIPS:  That just came up literally the

22   day before I traveled up here.  All I was able to get was

23   his current action that he has against the 26 --

24            THE COURT:  And that would not be a successive

25   petition, because that sounds like a civil rights case.

1        CAPTAIN PHILLIPS:  Although he does name as a

2    Co-Defendant the director of the CIA in that one.

3        THE COURT:  But they are a whole different -- I

4    mean, he is going here to be --

5        CAPTAIN PHILLIPS:  To be released from

6    confinement.

7        THE COURT:  To be released under a writ.  The

8    thing is, if he has -- under the federal law, if he has

9    brought a petition similar to this one in the past, then

10   he's not allowed to just file a writ here.  He has to go to

11   the Circuit.  And I rely on the Respondent, the Government,

12   to tell me that.  I don't do that research.  So I don't know

13   whether he has.  So your Ohio and Leavenworth -- is in

14   Kansas -- those would be important things to know.  All

15   right?  Because those are not in the current response.  The

16   response was done by Miss Weigand, I believe.

17       MS. SANNER:  Yes, in Pittsburgh.

18       CAPTAIN PHILLIPS:  And she wouldn't have known

19   that either until just now.

20       MS. SANNER:  Right.

21       THE COURT:  Well, I mean, you read the petition,

22   and you wonder about the sanity of the Petitioner.  And I

23   think that's what she did.  Candidly.  What is the docket

24   entry for her response?

25       THE CLERK:  It should just say response or answer,

1    Your Honor.

2              (Discussion held off the record.)

3              THE COURT:  She just gave us a standard of review,

4    which is different than our typical habeas review.

5    Exhaustion of military remedies.  Okay.  She went straight

6    through that, and says that he has exhausted, so she went

7    straight to the merits.  All right.  Then she treated it as

8    a regular habeas.

9              All right.  I think that's a plan.  Perhaps

10   we should go out, and I will just continue the case.

11             CAPTAIN PHILLIPS:  And will you provide a date,

12   Your Honor, at this point that we should have to hit to have

13   the classification review completed?

14             THE COURT:  You don't want that on the record out

15   there?

16             CAPTAIN PHILLIPS:  Okay.

17             THE COURT:  You don't want that on the record out

18   there?

19             CAPTAIN PHILLIPS:  Okay.

20             THE COURT:  Do you want it on the record?

21             CAPTAIN PHILLIPS:  Okay.

22             THE COURT:  I don't know the time they need.  A

23   month, two months?

24             CAPTAIN PHILLIPS:  Probably closer to the latter.

25   What I'll do, as soon as I get in contact with the general

1    counsel's office at the agency, I will get something back to

2    this Court.

3            THE COURT:  I will, in fact, not give you a date

4    certain and just ask for it to be done as quickly as

5    possible with your notice to the Court of a likely time

6    period, when you know.

7            CAPTAIN PHILLIPS:  Yes, Your Honor.

8            MR. FOGL:  Will you be the primary contact?

9            MS. SANNER:  I will.

10           THE COURT:  I don't want to suspend the hearing

11   until Mr. Patton has had a time to speak with the

12   Petitioner, because he's going to be shipped back to McKean.

13   Do you have a plane?

14           CAPTAIN PHILLIPS:  No, I'm driving back to

15   Washington, D.C.

16           (Discussion held off the record.)

17           (Proceedings adjourned in camera at 11:26 a.m.)

18           (Proceedings resumed in open court at 11:48 a.m.)

19           THE COURT:  This is the -- this is the plan:  We

20   are going to adjourn today and continue the matter until a

21   date not certain, when we will reconvene.  Captain Phillips,

22   would you like to -- you will contact us when we can

23   reconvene.  We're hoping it will be no later than 60 days.

24           CAPTAIN PHILLIPS:  Yes, Your Honor.

25           THE COURT:  We have -- the Court has granted your

1    motion for appointment of counsel, if Mr. Patton is willing

2    to take the case.  Have you made a decision?

3            MR. PATTON:  Yes, ma'am, I will accept the case.

4            THE COURT:  Then we will sign that order for his

5    appointment.  And until we reconvene, the only other

6    decisions that have been made have been that the motion was

7    denied to keep the documents from the Government, and, in

8    fact, the Government -- the respondent has been given a copy

9    of the documents.  And that the documents are in the docket

10   placed under seal at this time.

11           MR. PATTON:  Your Honor, can we get an idea of

12   what the hearing is to be on when we come back?

13           THE COURT:  Yes.  This hearing today was based on

14   his motion for me to look at these documents in camera.  And

15   so that's what we did first.  I had originally planned,

16   since we were here, to have an evidentiary hearing on the

17   petition.  Because at that time he had not sent me a motion

18   for appointment of counsel.  It became clear to me when I

19   started looking at the documents that that was going to be a

20   difficult thing to do today.

21                What we will do when we come back is that

22   Captain Phillips will have had authorities look at the

23   documents, and he is going to make an argument on their

24   authenticity.

25           MR. PATTON:  Will that be the sole purpose of the

1    next hearing?

2          THE COURT:  That may change.  Now, that's how I'm

3    looking at it, but that may change.  It may be an

4    opportunity with everyone here to have an evidentiary

5    hearing, so.  But you will get -- be given full notice of

6    that, if that's the case.

7          All right.  Anything, Captain Phillips?

8          CAPTAIN PHILLIPS:  No, Your Honor.

9          THE COURT:  Anything else, Mr. Patton?

10         MR. PATTON:  No ma'am.

11         THE COURT:  Then we are continued until the Court

12   calls another hearing on this matter.  Thank you.

13

14         (Hearing adjourned at 11:51 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    C E R T I F I C A T I O N

4

5          I, Janis L. Ferguson,  a Court Reporter and

6    Notary Public in and for the Commonwealth of

7    Pennsylvania, do hereby certify that the foregoing

8    is a true and accurate transcript of my

9    stenographic notes in the above-captioned matter.

10

11

12

13

14              Registered Professional Reporter

15

16

17          Dated:  5-13 05

18

19

20

21

22

23

24

25