IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KURTIS E. ARMANN )
)
Petitioner )
v. ) C.A. No. 04-118 Erie
)
WARDEN, FCI-MCKEAN, )
)
Respondent. )

MOTION FOR EVIDENTIARY HEARING

AND NOW, comes the petitioner, Kurtis E. Armann, by his attorney, Assistant Federal Public Defender Thomas W. Patton, and files this Motion for Evidentiary Hearing. In support thereof counsel states:

Mr. Armann's petition raises several challenges to his conviction based upon his incapacitation at the time of his plea and sentencing due to the massive amounts of drugs he was given on the day of his plea and sentencing. This motion focuses on Mr. Armann's claim that he was not competent at his plea and sentencing due to the drugs that were given to him by the Army on the day of his plea and sentencing. The government acknowledges that Mr. Armann raised this issue during his court-martial proceedings therefore exhausting the claim. Although Mr. Armann raised this issue with the military courts, and provided substantial evidence to support the claim, the military courts did not give his claims full and fair consideration. As will be explained below, the military failed to give the claim any consideration at all.

I. Background

The facts of Mr. Armann's case have been put forth in his original memorandum of law

in support of his habeas petition and will not be repeated in detail here. Following the shooting of Private Bell, Mr. Armann was arrested on October 12, 1998, and placed in pretrial custody at the Mannheim Confinement Facility. (Petitioner's Exhibit A p.6)[1] When Mr. Armann arrived at Mannheim he was taking prescription medication to treat migraine headaches. (Id. 31-32, 38) At a pretrial hearing in Mr. Armann's case held on January 25, 1999, the Chief of Correctional Supervision Branch from Mannheim, Sergeant Carlos Perez, testified about Mr. Armann's medical condition and the medication he was on to control that condition. Mr. Armann had been hospitalized "a few times" due to his migraines and on at least one occasion prior to January 25, 1999, Mr. Armann had passed out in his cell due to problems with his medication. (Id.)

Mr. Armann was kept at Mannheim in pretrial confinement from October 12, 1998 through March 19, 1999, the date of his plea and sentencing. (Petitioner's Exhibit B p. 3)[2] Following his plea and sentencing, Mr. Armann remained at Mannheim in post-trial confinement from March 19, 1999 through August 12, 1999 when he was transferred to the United States Disciplinary Barracks (USDB), Fort Leavenworth, Kansas. (Id.)

On January 25, 1999, Judge Barto order the sanity board review pursuant to Rules of Court Martial 706 and ordered that the board's findings be made available to the parties by

---

[1]Petitioner's Exhibit A contains excerpts of the transcripts from the various proceedings in Mr. Armann's case. The entire transcript is 386 pages in length and is not being attached due to its size. If the Court would like a hard copy of the transcript undersigned counsel can supply that copy to the Court.

[2] The transcript in Mr. Armann's case indicates he was placed at Mannheim on October 12, 1998, however the Preliminary Intake Risk Assessment prepared at the United States Disciplinary Barracks at Fort Leavenworth indicate pretrial detention began at Mannheim on October 14, 1998. Counsel believes the October 12, 1998, date, agreed upon by the trial judge and defense counsel is the accurate date. The two day discrepancy does not impact the case.

February 9, 1999. (Petitioner's Exhibit A p. 58) On February 8, 1999, the sanity board, which consisted of one psychologist, issued its findings that Mr. Armann was sane at the time of the offense and was competent to understand the proceedings and assist his counsel. (Petitioner's Exhibit C)

While confined at Mannheim, the Confinement Center kept Medication Logs documenting the administration of medication to Mr. Armann. These Medication Logs were attached to Mr. Armann's filing with the United States Court of Appeals for the Armed Forces (CAAF) in support of Mr. Armann's claim to that court that he was unable to understand the nature of the proceedings or to conduct or cooperate intelligently in the defense of his case on March 19, 1999 due to the massive amounts of medication he was given on that date. (Government's Response to Habeas Petition, Exhibit M Appendix B) The Medication Logs were included in Appendix B to Mr. Armann's Supplement to Petition for Grant of Review filed with the CAAF. The government's response to Mr. Armann's petition acknowledges the filing of this document (Response to Petition for Writ of Habeas Corpus p. 5-6) and attached a copy of the Supplement. However, the government did not attach to its response the medication logs that were filed by Mr. Armann along with the Supplement. (Id. at p.6 n.1) All of the attachments to Appendix B that were filed with the CAAF, including the Medication Logs, are attached as Petitioner's Exhibit D. The Medication Logs document Mr. Armann's ingestion of Seconal, Fironal, Fioricet, Compazine, Midrin, Phenergan (Promethazine), and Elavil (Amitriptyline) on the day before his plea and sentencing and on the day of his plea and sentencing.

The Medication Logs indicate that on the day before Mr. Armann's plea and sentencing, and the day of his plea and sentencing he received massive amounts of medication that would

render virtually any human being incapable of understanding legal proceedings or assisting their attorney. The Medication Logs provide the date and time that the medications were administered, the amount of medication administered, the amount of medication remaining in the prescription, the initials of the person administering the medication, and, if Mr. Armann received medication, his initials verifying that he took the medication. The logs also indicate that inventories of the medications were performed at fairly regular intervals to ensure that medications were not being misplaced.

Mr. Armann does not have a complete, chronological set of Medication Logs for each medication for the entire period he was confined at Mannheim. However, Mr. Armann does have the portions of the Medication Logs for each medication that cover the time period of March 18 and 19, 1999, the day before his plea and sentencing and the day of his plea and sentencing. The relevant pages of the Medication Logs appear in Petitioner's Exhibit E. The Court will note that for the dates March 18 and 19, 1999, the Medication Log for each medication list the initials of the individual either giving the medication to Mr. Armann or inventorying the levels of medication as "DEC." Those are the initials of Sergeant Dallas Eugene Callis. (Petitioner's Exhibit F) In March 1999, Sergeant Callis was a member of what had been Mr. Armann's unit prior to his arrest. Because Mr. Armann was confined pretrial at Mannheim Confinement Center in Mannheim, Germany, and the court-martial proceedings took place in Hanau, Germany, Mr. Armann's unit was responsible for transporting him from Mannheim to Hanau for court proceedings. (Id.) Sergeant Callis was one of the individuals who transported Mr. Armann from Hanau to Mannheim for his plea and sentencing. Sergeant Callis has reviewed the Medication Logs and confirmed that the logs accurately document the

medication he gave to Mr. Armann on March 18 and 19, 1999.[3] (Id.)

The Medication Logs reveal that on March 18 and 19, 1999, Mr. Armann took the following medications:

**March 18, 1999**

| Time | Medication | Dosage | |
|---|---|---|---|
| 0715 | Seconal | 2 tablets = | 200 milligrams Secobarbital |
| 0715 | Fironal | 2 tablets = | 100 mg Butalbital, 650 ml Aspirin, 80 ml Caffeine |
| 0715 | Fioricet | 2 tablets = | 100 mg Butalbital, 650 Acetominophen, 80 mg Caffeine |
| 0715 | Compazine | 2 tablets = | either 10 or 20 mg prochlorperazine |
| 0715 | Midrin | 2 tablets = | 130 mg Isometheptene Mucate, 200 mg Dichloralphenazone, and 650 mg Acetaminophen |
| 0747 | Phenergan | 1 tablet = | 25 mg Promethazine |
| 1010 | Seconal | 2 tablets = | 200 milligrams Secobarbital |

[3]Mr. Armann's medical records confirm the fact that Mr. Armann was receiving numerous medications throughout his confinement in Mannheim. The mental health intake interview of Mr. Armann conducted at Mannheim (also known as the United States Army Confinement Facility-Europe) states that Mr. Armann was taking the following medications: Seconal, Cirocet (mis-spelling of Fioricet), Elavil, and Compazine. (Petitioner's Exhibit G) The Chronological Record of Medical Care maintained by Mannheim also confirm that Mr. Armann was receiving Seconal, Elavil and Compazine. (Id.) Upon his arrival at the USDB Mr. Armann was seen by medical personnel who documented that "[Mr. Armann] suffers from extreme headaches and has about 12 different types of med that he arrived [with] at the DB." (Petitioner's Exhibit H) The mediation history on the Preliminary Intake Risk Assessment prepared at the USDB, prepared on November 2, 1999, lists the following medications as ones Mr. Armann had taken in the past: "Secobarbital, Fioricet, Midrin, Amitriptyline, Paxil, Thorazine, Cirocet, Elivil, Compazine, Desyrel, Risperdal, Depakote, Prozac, Pzeroxitine, Verapmirl, and Atenolol." (Petitioner's Exhibit B) Furthermore, Sergeant Perez' testimony discussed previously also corroborates the Medication Logs.

| | | | |
|---|---|---|---|
| 1010 | Fironal | 2 tablets = | 100 mg Butalbital, 650 ml Aspirin, 80 ml Caffeine |
| 1010 | Fioricet | 2 tablets = | 100 mg Butalbital, 650 Acetominophen, 80 mg Caffeine |
| 1010 | Compazine | 2 tablets = | either 10 or 20 mg prochlorperazine |
| 1010 | Midrin | 1 tablet = | 65 mg Isometheptene Mucate, 100 mg Dichloralphenazone, and 325 mg Acetaminophen |
| 1010 | Phenergan | 1 tablet = | 25 mg Promethazine |
| 2125 | Elavil | 6 tablets = | 150 mg amitriptyline |

**March 19, 1999**

| | | | |
|---|---|---|---|
| 0923 | Seconal | 2 tablets = | 200 milligrams Secobarbital |
| 0923 | Fironal | 2 tablets = | 100 mg Butalbital, 650 ml Aspirin, 80 ml Caffeine |
| 0923 | Fioricet | 2 tablets = | 100 mg Butalbital, 650 Acetominophen, 80 mg Caffeine |
| 0923 | Compazine | 2 tablets = | either 10 or 20 mg prochlorperazine |
| 0923 | Midrin | 2 tablets = | 130 mg Isometheptene Mucate, 200 mg Dichloralphenazone, and 650 mg Acetaminophen |
| 0925 | Phenergan | 1 tablet = | 25 mg Promethazine |
| 1426 | Seconal | 2 tablets = | 200 milligrams Secobarbital |
| 1420 | Fironal | 2 tablets = | 100 mg Butalbital, 650 ml Aspirin, 80 ml Caffeine |
| 1420 | Fioricet | 2 tablets = | 100 mg Butalbital, 650 Acetominophen, 80 mg Caffeine |
| 1420 | Compazine | 2 tablets = | either 10 or 20 mg prochlorperazine |
| 1420 | Midrin | 1 tablet = | 65 mg Isometheptene Mucate, 100 mg Dichloralphenazone, and 325 mg Acetaminophen |
| 1510 | Phenergan | 1 tablet = | 25 mg Promethazine |

2130 Elavil 6 tablets = 150 mg amitriptyline

Seconal is a barbiturate that can be used to treat acute or chronic pain. (Petitioner's Exhibit I) It is a short-acting barbiturate when taken orally with onset of action within ten to fifteen minutes and a duration of action ranges from three to four hours. Barbiturates affect the Central Nervous System (CNS). Taking Seconal with other CNS depressants may result in additional CNS-depressant effects. Seconal may impair the mental and or physical abilities required for the performance of potentially hazardous tasks, such as driving a car or operating machinery. (Id.)

Fiorinal is a combination of 50 milligrams of Butalbital, a barbiturate, 325 milligrams of Aspirin, and 40 milligrams of Caffeine. (Petitioner's Exhibit J) It is often used to treat headaches. Fiorinal may impair the mental and or physical abilities required for performance of potentially hazardous tasks such as driving a car or operating machinery. Furthermore other CNS depressants may produce an additive CNS depression when taken with Fiorinal and should be avoided. (Id.)

Fioricet is a combination of 50 milligrams of Butalbital, a barbiturate, 325 milligrams of Acetaminophen, and 40 milligrams of Caffeine. (Petitioner's Exhibit K) Like Fiorinal, Fioricet is used to treat headaches. The only difference between the two is that Fioricet uses acetaminophen as an analgesic rather than aspirin. Fioricet may impair mental and physical abilities. Furthermore, CNS depressants may produce an additive CNS depression when taken with Fioricet. (Id.)

Compazine contains prochlorperazine and is used to control severe nausea and vomiting, management of the manifestations of psychotic disorders, and short-term treatment of

generalized non-psychotic anxiety. (Petitioner's Exhibit L) Compazine comes in both tablet and suppositories, and the Medication Log indicates Mr. Armann was receiving both tablets and suppositories. The Chronological Record of Medical Care entry from Mannheim dated October 16, 1998 states that Mr. Armann was receiving "COMPAZINE - TRANQUILIZER 5-10 MG PDBO," indicating that Mr. Armann was receiving the compazine to treat manifestations of psychotic disorders. (Petitioner's Exhibit G) Compazine should not be used in the presence of large amounts of central nervous system depressants (alcohol, barbiturates, narcotics, etc.). (Id.)

Midrin contains 65 milligrams of Isometheptene Mucate, 100 milligrams of Dichloralphenazone, and 325 milligrams of Acetaminophen and is used to treat migraine headaches. (Petitioner's Exhibit M) The dichloralphenazone is a mild sedative that reduces the patient's emotional reaction to the pain. (Id.)

Phenegran are tablets that contain either 12.5 milligrams, 25 milligrams, or 50 milligrams of promethazine hydrochloride. (Petitioner's Exhibit N) Promethazine has several uses, the only one relevant to Mr. Armann's case is that it can be used as a sedative. (Id.) The sedative effect of promethazine is additive to the sedative effects of central nervous system depressants. When promethazine is given concomitantly with barbiturates, the dose of barbiturates should be reduced by at least one-half. (Id.)

Elavil tablets contain amitriptyline hydrochloride and is used as an anti-depressant. (Petitioner's Exhibit O) Elavil may enhance the response to the effects of barbiturates and other CNS depressants. Elavil can impair the patient's mental and or physical abilities required for performance of hazardous tasks, such as operating machinery or driving a motor vehicle. (Id.)

To state it mildly, the amounts of medication Mr. Armann took on March 19, 1999, raises

grave concerns about his ability to understand the nature of the proceedings on that day and to intelligently assist in his defense. Throughout the course of the day, Mr. Armann ingested **800 mg** of barbiturates. The Physician's Desk Reference indicates that the standard dosage for Seconal when it is used before surgery as a preanesthetic is 200-300 mg one to two hours before surgery. (Petitioner's Exhibit I) In addition to the massive dosage of barbiturates, the Midrin tablets Mr. Armann took contained 300 milligrams of dichloralphenazone, a sedative that can increase the effects of CNS depressants such as barbiturates. Also, Mr. Armann received Phenergan. Phenergan's sedative effect is additive to the sedative effects of barbiturates, and when taken with barbiturates the dose of barbiturates should be reduced by at least one-half. So, not only was Mr. Armann on huge amounts of barbiturates, he was also on medication that dramatically increased the effects of the barbiturates.

These amounts of mediation severely impaired Mr. Armann's ability to understand the nature of the proceedings against him and to assist his attorneys in his defense. Mr. Armann will present the testimony of Dr. Terry Martinez, a Toxicologist and Pharmacologist, to explain the physiological impact these types and amounts of medications would have on an individual and their ability to understand legal proceedings and assist in their own defense. A copy of Dr. Martinez' curriculum vita is attached as Petitioner's Exhibit P.

Mr. Armann raised this issue with the CAAF, filing the medication logs with his brief along with detailed information concerning the medications he was on and how they impaired his competence. (Petitioner's Exhibit D) Despite raising this issue with the CAAF, the CAAF failed to address the issue, affirming Mr. Armann's conviction by stating "That the decision of the United States Army Court of Criminal Appeals is affirmed." (Petitioner's Exhibit Q)

II. Mr. Armann's Claim That He Was Not Competent At His Plea and Sentencing Did Not Receive Full and Fair Consideration

The Supreme Court has held that "when a military decision has dealt fully and fairly with an allegation raised in [a habeas petition], it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence. Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045, 1049 (1957). "It is the limited function of the civil courts to determine whether the military have given fair consideration" to each claim raised in the petition." Id. at 144, 1050.

The Third Circuit has struggled with applying Burns' full and fair consideration test. Brosius v. Warden, U.S. Penitentiary, Lewisburg, 278 F.3d 239, 244 (3rd Cir. 2002). Without determining conclusively the meaning of Burns, the Third Circuit has found that its review of a military habeas case may not go further than its inquiry in a state habeas case and has therefore applied the rules applicable to reviewing state court determinations. Id. at 245. Accordingly, the military court's determination of historical facts are presumed to be correct pursuant to 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. With respect to any claim adjudicated on the merits in the military court, the habeas court shall not grant relief unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Id; Fell v. Zenk, 139 Fed.Appx. 391 (3rd Cir. 2005) (applying § 2254 standards to military habeas).

Military law treats the defendant's competency as an interlocutory question of fact.

R.C.M. 909(e)(1). So, if a ruling on the defendant's competency has been made, pursuant to 28 U.S.C. § 2254(e)(1), that finding is presumed to be correct. In re Heidnik, 112 F.3d 105, 112 n.7 (3rd Cir. 1997). However, if the military court never makes a factual finding it can not be presumed to be correct. Zilich v. Reid, 36 F.3d 317, 322 (3rd Cir. 1994) (if state court makes not findings of fact the presumption of correctness does not apply as there is nothing to which it can attach.) "Where no findings of fact have been made by the state courts with respect to a particular habeas claim, however, a federal habeas petitioner is entitled to some form of federal evidentiary hearing so long as his 'allegations, if proved, would establish the right to habeas relief.'" Brown v. Johnson, 224 F.3d 461, 465 (5th Cir. 2000) (quoting Young v. Herring, 938 F.2d 543, 559 (5th Cir. 1991)); Townsend v. Sain, 372 U.S. 293, 307, 83 S.Ct. 745 (1963) ("There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant."); Randy Hertz & James S. Leibman, Federal Habeas Corpus Practice and Procedure § 20.3c n.19 (4th ed. 2001).

The failure of the military courts to make factual findings regarding Mr. Armann's competency at the time of trial was not for lack of effort on Mr. Armann's part. Mr. Armann raised this issue in detail in his filing before the CAAF and supplemented that argument with the Medication Logs and detailed information from medical journals describing the effects of the medications he had been given on the day of his plea and sentencing. The Medication Logs themselves are enough to cause any prudent court to be concerned with Mr. Armann's competency at the time of trial. Furthermore, it is self-evident that the sanity board's conclusions that Mr. Armann was competent in February 1999 could provide no basis for finding that Mr. Armann was competent on March 19, 1999, when under the influence of the medications listed

in the Medication Logs. Drope v. Missouri, 420 U.S. 162, 181, 95 S.Ct. 896, 908 (1975) ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.").

Mr. Armann's expert at sentencing, Captain Keith Caruso, did testify that Mr. Armann was sane at the time of the offense despite being on medication for migraine headaches. (Gov. Response to Petition for Writ of Habeas Corpus Exhibit T) That opinion, however, does not support a finding that Mr. Armann was competent on March 19, 1999. This is especially true when it is observed that Captain Caruso interviewed Mr. Armann in preparation for his testimony on March 17, 1999, and the medication logs reveal that Mr. Armann did not receive any medication on the 17th until 2100 hours (9:00 p.m.). (Petitioner's Exhibit A p. 323, Petitioner's Exhibit E)[4] Finally, during the plea and sentencing the trial judge did not inquire at all into whether or not Mr. Armann was under the influence of any medication and if so whether the medication interfered with his ability to understand the proceedings and assist counsel. (Petitioner's Exhibit A pp. 62-133)

Questions regarding a soldier's competency at the time of trial may be raised for the first time on appeal, pursuant to R.C.M. 1203(c)(5). United States v. Massey, 27 M.J. 371, 373-74 (C.M.A. 1989); Estes, 62 M.J. at 550. As the Supreme Court has acknowledged, "the right not to stand trial while incompetent is sufficiently important to merit protection even if the defendant

---

[4]Captain Caruso also interviewed Mr. Armann for about one hour on March 18, 1999, a day on which Mr. Armann received large amounts of medication. However, the record does not indicate when during the day on March 18, 1999, the interview took place and the Medication Logs indicate that Mr. Armann did not receive medication from 1010 (10:10 a.m.) to 2125 (9:25 p.m.).

has failed to make a timely request for a competency determination." Cooper v. Oklahoma, 517 U.S. 348, 354 n.4, 116 S.Ct. 1373, 1377 n.4 (1996). This is true because "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 841 (1966). So, Mr. Armann properly raised his competency issue before the CAAF.

If questions concerning a serviceman's competency arise on appeal the appellate court may order a sanity board pursuant to R.C.M. 706 to inquire into the accused's competency at the time of trial. Furthermore, if the appellate court determines that it cannot rule upon the issue of the accused's mental capacity without further development of the factual basis of the claim the appellate court can remand the case to the convening authority for a hearing generally referred to as a DuBay hearing based upon the United States Court of Military Review's opinion in United States v. DuBay, 37 C.M.R. 411 (C.M.A. 1976). United States v. King, 32 M.J. 558, 559 (A.C.M.R. 1991); Watson v. McCotter, 782 F.2d 143, 145 n.4 (10th Cir. 1986) ("The military courts have set up a procedure for supplementary evidentiary hearings when a convicted person raises issues about which there is a factual dispute that cannot be settled with mere examination of the record. See United States v. DuBay, 17 C.M.A. 147, 149, 37 C.M.R. 411 (1976)). Accordingly, when Mr. Armann raised the issue of his competency at the time of his plea and sentencing with the CAAF that court had well developed procedures in place to create a factual record to allow it to rule on Mr. Armann's claim. The CAAF failed to develop a factual record, and failed to make any finding whatsoever regarding Mr. Armann's competency on March 19, 1999.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court is

precluded from conducting an evidentiary hearing if the petitioner has failed to develop the factual basis of a claim in state court proceedings. 18 U.S.C. § 2254(e)(2). However, "If the habeas petitioner 'has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, § 2254(e)(2) will not preclude an evidentiary hearing in federal court.'" Campbell v. Vaughn, 209 F.3d 280, 287 (3rd Cir. 2000) (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)); Williams v. Taylor, 529 U.S. 420, 431-437, 120 S.Ct. 1479, 1488-91 (2000) (same);Thomas v. Varner, 428 F.3d 491, 498 (3rd Cir. 2005) (same). As the Supreme Court explained in Williams, "comity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort. In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2)." Williams, 529 U.S. at 437, 120 S.Ct. at 1491.

An evidentiary hearing is required here. The Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" Cooper v. Oklahoma, 517 U.S. 348, 354 116 S.Ct. 1373, 1376 (1996) (quoting Medina v. California, 505 U.S. 437, 453, 112 S.Ct. 2572, 2581 (1992)).

> Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.

Riggins v. Nevada, 504 U.S. 127, 139-40, 112 S.Ct. 1810, 1817-1818 (1992) (Kennedy, J., concurring). The standard for competence to stand trial or plead guilty is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against

him." Godinez v. Moran, 509 U.S. 397, 396, 113 S.Ct. 2680, 2685 (1993) (internal citations omitted).

The military justice system presumes that all soldiers are sane and competent. United States v. Estes, 62 M.J. 544, 548 (A. Ct. Crim. App. 2005); R.C.M.909(a) and (b). "[T]he defense bears the burden of proving, by a preponderance of the evidence, that an accused was suffering from a severe mental disease or defect at trial which rendered him unable to understand the nature of the proceedings against him or to cooperate intelligently in the defense of his case, i.e., he lacked the mental capacity to participate in his court-martial." Id. at 549.

While being under the influence of drugs during court proceedings does not per se render a defendant incompetent to enter a plea, United States ex rel Fitzgerald v. Lavallee, 461 F.2d 601, 602 (2nd Cir. 1972), "[w]here significant evidence does come to the attention of the district court that defendant has recently taken drugs, the court has the obligation to inquire further before determining that a competency hearing is not necessary." United States v. Cole, 813 F.2d 43, 47 (3rd Cir. 1987). In Mr. Armann's case, the CAAF was made aware that Mr. Armann was under the influence of multiple drugs at the time of plea and sentencing and took no action to inquire as to how those drugs may have effected Mr. Armann's competency. That is simply not acceptable. This Court has been put on notice that Mr. Armann was under the influence of numerous medications at the time of his plea and sentencing and that the military courts have never taken any steps to determine how the ingestion of those medications effected Mr. Armann's competency. Given these facts, this Court cannot rule on Mr. Armann's claim without first conducting an evidentiary hearing to provide the facts from which it can make a decision as to Mr. Armann's competency at the time of his plea.

If, following the evidentiary hearing, the Court finds that the record is inadequate to support a finding that Mr. Armann was competent to plead guilty, his conviction must be vacated. Cole. 813 F.2d at 48. In cases in which the record has not adequately established the competency of the defendant to stand trial, the Supreme Court has repeatedly found that the defendant's due process rights are not adequately protected by trying to determine the defendant's competency to stand trial at a hearing held years after the trial. Drope v. Missouri, 420 U.S. 162, 183 95 S.Ct. 896, 909 (1975); Pate, 383 U.S. at 386-387, 86 S.Ct. at 842-843; Dusky v. United States, 362 U.S. 402, 403, 80 S.Ct. 788, 789 (1960).

The government, citing Tenth Circuit case law, argues that the military did give full and fair consideration to Mr. Armann's claim that he was not competent to enter his plea due to the medication he ingested on March 19, 1999. Even under the Tenth Circuit's case law this Court must consider Mr. Armann's competency claim.

The Tenth Circuit has adopted a four part test originally put forth by the Fifth Circuit in Caley v. Callaway, 519 F.2d 184, 199-203 (5th Cir. 1975), for determining if review of a military conviction on habeas corpus is appropriate. Dodson v. Zelez, 917 F.2d 1250, 1252-53 (10th Cir. 1990). The four factors are:

1. The asserted error must be of substantial constitutional dimension.

2. The issue must be one of law rather than of disputed fact already determined by the military tribunals.

3. Military considerations may warrant different treatment of constitutional claims.

4. The military courts must give adequate consideration to the issues involved and apply proper legal standards.

Id. (citing Calley, supra) The Tenth Circuit employs these four factors in a balancing test to

determine if consideration of a particular claim is appropriate. Id.

Mr. Armann's competency claim is of substantial constitutional dimension. As discussed above, forcing an incompetent to plead guilty violates due process.

While competency is a question of fact, that is not dispositive as that fact has not already been determined by the military tribunals. Mr. Armann has already explained that the military courts failed to make any finding as to his competency on the day of his plea and sentencing. If this Court were to deny review of Mr. Armann's claim based solely on the fact that competency is a question of fact, then the Court would be powerless in any case to review a serviceman's claim that he was not competent at trial. This would be true even if the serviceman raised the issue with the military courts and they arbitrarily refused to consider the claim. What separates a competency finding from other factual findings is that a finding of competence embodies a ruling on a question of constitutional law: does due process allow the proceedings to proceed. This unique aspect of a competency finding distinguishes it from any other factual finding made by the trial court.

There is no suggestion in the government's brief that any unique military considerations apply to competency findings. The military, of necessity, employees the same test for competency as do civilian federal and state courts.

Finally, the military courts did not give adequate consideration to the issues involved and apply proper legal standards. As discussed at length above, the military courts did not consider Mr. Armann's competency claim. The government's claim that summary denials of claims can constitute full and fair consideration miss the mark in this case. The government cites Watson v. McCotter, 782 F.2d 143, 144-45 (10th Cir. 1986) for the proposition that: "If an issue is brought

before the military board of review and is disposed of, even summarily, the federal habeas court will find that the military tribunal has given the claim full and fair consideration." Gov. Response to Petition for Writ of Habeas Corpus p. 8. The government's filing presents this language in quotations, indicating it is a direct quote from Watson. It is not. The Court will search pages 144 and 145 of the Watson opinion in vain searching for the above quoted language. What Watson says is: "When an issue is briefed and argued before a military board of review, we have held that the military tribunal has given the claim fair consideration, even though its opinion summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion. See King, 430 F.2d at 735." Watson, 782 F.2d at 145. In King the Tenth Circuit found that the speedy trial issue raised in the petitioner's habeas petition had been given full and fair review because the issue had been briefed and argued before the military court of review and that court specifically stated that it did not find the issue meritorious nor that it required discussion. King, 430 F.2d at 735.

What King and Watson make clear is that if the issue raised by the petitioner in his civil habeas petition was briefed before a military court **and** the military court acknowledges the issue and rules upon it, even summarily, then the issue has been given full and fair consideration by the military. That is not what happened in Mr. Armann's case. The competency issue was raised by Mr. Armann, not his counsel, pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982). Gov. Response to Petition for Writ of Habeas Corpus Exhibit M p.2) Under Grostefon, a counseled defendant can both have his counsel file an appellate brief and personally raise issues counsel will not raise. The United States did not file a formal reply to Mr. Armann's supplement to his petition for review, and relied upon their brief filed with the Army Court of Criminal

Appeals to oppose the petition for review. (Petitioner's Exhibit R) Mr. Armann did not raise the competency issue before the Army Court of Criminal Appeals. (Petitioner's Exhibit S) Accordingly, the competency issue was not even fully briefed before the CAAF. Furthermore, the CAAF did not acknowledge the competency issue, even summarily, in its one sentence ruling upholding the ruling of the Army Court of Criminal Appeals. (Petitioner's Exhibit Q) Accordingly, even under the Tenth Circuit's case law, the CAAF did not give adequate consideration to the issue.

All of the Calley factors favor this Court reviewing Mr. Armann's competency claim. The issue is of constitutional dimension involving a fact not adjudicated by the CAAF, there is no military considerations counseling against review, and the CAAF did not adequately consider the issue. Thus, this Court may hear Mr. Armann's claim.

III. Conclusion

The CAAF did not give Mr. Armann's competency claim full and fair consideration. This is true whether this Court follows the Third Circuit's lead and applies AEDPA or the Tenth Circuit's lead and applies the four part test established in Calley. Accordingly, this Court is not barred from considering the competency claim. Because Mr. Armann has presented significant evidence to establish that he was not competent when he pled guilty and was sentenced this Court must hold an evidentiary hearing on this issue.

Respectfully submitted,

/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
P.A. I.D. No. 88653