1    ACC:  Major DePeppe, sir.

2    MJ:  Do both defense counsel understand and agree to those roles

3    in this case?

4        Major DePeppe?

5    DC:  Yes, Your Honor.

6    MJ:  Captain Howard?

7    ADC:  Yes, Your Honor.

8    MJ:  It appears that counsel for both sides have the requisite

9    qualifications.  All personnel required to be sworn have been sworn.

10       Prior to this session of court the court held an RCM 802

11   conference, present at which were counsel for both sides and the

12   military judge.  We discussed a variety of matters pertaining to this

13   court-martial that we're going to take up during this session of

14   court.

15       If counsel for either side believe the court incompletely or

16   inaccurately states any matter raised during that conference, please

17   speak up.

18       The first matter is the docketing, or delay, of this

19   court-martial.

20       This case was originally docketed for trial on

21   24 February 1999, but was requested to be delayed by the defense and

22   has been rescheduled for today, 19 March 1999.

23       Do both sides concur with that rendition of events?

24       Trial?

25   ATC:  Yes, Your Honor.

1    MJ:   Major DePeppe?

2    DC:   Yes, Your Honor.

3    MJ:   Major DePeppe, you have previously submitted what has been

4    marked as Appellate Exhibit I, a request for expert witness

5    assistance.

6         During the RCM 802 conference you informed the court that you

7    wished to withdraw that specific request to the court, because your

8    request has been satisfied as part of pre-trial negotiations in this

9    case.

10        Is that correct?

11   DC:   That's correct, Your Honor.

12   MJ:   During our last session of court the court ordered a inquiry

13   under RCM 706.

14        Have you been provided with the results of that inquiry, Major

15   DePeppe?

16   DC:   Yes, Your Honor.

17   MJ:   Did the government receive a coversheet, from the reviewing

18   authority, announcing its general results?

19   ATC:  Yes, Your Honor.

20   MJ:   Have you had that marked as an appellate exhibit?

21        If you have not done so already, please have it marked as the

22   appellate exhibit next in sequence during the next recess.

23        Major DePeppe, you've also made a motion, which has been

24   previously marked as Appellate Exhibit VII, concerning credit and

63

1   relief under Article 13 of the Code. It's the court's understanding

2   that you also wish to withdraw that motion at this time.

3       DC: That's correct, Your Honor.

4       MJ: The defense has previously submitted a brief concerning the

5   maximum punishment that may be imposed in this case. That has been

6   marked as Appellate Exhibit VII, and the government responded with a

7   document that has been marked as Appellate Exhibit XI.

8       Does either party have anything to add to its briefs in this

9   matter?

10       Major DePeppe?

11       DC: No, Your Honor.

12       MJ: Major Meredith or Captain Coyne?

13       TC: No, Your Honor.

14       MJ: The court has ruled in this case that the maximum punishment

15   that my be imposed is life without parole.

16       The plain text of Articles 56(a), 80, and 118 indicate that no

17   further action by the President is necessary to impose this sentence.

18   And the court will instruct or consider this to be the maximum

19   punishment that may be imposed in the event of a finding of guilty to

20   the offense of attempted premeditated murder.

21       Does either side have any questions concerning the court's

22   ruling in this matter?

23       Trial?

24       ATC: No, Your Honor.

25       MJ: Defense?

1    DC:  No, sir.

2    MJ:  The court has received what has been marked as Appellate
3    Exhibit XII, a motion in limine.

4        Captain Howard, I believe that you were a proponent of that
5    motion.  The court ordered your motion granted.

6        Are you satisfied with the government response on the matters
7    raised in Appellate Exhibit XII?

8    ADC:  Yes, Your Honor.

9    MJ:  Appellate Exhibit XIII is a motion for appropriate relief in
10   which you have requested the court to abate the proceedings in the
11   event the convening authority fails to grant testimonial immunity to
12   certain individuals.

13       Captain Howard, do you wish to withdraw that motion in lieu of
14   the pre-trial negotiations and pre-trial agreement in this case?
15   [The defense counsel and the assistant defense counsel confer.]

16   ADC:  No, Your Honor, we do not wish to withdraw.

17   MJ:  Do you want me to abate the proceedings?
18   [The defense counsel and the assistant defense counsel confer.]

19   ADC:  Your Honor, the defense's position is modified a bit.  We
20   would not like you to abate proceedings, but what we'd like you to
21   do-- what we would like, ideally, to have these witnesses present and
22   testify.  In the alternative have them declared unavailable and have
23   their sworn statements introduced in lieu of.

24   MJ:  What's the government's position on the defense proffer?

1   TC:  The government's position is that first we'd have to request

2   on the record which witnesses the defense is talking about.

3        Initially there was a request for about five grants of

4   immunity, and then, I think, apparently two, and we need to know

5   which witnesses defense is talking about.

6   MJ:  Okay.

7        Has testimonial immunity been granted to any of the witnesses

8   described in Appellate Exhibit XIII?

9   TC:  Not looking at it, at this time----

10  MJ:  [Reading AE XIII.]  That's Specialist Roeseler, Private Oie,

11  Private Gibson.  Those are the three individuals that are the subject

12  of the defense motion.

13  TC:  None, Your Honor.

14  MJ:  Okay.

15  TC:  The government's position is that all three of the witnesses

16  are available if they choose to testify or not, that's up to them.

17       However, under RCM 704, the decision to grant immunity is

18  within the discretion of the general court-martial convening

19  authority.  And that discretion can't be attacked and proceedings

20  can't be abated unless two important factors are met, and they are

21  clearly not met here.

22       One, is that the government has engaged in discriminatory use

23  of immunity to obtain a tactical advantage.  Which, I cite a federal

24  case, Chandler, that's in the appendix, that clearly shows that not

25  granting testimonial immunity to witnesses that are targets of

1   prosecution is perfectly legitimate for the government to do and Oie,

2   Roeseler, and Gibson are all targets of prosecution.

3        The second element that the defense has not met is that the

4   witnesses' testimony must be material and clearly exculpatory.  We're

5   at a sentencing hearing there's no way that this could be clearly

6   exculpatory.  And, even if we were on the merits, if you look at the

7   statements of these prior witnesses, there's nothing in them that's

8   exculpatory at all.

9        They have failed to meet their burden.

10       As to the notion that because these witnesses have made

11  themselves unavailable or attempt to by invoking their rights that

12  somehow 804 kicks in and their statements are admitted as statements

13  against interest; we think that's disingenuous.  Defense hasn't shown

14  that they're clearly exculpatory and many of these statements that

15  defense wants to admit are not statements against interest; for

16  example, the statement by Private Oie that she never took Armann

17  seriously, definitely not a statement against interest.  The

18  government believes it's a lie.  More than that, it's a statement

19  that's clearly self-serving.

20   MJ:  Captain Howard?

21   ADC:  Sir, the first thing is we're not asking for abatement

22  anymore.  We're asking to get certain facts in front of the

23  fact-finder that are clearly important to your determination of a

24  sentence.  We have requested these witnesses, we have talked to the

25  attorneys for these witnesses, and they have assured us that if

1 | called to testify they will invoke. What we're trying to do is to
2 | get these facts in front of you. There is no other way than
3 | introducing their sworn statements. And in the motion for
4 | appropriate relief we listed some of the reasons why it is important
5 | that these statements be admitted, why these witnesses are important.
6 | Even if they don't rise to the level of exculpatory, they rise to the
7 | level of affecting a sentence here. It goes to the commission of
8 | offense. All these people were very involved in the circumstances
9 | that led to the shooting of PFC Bell. I think these are very
10 | important facts, sir, and we ask that you consider those statements
11 | and declare them non-available.

12 |     MJ:  If I understand your position, Captain Howard, and, correct
13 | me if I'm wrong, you're not asking for abatement, correct?

14 |     ADC:  Correct, sir.

15 |     MJ:  The court understands that.

16 |     But what you're asking me to do is to declare these individuals
17 | unavailable because, number one, you want to introduce, ideally,
18 | their testimony here today, correct?

19 |     ADC:  Correct, sir.

20 |     MJ:  But you have a good-faith belief, based upon representations
21 | of counsel, that they will invoke their rights against
22 | self-incrimination, if called to testify.

23 |     ADC:  Correct, sir.

24 |     MJ:  If abatement is not requested, what I'm going to do is to
25 | treat this as an evidentiary motion in limine to authorize the

1  admission of certain documents.  And I will ask you, Captain Howard,

2  if you are willing to defer consideration of the admissibility of

3  these statements until after the entry of pleas or if you wish this

4  resolved prior to the entry of pleas?

5       In other words, is this a showstopper for you?

6  ADC:  Sir, it's not a showstopper.  We can wait until after the

7  entry of pleas.

8  MJ:  Well, and the court points out that the Military Rules of

9  Evidence may be relaxed during a sentencing proceeding.  So, if I

10  enter findings of guilty against Private Armann, I will entertain a

11  request by the defense to relax rules of sentencing, in regards to

12  the admissibility of prior sworn statements of unavailable witnesses.

13  So we may not need to get as involved as we might if we take up this

14  issue at this point.

15  ADC:  Thank you, sir.

16  MJ:  The next issue raised at the RCM 802 conference was the issue

17  of sequestration.  Let's take up the issue of--

18       Is it PFC Bell, trial?

19  TC:  Yes, Your Honor.

20  MJ:  The alleged victim in this case is expected to testify.

21       On behalf of the government or defense?

22       Who's going to call Private Bell?

23  ADC:  The defense, Your Honor.

24  MJ:  And, Captain Howard, since you stood up on that issue, let me

25  ask you another question.

1    You don't object to Private Bell being present during the

2    providence inquiry in this case, correct?

3    ADC:  No, Your Honor.

4    We think it's important that she is present, sir, during the

5    providence inquiry.

6    MJ:  You simply ask that she be excluded from the sentencing

7    hearing in the interval between the entry of findings of guilt and

8    when she is called to testify.

9    ADC:  Correct, Your Honor.

10   We expect her to be called to testify, probably, in the middle

11   of our sentencing case.

12   MJ:  How many witnesses does the government anticipate calling in

13   aggravation?

14   ATC:  Possibly one.

15   MJ:  And who would that be, if called?

16   TC:  Lund.

17   MJ:  That is Private Lund?

18   TC:  Yes, Your Honor.

19   MJ:  Captain Howard, the court has consulted Title 18 of the US

20   Code, specifically Section 3510.  And it provides that,

21   notwithstanding any other statute, rule, or provision of law, a

22   United States District Court shall not order any victim of an offense

23   excluded from the trial of a defendant accused of that offense

24   because such victim may, during the sentencing hearing, make a

25   statement or present any information in relation to the sentence.

70

1       In your assessment, how does that affect your request for

2 sequestration?

3    ADC: Well, sir, I think this a little different. In this case

4 the defense is calling her as their own witness. Obviously her

5 position and status causes her to be adverse to the interests of

6 Private Armann. We are concerned that when she comes in here that

7 she testifies as to her own recollection and she is not influenced by

8 the other witnesses that she hears from.

9       We still ask that she be sequestered up until her testimony.

10    MJ: Why can't you call her first?

11 [The defense counsel and the assistant defense counsel confer.]

12    ADC: Sir, if I heard the statute quoted correctly, it appears

13 that the intent of that statute was that the victim hear Private

14 Armann testify on sworn or unsworn. She will testify prior to

15 Private Armann taking the stand, if he does take the stand. And she

16 will be able to hear him not only on providence but also if he does

17 take the stand. And she'll be called long before he does that.

18    MJ: Okay.

19       I'm going to cite another statute to you here, Title 42 of the

20 US Code, Section 10606, styled victim's rights. A statute which is,

21 upon its face, applicable to all departments and agencies of the

22 United States. In it congress mandates that we shall make our best

23 efforts to see that victims of crime are accorded certain rights and

24 among those rights is the right to be present at all public court

25 proceedings relating to the offense, unless I determine that the

1  testimony by the victim would be materially affected if the victim

2  heard other testimony in trial.

3       So, essentially, what you're saying is you believe that her

4  testimony would be materially affected if I allow her to remain in

5  the courtroom after the entry of findings but before you call her to

6  testify during the case in extenuation and mitigation?

7  ADC:  Yes, sir.

8       It's to prevent it being materially affected, not saying that

9  it would be, but to prevent that problem from occurring.

10  MJ:  What's the government's position on this?

11  TC:  The government's position is that it's not going to

12  materially affect the testimony; however, on the abundance of caution

13  we will not oppose the defense motion.

14       We do believe that on top of the statute, just as a matter of

15  common humanity, she has a right to see as much of this as possible.

16  ADC:  And, sir, again, we're only asking for a limited

17  sequestration.  Not for the entire sentencing hearing.

18       As proffer, PFC Bell has made numerous statements.  And in

19  subsequent interviews and through those statements she has been

20  inconsistent.  We want to make sure that she is not affected

21  materially by what she hears in this courtroom prior to her

22  testimony.

23  MJ:  Okay.

72

1    We'll take this up after the completion of the providence

2    inquiry, since neither party objects to her presence during that

3    portion.

4        That's correct, right?

5    ADC:  Correct, sir.

6    MJ:  Does the defense have any further motions in this matter?

7    DC:  No, Your Honor.

8    MJ:  Private Armann, do you remember the last time we were

9    together?

10        I explained to you your rights to forum.

11        Now that means it's your decision as to how you want to be

12    tried in this case.

13        Do you need me to explain your rights in this regard to you

14    again?

15    ACC:  No, sir.

16    MJ:  Major DePeppe, do you wish to select forum prior to going any

17    further?

18    DC:  Your Honor, the defense requests trial by judge alone.

19    MJ:  Private Armann, let me ask you, do you want to be tried by

20    the military judge alone today?

21    ACC:  Yes, sir.

22    MJ:  There is a pre-trial agreement in connection with this case,

23    correct?

24        Trial?

25    ATC:  Yes, sir.

1    ADC:  Yes, Your honor.

2    MJ:  It's the court's understanding that the request to be tried

3    by military judge alone is part of that agreement.

4        Is that correct, Captain Coyne?

5    ATC:  Yes, it is, Your Honor.

6    MJ:  Major DePeppe, do you concur?

7    DC:  Yes, Your Honor.

8    MJ:  The court has before it what has been marked as Appellate

9    Exhibit X, a pre-trial agreement and offer to plead guilty, a 2-page

10    typewritten document.

11        Private Armann, do you have a copy of the offer portion of the

12    pre-trial agreement at the table?

13    ACC:  Yes, sir.

14    MJ:  You'll note that in paragraph 2c, on the page headed, "Offer

15    to Plead Guilty," dated 24 February 1999, you state that you agree to

16    have your case tried by military judge and waive your rights to a

17    trial by military panel.

18        Now, congress has established an intricate system that's

19    designed to ensure the rights of the individual soldier are protected

20    when you come into contact with military justice authorities.  One of

21    the many rights that are given to you is that you, and you alone,

22    determine how you wish to be tried in a court-martial.

23        Now, what you've done in this case is to say to the convening

24    authority, if you approve my pre-trial agreement, I will request to

25    be tried by military judge alone.  The judge has to be here anyway,

1   and you'll be able to keep the panel members at work performing their
2   military duties.
3        That's lawful and you can make such an offer, but it's
4   important that before you make such an offer that you understand what
5   you're doing.
6        Prior to signing that offer, did you discuss your rights to
7   forum with your defense counsel?
8   ACC:  Yes, sir.
9   MJ:  I want to make sure that you understand one thing.  Despite
10  the fact that you've signed this offer and have agreed to request
11  trial by military judge, at this point, you still have the absolute
12  right to choose to be tried either by an officer panel, an enlisted
13  panel, or by a military judge.
14       Your signature on that document does not mean that you cannot
15  change your mind right now, if you chose to do so.  However, I must
16  advise you that if you decide at this point to request a trial by a
17  panel the government will have the option of withdrawing from the
18  agreement.
19       Do you understand that?
20  ACC:  Yes, sir.
21  MJ:  Now, take a moment and discuss these matters with your
22  defense counsel.
23  [The accused and his counsel did as directed.]
24  MJ:  Did you discuss those matters and your options as to forum
25  with your defense counsel?

1  ACC:  Yes, sir.

2  MJ:  Now, knowing that I, Lieutenant Colonel William T. Barto,

3  will be your military judge in this case, and having your rights as

4  to forum explained to you both by myself on the record in open court

5  and by your defense counsel, and having been advised that your offer

6  to request trial by military judge alone is not binding on you at

7  this point, do you still wish to request trial by military judge

8  alone?

9  ACC:  Yes, sir.

10  MJ:  The request for trial by military judge alone is approved.

11      The court is assembled.

12      Major DePeppe, are you ready to enter pleas in this matter?

13  DC:  Yes, Your Honor.

14  MJ:  Accused and counsel, please rise.

15  [The accused and his counsel did as directed.]

16  MJ:  Private Kurtis Armann, I now ask you, how do you plead?

17      Before receiving your plea, I must advise you that any motion

18  to dismiss any charge or to grant other appropriate relief should be

19  made at this time.

20      Your defense counsel will speak for you.

21      No further motions, Major DePeppe?

22  DC:  No further motions, Your Honor.

23  MJ:  Plea?

24  DC:  Private Kurtis Armann pleads:

25      To all Charges and Specifications:        Guilty.

1    MJ:   Thank you.

2       Please be seated.

3   [The accused and his counsel did as directed.]

4    MJ:   Private Armann, I'm now going to explain to you, fully, the

5   meaning and effect of your plea of guilty and conduct an inquiry so

6   that I can make sure you understand its meaning and effect.

7       I suggest that you keep a copy of the charges and

8   specifications in front of you so that you can refer to them readily

9   during this hearing.

10      I will not accept your plea of guilty unless I am convinced

11   that you understand its meaning and effect.

12      You're legally entitled to plea not guilty even though you

13   believe you are guilty, and thus place upon the prosecution the

14   burden of proving your guilt beyond a reasonable doubt.

15      A plea of guilty is equivalent to conviction; it's the

16   strongest form of proof known to the law.  On your plea of guilty

17   alone, without receiving any evidence, this court can find you guilty

18   of the offense to which you've entered a plea of guilty.

19      Your plea of guilty will not be accepted unless you realize

20   that by your plea you admit every act or omission in every element of

21   each offense to which you have pled guilty and that you are pleading

22   guilty because you really are, in fact, guilty.

23      If you're not convinced that you are guilty, you should not

24   allow any other consideration to influence you to plead guilty.

25      Do you understand what I just said?

1    ACC:  Yes, sir.

2    MJ:  Now, by your plea of guilty you waive, and when I say waive I

3    mean you give up, certain very important constitutional rights.

4         These rights are:

5         First, your right against self-incrimination; that is, your

6    right to remain silent and say nothing at all.

7         Second, is your right to a trial of the facts by this

8    court-martial; that is, your right to have this court determine

9    whether you are, in fact, guilty or not guilty based upon the

10   evidence that the prosecution would present and on any evidence that

11   you might present.

12        Third, is your right to be confronted by and cross-examine, in

13   open court, any witness against you.

14        Do you understand what those rights are?

15   ACC:  Yes, sir.

16   MJ:  Do you further understand that by pleading guilty you no

17   longer have those rights as to the charges you have entered a plea of

18   guilty?

19   ACC:  Yes, sir.

20   MJ:  Now, if you persist in your plea of guilt, you will be placed

21   under oath and I will question you to determine whether you are, in

22   fact, guilty.  If you tell me anything that is not true, those

23   statements may be used against you later for charges of perjury or

24   false statement.

25        Do you understand that?

1    ACC:  Yes, sir.

2    MJ:  Further, anything you tell me during this inquiry, if it's

3    relevant to the offenses to which you have entered a plea of guilty,

4    may be argued by the trial counsel and will be considered by me on

5    sentencing.  If it is relevant to the determination of an appropriate

6    sentence, and if we get to sentencing in this case.

7        Do you understand that?

8    ACC:  Yes, sir.

9    MJ:  Do you believe that you have had enough time and opportunity

10    to discuss this case with Major DePeppe and Captain Howard?

11    ACC:  Yes, sir.

12    MJ:  Major DePeppe, Captain Howard, have you had enough time and

13    opportunity to discuss this case with your client?

14        Major DePeppe?

15    DC:  Yes, Your Honor.

16    MJ:  Are you satisfied with Major DePeppe and Captain Howard?

17    ACC:  Yes, sir.

18    MJ:  Do you believe that their advice is in your own best

19    interest?

20    ACC:  Yes, sir.

21    MJ:  Are you pleading guilty voluntarily and of your own free

22    will?

23    ACC:  Yes, I am, sir.

24    MJ:  Has anyone tried, in any way, to force you to plead guilty?

25    ACC:  No, sir.

1   MJ:  Trial counsel, please swear the accused.

2   [The assistant trial counsel did as directed, and the accused was

3   sworn.]

4   MJ:  There is a stipulation of fact in this case that has been

5   marked Prosecution Exhibit 1 [for ID].

6       May the court have that document, please?

7   [The court reporter hands PE 1 for ID to the military judge.]

8   MJ:  The court has before it what's been marked as Prosecution

9   Exhibit 1 [for ID], a stipulation of fact including 18 attachments.

10      Private Armann, do you have a copy of this document at your

11  table?

12  ACC:  Yes, sir.

13  MJ:  Now, look up here where I am pointing, [holding up PE 1 for

14  ID and pointing to the bottom of the page] on page 7 of the

15  stipulation of fact itself.

16      Is this your signature above your signature block?

17  ACC:  Yes, sir.

18  MJ:  Did you read that before you signed it?

19      This entire document?

20  ACC:  Yes, I did, sir.

21  MJ:  Did you discuss it with your counsel before you signed it?

22  ACC:  Yes, sir.

23  MJ:  Now, a stipulation of fact is an agreement between trial

24  counsel, defense counsel, and you that the contents of this document

25  are true, and if it's entered into evidence it becomes the

1 | uncontradicted facts in this case. No one can be forced to enter
2 | into such a stipulation, so you ought to do so only if you truly want
3 | to and believe that it is in your best interests.
4 |     The stipulation will be used in two different ways.
5 |     First, I'll use it to help me to determine the providence of
6 | your plea of guilty.
7 |     Second, if we get to sentencing in this case, the trial counsel
8 | will be allowed to use it in aggravation.
9 |     Do you understand what I'm telling you and agree to the uses of
10 | this stipulation?
11 |     ACC: Yes, sir.
12 |     MJ: Now, a stipulation of fact ordinarily cannot be contradicted.
13 | If this stipulation should be contradicted after I've accepted your
14 | guilty plea, I'll have to reopen the providence inquiry; therefore,
15 | as we go through this inquiry you let me know if there is anything
16 | whatsoever that you disagree with or feel is untrue.
17 |     If there is, we'll clear it up before we go on.
18 |     Do you understand that?
19 |     ACC: Yes, sir.
20 |     MJ: Now, you've told me you've read this entire stipulation.
21 |     Is there anything whatsoever in here that you do not believe to
22 | be the truth?
23 |     ACC: No, sir.

81

1    MJ:  So, you admit to me, under oath and in open court, that the

2    contents of this document are true and correct to the best of your

3    knowledge and belief?

4    ACC:  Yes, sir.

5    MJ:  Trial, do you agree?

6    ATC:  Yes, sir.

7    MJ:  Defense?

8    DC:  Yes, Your Honor.

9    MJ:  Major DePeppe, is there anything in this stipulation that you

10   believe you should not have had to stipulate to in order for the

11   accused to have had the benefit of a pre-trial agreement?

12   DC:  No, Your Honor.

13   MJ:  Any defense objection to PE 1 for identification?

14   DC:  No objection, Your Honor.

15   MJ:  The stipulation of fact is accepted and admitted into

16   evidence as Prosecution Exhibit 1.

17        Private Armann, I'm now going to list for you the elements of

18   the offenses to which you have entered a plea of guilty.

19        These are the facts that the prosecution would have to prove

20   beyond a reasonable doubt before this court could find you guilty, if

21   you entered a plea of not guilty.

22        Now, as I state each of these elements I want you to ask

23   yourself, one, whether it's true.  And second, if you want to admit

24   that it is true.

1    And then be prepared to discuss these essential elements with
2    me when I've finished.
3         In The Specification of Charge I the offense to which you have
4    pled guilty is the offense of attempted premeditated murder.
5         The elements of the offense that your plea of guilty admits are
6    as follows:
7         One, that at or near Hanau, Germany, on or about 10 October
8    1998, you did a certain act; that is, shoot Private First Class Toni
9    A. Bell with a firearm;
10        Two, that such act was done with the specific intent to kill
11   Private First Class Toni A. Bell; that is, to kill without
12   justification or excuse; and
13        Three, that such acts amounted to more than mere preparation;
14   that is, it was a substantial step and direct movement toward the
15   unlawful killing of Private First Class Toni A. Bell; and
16        Four, that such acts apparently tended to bring about the
17   commission of the offense of premeditated murder; that is, the acts
18   apparently would have resulted in the actual commission of the
19   offense of premeditated murder, except for a circumstance unknown to
20   you, or an unexpected intervening circumstance, prevented completion
21   of that offense; and
22        Five, that at the time that you committed the act alleged, you
23   had the premeditated design to kill Private Bell.
24        Now, you're advised that the killing of a human being is
25   unlawful when done without legal justification or excuse.

1    Preparation consists of devising or arranging the means or
2  measures necessary for the commission of the attempted offense.
3    To find you guilty of this offense I must find beyond a
4  reasonable doubt that you went beyond preparatory steps and that your
5  acts amounted to a substantial step and a direct movement toward
6  commission of the intended offense.
7    A "substantial step," is one that is strongly corroborative of
8  your criminal intent and is indicative of your resolve to unlawfully
9  kill.
10    Now, proof that Private Bell was actually killed is not
11  required; however, it must be proved here, today, beyond a reasonable
12  doubt, that you specifically intended to kill her without
13  justification or excuse.
14    Now, the intent to kill does not have to exist for any
15  measurable or particular length of time before your act that
16  constituted the attempt.
17    For attempted premeditated murder, the offense to which you
18  have pled guilty here today, the intent to kill must precede the act
19  that constitutes the attempt.
20    The term "premeditated design to kill" means the formation of a
21  specific intent to kill and consideration of the act intended to
22  bring about death.
23    The premeditated design to kill does not have to exist for any
24  measurable or particular length of time either.  The only requirement
25  is that it must precede the act that constituted the attempt.

84

1    Do you understand each of the elements of this offense?

2    ACC:  Yes, sir.

3    MJ:  Do you have any questions about any of them?

4    ACC:  No, sir.

5    MJ:  Do you have any questions about any of the definitions that I

6    used in going over the elements?

7    ACC:  No, sir.

8    MJ:  Do you understand that your plea of guilty admits that each

9    of these elements accurately describes what you did?

10    ACC:  Yes, sir.

11    MJ:  Do you believe and admit under oath and in open court that

12    taken together these elements correctly describe what you did?

13    ACC:  Yes, sir.

14    MJ:  Now, in the Specification of Charge II you have pled guilty

15    to a violation of Article 81 of the Uniform Code, alleging

16    conspiracy.

17    The elements of this offense that your plea of guilty would

18    admit are as follows:

19    That at or near Hanau, Germany, between on or about

20    1 March 1998, and on or about 10 October 1998, you entered into an

21    agreement with Specialist Jeremy J. Lund to commit an offense of the

22    Uniform Code of Military Justice, to wit:  The premeditated murder of

23    Private First Class Toni A. Bell.  That offense being an offense

24    under the Uniform Code of Military Justice, Article 118;

1     That while the agreement continued to exist and while you

2    remained a party to the agreement, you and Specialist Jeremy J. Lund,

3    did prepare a poison, build and test a firearm, borrow a car, drive

4    to a sight near the main gate of Fliegerhorst Kaserne, shoot Private

5    First Class Toni A. Bell with a firearm.  These being overt acts for

6    the purpose of bringing about the object of the agreement.

7     The elements of the offense with which you are charged with the

8    conspiracy to commit are the same as I instructed you concerning The

9    Specification of Charge I.

10     Do you need me to repeat those elements at this time?

11    ACC:  No, sir.

12    MJ:  Now, proof that a premeditated murder actually occurred is

13    not required; however, it must be proven beyond a reasonable doubt

14    that the agreement included every element of the offense of

15    premeditated murder.

16     Now, this agreement, in a conspiracy, doesn't have to have any

17    particular form or be expressed in any formal words.  It's sufficient

18    if the minds of the parties reach a common understanding to

19    accomplish the object of the conspiracy and, this may be proved by

20    your conduct or the conduct of the other parties to the conspiracy.

21     The agreement does not have to express the manner in which the

22    conspiracy is to be carried out or what part each conspirator is

23    going to play.

24     The overt acts required for the offense do not have to be

25    criminal acts, but it must be a clear indication that the conspiracy

1  is being carried out.  And the overt act may be done either at the

2  time of or following the agreement.

3      The overt act, or acts, must be clearly independent of the

4  agreement itself; that is, they must be more than merely the act of

5  entering into the agreement, or an act necessary to reach the

6  agreement.

7      And you are also advised that there is no requirement that all

8  the coconspirators; that is, you and Specialist Jeremy J. Lund, be

9  subject to military law.  Although, in this case, it would appear

10 that you both were.

11      Now, you'll note that more than one overt act is listed in The

12 Specification of Charge II.  You may be found guilty of conspiracy

13 only if I'm convinced beyond a reasonable doubt that at least one of

14 the overt acts described in The Specification has been committed.

15 [Pause while the military judge peruses the charge sheet.]

16 MJ:  In an abundance of caution, Private Armann, I'm going to just

17 list the elements of the offense that you are alleged to have

18 conspired with Specialist Lund to commit.

19      The offense is premeditated murder, and in order to be guilty

20 of a conspiracy to commit premeditated murder you had to have --

21      That the elements of that crime are:

22      That a certain named or described person is dead.

23      Okay?

24      You are conspiring to bring about the result that Private First

25 Class Toni A. Bell would be dead; and

1    Second, that her death would result from an act by you, or by

2    one of your coconspirators;

3    That the killing was unlawful; and

4    That at the time of the killing the accused had a premeditated

5    design to kill.

6    Do you understand those elements of the offense that you're

7    accused and have pled guilty to conspiring to commit?

8    I mean, it talks about Bell being dead, but that was what you

9    were intending to bring about by your conspiracy.

10    Correct?

11    ACC: Yes, sir.

12    MJ: Okay.

13    Now, do you understand each of the elements of this offense of

14    conspiracy?

15    ACC: Yes, sir.

16    MJ: Do you have any questions about any of them?

17    ACC: No, sir.

18    MJ: Do you have any questions about any of the definitions that I

19    used in going over the elements?

20    ACC: No, sir.

21    MJ: Do you understand that your plea of guilty would admit that

22    each of these elements accurately describes what you did?

23    ACC: Yes, sir.

24    MJ: Do you believe and admit under oath, and in open court, that

25    when taken together these elements correctly describe what you did?

1    ACC:  Yes, sir.

2    MJ:  The Specification in Charge III, to which you have pled

3    guilty, alleges a violation of Article 92, of the Uniform Code of

4    Military Justice.

5        The elements of the offense that your plea of guilty would

6    admit are as follows:

7        One, there was in existence a certain lawful general regulation

8    in the following terms:  Paragraph 13, USAREUR Regulation 600-1,

9    dated 30 August 1990, and change 3 to USAREUR Regulation 600-1, dated

10   21 October 1993, that prohibited possessing a silencer and a firearm

11   that was not registered in accordance with USAREUR Regulation 190-6,

12   within 3 workdays of acquisition;

13       The second element is that you had a duty to obey such a

14   regulation; and

15       Three, at the time and place alleged; that is, at or near

16   Hanau, Germany, on or about 10 October 1998, you violated or failed

17   to obey this lawful general regulation by wrongfully possessing a

18   silencer and firearm that was not registered in accordance with

19   USAREUR Regulations within 3 workdays of acquisition.

20       Now, as a matter of law, the regulation in this case is

21   described in The Specification, if in fact there was such a

22   regulation, was a lawful general regulation.

23       Now, a general regulation, to be lawful, must relate to

24   specific military duty and be one that is authorized under the

25   circumstances.  A general regulation is lawful if it is reasonably

1  necessary to safeguard and protect the morale, discipline, and

2  usefulness of the members of the command and it's directly connected

3  with the maintenance of good order in the services.

4      Now, general regulations are those regulations that are

5  generally applicable to an armed force and which are properly

6  published by the military department.  They also include those

7  regulations that are generally applicable to the command of the

8  officer issuing them throughout the command or a particular

9  subdivision thereof.  And which are issued by an officer having

10  general courts-martial jurisdiction or a general officer in command.

11      Do you understand each of the elements of this offense?

12  ACC:  Yes, sir.

13  MJ:  Do you have any questions about any of them?

14  ACC:  No, sir.

15  MJ:  Do you have any questions about any of the definitions that

16  I've used in going over these elements?

17  ACC:  No, sir.

18  MJ:  Do you understand that your plea of guilty admits that each

19  of these elements accurately describes what you did?

20  ACC:  Yes, sir.

21  MJ:  Do you believe and admit under oath, and in open court, that

22  taken together these elements correctly describe what you did?

23  ACC:  Yes, sir.

24  MJ:  In The Specification Of Charge IV you have pled guilty to the

25  offense of wrongful use of drugs, specifically marijuana.

90

1    The elements of that offense are:

2    That at or near Hanau, Germany, on or about 11 October 1998,

3    you used marijuana, which is pled to be a schedule one controlled

4    substance;

5    The second element is that you actually knew that you used the

6    substance;

7    The third element is that you actually knew the substance you

8    used was marijuana or of a contraband nature; and

9    Four, that you're use was wrongful.

10    "Use" means the administration, ingestion, or physical

11    assimilation of a drug into one's body or system.  Use includes such

12    acts such as smoking, sniffing, eating, drinking, or injecting.

13    To be punishable under Article 112a use of a controlled

14    substance must be wrongful.

15    Use of a controlled substance is "wrongful" if it is without

16    legal justification or authorization.

17    Now, use of a controlled substance is not wrongful if such act

18    is done pursuant to legitimate law enforcement activities or done by

19    authorized personnel in the performance of medical duties.

20    Use of a controlled substance however, may be inferred by me to

21    be wrongful in the absence of evidence to the contrary.

22    I don't have to draw that inference, but I may if the

23    government sought to prove this offense against you today.

24    Knowledge by you of the presence of the substance and knowledge

25    of its contraband nature may also be inferred by me from the

91

1   surrounding circumstances; however, I need not draw that inference as

2   well, if you pled not guilty to this offense.

3       You may not be convicted of the use of a controlled substance

4   if you did not know you were actually using the substance.  Your use

5   of the controlled substance must be knowing and conscious.  For

6   example, if a person places a controlled substance in your cigarette

7   without you becoming aware of the substance's presence, your use is

8   not knowing and conscious.

9       It's not necessary that you know the exact identity of the

10  contraband substance though.  The knowledge requirement is satisfied

11  if you knew the substance was prohibited.  Similarly, if you believe

12  the substance to be a contraband substance such as hashish, when it

13  is, in fact, marijuana, then you had sufficient knowledge to satisfy

14  that element of the offense.

15      A contraband substance is, simply, one that is illegal to use.

16      Do you understand each of the elements of this offense?

17  ACC:  Yes, sir.

18  MJ:  Do you have any questions about any of them?

19  ACC:  No, sir.

20  MJ:  Do you have any questions about any of the definitions that I

21  used in going over these elements?

22  ACC:  No, sir.

23  MJ:  Do you understand that your plea of guilty admits that each

24  of these elements accurately describes what you did?

25  ACC:  Yes, sir.

1    MJ:  Do you believe and admit under oath, and in open court, that
2    taken together these elements correctly describe what you did?
3    ACC:  Yes, sir.
4    MJ:  Major Meredith, Captain Coyne, let me ask you, on the copy of
5    the charge sheet that has been included in the record of trial there
6    exists a Specification and Charge V.  However, on other copies of the
7    charge sheet possessed by the military judge there is a line drawn
8    through that Specification, the word dismissed written above that
9    line, dated 8 January 1999, with the initials AMF.  The court
10   understand the initials to be Amy M. Frisk, the Chief of Justice for
11   V Corps.
12   TC:  Yes, Your Honor.
13   MJ:  And that offense has been dismissed?
14   TC:  Yes, Your Honor.
15   MJ:  Is that the defense understanding as well?
16   DC:  Yes, Your Honor.
17   MJ:  You did not intend to enter a plea of guilty here today to
18   The Specification of Charge V, correct, Major DePeppe?
19   DC:  No, it has been dismissed as of January, Your Honor.
20   MJ:  Please insure that the copy of the original charge sheet
21   that's attached to the record of trial reflects that dismissal.
22       Major Meredith, can I have a yes?
23   TC:  Yes, Your Honor.
24   MJ:  Thanks.
25   TC:  We've already given the original charge sheet to the court.

93

1    MJ:  Okay.

2        All right.

3        I'm going to take a recess and look at Prosecution Exhibit 1,

4    and when we come back we're going to take a look at the factual

5    predicate to the plea of guilt.

6        If there are any administrative matters that can be taken care

7    of during this recess, I anticipate that I will take approximately 10

8    or 15 minutes to review Prosecution Exhibit 1.

9        Are there matters that we need to take up prior to the court's

10   recess?

11       Trial?

12   TC:  No, sir.

13   MJ:  Defense?

14   DC:  No, Your Honor.

15   MJ:  The court's in recess.

16   [The court-martial recessed at 0924 hours, 19 March 1999.]

17   [The court-martial was called to order at 0946 hours, 19 March 1999.]

18   MJ:  The court will come to order.  All parties present prior to

19   the recess are again present in court.

20       The court had previously referred to the government response to

21   the defense motion concerning maximum punishment in this case as

22   Appellate Exhibit XI.  That reference should have been to Appellate

23   Exhibit XIV.

24       Appellate Exhibit XI is the quantum portion of the pre-trial

25   agreement in this case.

1        At this point, Private Armann, I'm now going to ask you to tell

2   me in your own words what happened concerning these offenses.

3        When did you come into the Army?

4   ACC:  In August of 1994, sir.

5   MJ:  Have you been in the Army continuously ever since then?

6   ACC:  Yes, sir.

7   MJ:  Major DePeppe, are you aware of any possible impediment to

8   the jurisdiction of the court in this case.

9   DC:  No, Your Honor.

10  MJ:  When did you get to Alpha Company, 127th Aviation Support

11  Battalion?

12  ACC:  The end of August, 1995, sir.

13  MJ:  Now, I'm going to ask you to tell me what happened, in your

14  own words, in connection with these offenses.

15  Now, I've read Prosecution Exhibit 1, and I want to take the charges

16  and their specifications a little out of order so we can do this in

17  the sequence that makes the most amount of sense.

18       So I want you to focus on The Specification of Charge II, the

19  allegation of conspiracy, to which you have pled guilty.

20       How did this agreement come about?

21  ACC:  Early that year, around March, I----

22  MJ:  When you say "that year," you mean 1998?

23  ACC:  1998, sir.

24  MJ:  Okay.

95

1    ACC:  I discussed it with Jeremy Lund and we had talked about

2    killing PFC Bell.

3    MJ:  Why did you want to kill Bell?

4    ACC:  Because I was mad at her, sir.

5    MJ:  Was that about the dispute over the finances that's mentioned

6    in Prosecution Exhibit 1?

7    ACC:  Yes, sir.

8    MJ:  You thought she owed you some money.

9    ACC:  Yes, I did, sir.

10   MJ:  How much money did she owe you, in your assessment?

11   ACC:  $5000, sir.

12   MJ:  And why did you think she owed you $5000?

13   ACC:  Because I tried to help her, and we had a previous agreement

14   between us that I thought was understood by her and myself.

15   MJ:  That was the agreement mentioned in Prosecution Exhibit 1, to

16   kill the people that she identified to you as in-laws?

17   ACC:  Yes, sir.

18   MJ:  But she had backed out of that, to your understanding.

19   ACC:  Yes, sir.

20   MJ:  What happened as a result of your conversation with Lund?

21       Did you agree to kill Private Bell?

22   ACC:  Yes.

23       It was a mutual decision between both of us, sir.

24   MJ:  When did that agreement take place?

96