## IN THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS

U N I T E D   S T A T E S
Appellee

BRIEF ON BEHALF OF APPELLANT

v.

Docket No. ARMY 9900316

Private E1
**KURTIS E. ARMANN**
United States Army,
     Appellant

Tried at Hanau and Mannheim,
Germany on 14 and 25 January
and 19 March 1999 before a general
court-martial appointed by the
Commander, Headquarters, V Corps,
Lieutenant Colonel (LTC) Donna
Wright and LTC William Barto,
military judges, presiding.

TO THE HONORABLE JUDGES OF THE UNITED STATES
ARMY COURT OF CRIMINAL APPEALS

### Statement of the Case

On 14 & 25 January and 19 March 1999, Private E1 (PVT)

Kurtis E. Armann [hereinafter appellant], was tried at Hanau and

Mannheim, Germany, before a military judge sitting as a general

court-martial.  Pursuant to his plea, appellant was found guilty

of attempted premeditated murder, conspiracy to commit

premeditated murder, violation of a general regulation and

wrongful use of marijuana in violation of articles 80, 81, 92

and 112a of the Uniform Code of Military Justice, 10 U.S.C. §

880, 881, 892 and 912a (1996)[hereinafter U.C.M.J.].  Appellant

was sentenced to total forfeitures of all pay and allowances,

confinement for thirty-eight years and a dishonorable discharge.

Pursuant to a plea agreement, the convening authority approved

35 years confinement and the remainder of the sentence as adjudged.

## Statement of Facts

Appellant's convictions arose from the planning and attempted execution of the murder of another soldier, Private First Class (PFC) Bell. *See* Charge Sheet. Appellant was charged with and pled guilty to attempted premeditated murder, conspiracy to commit premeditated murder, violation of a general regulation by possessing an unregistered firearm on post and marijuana use. *Id.* All other facts necessary to resolution of the raised assignments of error are contained herein.

## Assignments of Error[1]

I

THE FINDINGS OF GUILTY AGAINST APPELLANT FOR VIOLATION OF A LAWFUL GENERAL REGULATION (THE SPECIFICACTION OF CHARGE III) MUST BE SET ASIDE AS THE EXISTENCE OF THE TWO REGULATIONS UNDERLYING THE ARTICLE 92, UCMJ CHARGE WERE NEVER JUDICIALLY NOTICED OR OTHERWISE ACCEPTED AS EVIDENCE IN THE RECORD DURING THE COURT-MARTIAL PROCEEDINGS.

II

THE TRIAL JUDGE IMPROPERLY ATTACHED A SEVEN-PAGE EXHIBIT AS APPELLATE EXHIBIT XVI AFTER TERMINATION OF THE COURT-MARTIAL PROCEEDINGS WHERE THE SEVEN-PAGE DOCUMENT WAS NOT ACCEPTED AS AN APPELLATE EXHIBIT DURING THE COURT-MARTIAL AND A SEPARATE DOCUMENT HAD PREVIOUSLY BEEN IDENTIFIED AND ATTACHED TO THE RECORD AS APPELLATE EXHIBIT XVI.

---

[1] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant, through communications with counsel, personally asserts the matters set forth in Appendix A.

The elements of the offense of violation of a lawful
regulation pursuant to article 92, UCMJ, are:

(a) that there was in effect a certain lawful general
    regulation;
(b) that the accused had a duty to obey it; and
(c) that the accused violated or failed to obey the
    regulation.

The government must prove that the regulation in question
existed at date and time of alleged violation and that both
accused and his acts were within proscription of this
regulation. *See United States v. Williams*, 3 M.J. 155 (CMA
1977). The government can not meet this burden by simply
identifying the regulation on the charge sheet but must either
introduce the regulation into evidence or request the trial
judge to take judicial notice. *Williams*, 3 M.J. at 156.

Where an accused pleads guilty, the trial judge must
conduct an appropriate interview of an accused to establish a
clear and sufficient basis for determining that the acts of the
accused constitute the offense to which he pleads guilty. *United
States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). The
military judge must ask questions that elicit facts from which
he or she can conclude that the legal standard has been met. It
is not sufficient simply to secure an accused's acknowledgment
of guilt in terms of legal conclusions. *United States v. Rios*,
32 M.J. 501, 504 (A.C.M.R. 1990), *pet. denied*, 37 M.J. 17

3

(C.M.A. 1992); *United States v. Goins*, 2 M.J. 458 (A.C.M.R.
1975).

Appellant was charged with violating UNITED STATES ARMY EUROPE
(USAEUR) REG. 600-1, PERSONNEL GENERAL REGULATED ACTIVITIES OF MEMBERS OF
THE U.S. FORCES, CIVILIAN COMPONENT, AND FAMILY MEMBERS, para. 13 (30
August 1990) and Change 3 to that regulation dated 21 October
1993. [hereinafter USAEUR Reg. 600-1]. *See* Charge Sheet. The
basis for violation of this regulation was appellant's
possession of a silencer and a firearm not registered in
accordance with UNITED STATES ARMY EUROPE (USAEUR) REG. 190-6, MILITARY
POLICE, REGISTRATION AND CONTROL OF PRIVATELY OWNED Firearms AND OTHER
WEAPONS IN GERMANY (29 June 1993) [hereinafter USAEUR Reg. 190-6].
*Id.*

During the providence inquiry, the trial judge reviewed the
elements of the charged Article 92, UCMJ offense with appellant.
(R. at 89.) During this discussion, the trial judge verbally
identified the two regulations cited in the Specification of
Charge III but never requested or *sua sponte* took judicial
notice of the regulations. (R. at 89-90, 113-16.) The trial
judge did not read the applicable provisions of either USAEUR
Reg. 600-1 or USAEUR Reg. 190-6 to appellant during this
discussion. Without any indication in the record that appellant
understood the prohibitions of the regulations, appellant agreed
that the silencer and firearm he possessed was a weapon as

4

described in USAEUR Reg. 600-1 (R. at 113) and that he did not register those items in accordance with "USAEUR regulations.[2]" (R. at 114.)

The unsigned stipulation of fact in appellant's case references the relevant regulations but does not include any passages from the regulations. (See Prosecution Exhibit 1, attachment 1.) Prosecution exhibit 1 consists of 18 attachments, none of which are the charged regulations.

Defense counsel did not lodge any objection to this cursory inquiry or the trial judge's failure to receive the regulations into evidence. However, the trial judge's failure to adequately advise appellant of the elements of the charged regulations or judicially notice the regulations constitutes error. It is the responsibility of the trial judge to ensure the appellant's pleas of guilty are sufficient based on matters properly before the court-martial before making findings. See Rules for Courts-Martial 910(e) and 918(c).

After the court-martial terminated, the trial judge, LTC Barto, authenticated the record of trial on 4 June 1999. (R. at 386 - Authentication of Record). During his authentication of the record, the trial judge apparently recognized this problem and attempted to append excerpts of these regulations to the record as appellate exhibits. Id. On the authentication sheet,

---

[2] The trial judge did not identify to which USAEUR regulations he was

5

the trial judge indicated that he "attached AE XVI, a seven-page extract of USAEUR regulations used by the MJ in conducting the plea inquiry." *Id.* This discrepancy is not mentioned in the post-trial matters submitted by the trial defense counsel or the staff judge advocate. This act by the trial judge after the court-martial closed could not and did not remedy the legal insufficiency of the pleas. The attempt to attach this evidence post-trial was improper.

Moreover, the manipulation of the appellate exhibits by the trial judge improperly inserts a second AE XVI into the record. Appellate exhibit XVI identified at trial is the initial defense proposed stipulation of expected testimony reflecting comments of both parties arising during a mid-trial article 39(a), UCMJ, session.  (R. at 170.)

WHEREFORE, appellant respectfully requests that this Honorable Court set aside and dismiss the finding of guilty to the Specification of Charge III and Charge III.

III

APPELLANT'S APPROVED SENTENCE TO 35 YEARS
CONFINEMENT IS SUBSTANTIALLY DISPROPORTIONATE UNDER
THE CIRCUMSTANCES WHEN EVIDENCE WAS PRESENTED TO THE
MILITARY JUDGE THAT APPELLANT UNDERWENT A PERSONAL
HISTORY RIDDLED WITH SUBSTANTIAL MENTAL AND PHYSICAL
ABUSE; MANIFESTED A MALADAPTIVE PERSONALITY DISORDER
AT THE TIME OF THE ATTEMPTED MURDER; STALLED FOR
SEVERAL MONTHS BEFORE CARRYING OUT THE ATTEMPTED
MURDER AFTER BEING RIDICULED BY FRIENDS AND LIKELY
TRANSFERRED HIS PENT-UP RAGE FROM HIS PERSONAL

referring.

6

HISTORY OF ABUSE TO THE VICTIM OF THE ATTEMPTED
MURDER WHO HE THOUGHT WAS ABANDONING HER CHILDREN AS
HIS PARENTS DID HIM.

Sentence appropriateness should be based on the
"individualized consideration" of the particular accused "on the
basis of the nature and seriousness of the offense and the
character of the offender." *United States v. Snelling*, 14 M.J.
267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 10
C.M.A. 102, 27 C.M.R. 176, 180-181 (1959)). Accordingly, the
punishment should fit the offender and not merely the crime.
*United States v. Wright*, 20 M.J. 518 (A.C.M.R. 1985), *pet.
denied*, 21 M.J. 309 (C.M.A. 1985).

In 1988, however, the Court of Appeals for the Armed
Forces, in the landmark diminished mens rea case of *Ellis v.
Jacob*, 26 M.J. 90 (CMA 1988) stated that such an "all or
nothing" set of options "raises obvious constitutional concerns"
if Rule for Courts-Martial (RCM) 916 was construed to keep the
accused from attacking the mens rea element directly. *Id.* at 92.
Mental status is a matter to be considered as a mitigating
factor in sentencing hearings. *See United States v. Murphy*, 50
M.J.  4, 37 (1998); R.C.M. 1001(c)(1)(B).  Although potentially
not relevant in establishing an affirmative defense, whether an
accused sincerely believes that his conduct is morally justified
may be relevant as a matter in mitigation during sentencing.
*United States v. Martin*, 48 M.J. 820 (Army Ct. Crim. App. 1998),

7

*remanded on other grounds*, No. 99-0232/AR, 2000 CAAF Lexis 337
(CAAF March 21, 2000)(remanded to determine whether the court-
martial's finding that appellant did not prove lack of mental
responsibility by clear and convincing evidence was correct both
in law and in fact).

At trial, the defense presented evidence from appellant's
mother and appellant in an unsworn statement that appellant had
been physically and mentally abused by his stepmother from the
age of 3 years old until the age of 11 years. (R. at 276-279,
293.)  The defense also presented a stipulation of expected
testimony from appellant's sister who was terminally ill from
colon cancer at the time of trial. (D.E. F.) This stipulation
detailed appellant's sister's remembrance of how their mother
abandoned appellant and his sister after the parents divorced.
*Id*. While living with their father and step-mother, appellant
and his sister were physically and mentally abused by the step-
mother with the father's acquiescence. *Id*. Appellant had bed
wetting problems during the time that both he and his sister
lived with their father and step-mother. *Id*. As punishment for
wetting the bed, appellant's step-mother would make appellant
stand naked in a corner or lie in the wet sheets every night.
Appellant's sister was forced to sneak to change the sheets
without the stepmother knowing. *Id*.    This abuse did not stop
until appellant moved in with his mother. *Id*.

8

As a result of this abuse, appellant testified that he developed an unexpressed hatred for his father that was suppressed and unrecognized until after the attempted murder. (R. at 292.) Lieutenant Commander (LCDR) Keith Caruso, a forensic psychologist, testified that appellant had a maladaptive personality disorder that stemmed from this childhood history of abandonment and abuse. (R. at 325-28.) LCDR Caruso diagnosed appellant with a narcissistic personality disorder with borderline features. (R. at 325.)

As a manifestation of this disorder, appellant does not develop a strong degree of trust in other people and has sensitivity to abandonment. (R. at 325-26.) Appellant also had severe self-esteem problems that caused him to be very susceptible to others' opinions and to support himself by looking to others for approval more so than the average person. (R. at 327-29.) LCDR Caruso believed that appellant unconsciously compared PFC Bell's struggle as a single mother to gain custody of her children with his mother's struggle to gain custody of him. (R. at 330-31.) As a result, appellant saw the murder of PFC Bell's "in-laws" as a way to make things right. *Id.*

When appellant learned PFC Bell was releasing custody of her children because she couldn't afford to physically care for them, his unrecognized rage at his mother surfaced. (R. at 331-

9

32.)   When appellant realized that he would not get the opportunity to "make things right," he felt betrayed and began to see PFC Bell as a bad person, displacing his pent-up rage at his mother on PFC Bell. (R. at 333.) During his unsworn statement, appellant was able to admit that he became angry with PFC Bell when she sent her two children back to the United States because he felt she was abandoning them. (R. at 309.) Appellant compared the situation PFC Bell's children were undergoing to his own abandonment as a child. *Id.*

This dangerous emotional situation surrounding appellant's relation to PFC Bell was agitated by other stressors in appellant's life including the rape of his girlfriend. (R. at 266; D.E. A.) None of the factors referenced *supra* negate appellant's responsibility for committing the offenses but the factors are substantial mitigation.

The appellant urges the court to compare his sentence to the sentences of other individuals convicted of similar crimes within the military justice system. *See generally, United States v. Olinger*, 12 M.J. 458, 460 (C.M.A. 1982). This Court may examine disparate sentences when: (1) there is a direct correlation between each of the accused and their respective offenses; (2) the sentences are highly disparate; and (3) there are no good and cogent reasons for the differences in punishment. *United States v. Thorn*, 36 M.J. 955, 960 (A.F.C.M.R.

10

1993), *pet. denied* 38 M.J. 226 (CMA 1993)(citing *United States v. Kent*, 9 M.J. 836, 838-839 (A.F.C.M.R. 1980)).

Specifically in appellant's case, the primary co-actors received significantly less punishment. Appellant was one of six charged co-conspirators in the attempted premeditated murder of PFC Bell.[3] (*See* Prosecution Exhibit 1, attachment 1; R. at 157, 160.) PVT Roeseler, the primary conspirator, was convicted of two specifications of conspiracy to commit murder and one specification of attempted premeditated murder. It was PVT Roeseler who introduced appellant to PFC Bell and instigated the original plot to murder PFC Bell's alleged in-laws that eventually transmuted into a plot to kill PFC Bell. (R. at 161-63, 232-34) However, Private David Roeseler only received a twenty-five year adjudged sentence that was reduced to fifteen years pursuant to a pre-trial agreement. *See United States v. Roeseler*, Army 9900760 (V Corps, July 28, 1999). The second primary conspirator was PVT Lund, who actively participated in the months of planning and reviewing alternate methods of killing of PFC Bell prior to the attempted murder (R. at 148) but only received an adjudged sentence of twenty-five years of which fourteen were approved pursuant to a pretrial agreement. *See United States v. Lund*, Army No. 9900116 (V Corps, January

---

[3] The court-martial promulgating orders from each of the other five co-conspirators involved in appellant's case are attached at Appendix B.

11

14, 1999). Privates Roeseler and Lund were convicted of the same conspiracy to commit premeditated murder and attempt to commit premeditated murder of PFC Bell as was appellant. (See Charge Sheet; Appendix B) Private Roeseler was also convicted of an additional attempt to conspire to commit premeditated murder. (Appendix B.) [4]

These sentences are highly disparate, with the appellant receiving more than twice the approved sentence to confinement of either of these two co-conspirators whose core criminal conduct was absolutely identical to appellant's. Appellant's additional charges of violation of a regulation and marijuana use are minor offenses in the context of the attempted premeditated murder and do not account for the twenty-one year difference in sentences. In fact, the maximum punishment allowable for these two minor offenses amounts to no more than four years. It is inherently unjust to approve appellant's sentence when the sentences of his co-accuseds are so substantially lower. Serious disparities may be considered by this Court where there are no good and cogent reason for the

---

[4] The third conspirator was Private Roy Tarbox, the maker of the firearm used, who received only two years for his involvement. See United States v. Tarbox, Army No. 9900180 (V Corps, January 29, 1999). The fourth conspirator was PVT Oie, appellant's girlfriend and an instigator in conspiracy and attempted murder. (D.E. A) Private Oie was sentenced to ten years by a military judge. See United States v. Oie, Army 9900436 (Army Ct. Crim. App. filed 28 June 2000). The final conspirator was PVT Gibson who participated in the planning (R. at

substantial difference in punishment. *See United States v. Lomax*, 12 M.J. 1001, 1005, *pet. denied* 13 M.J. 467 (CMA 1982)(citing *United States v. Kent*, 9 M.J. 836 (A.F.C.M.R. 1980)) It is clear that there are no good and cogent reasons for this disparity in appellant's case.  Appellant should receive no greater a sentence than the highest sentence of his principal co-conspirators, Privates Roeseler and Lund.

WHEREFORE, the appellant requests this Court to set aside and reassess his sentence, approving no more than 15 years confinement.

---

156) and received only a five-year sentence in a contested case.  *See United States v. Gibson*, Army No. 9900573 (V Corps, June 3, 1999).

## Conclusion

WHEREFORE, appellant requests that his Honorable Court take the above requested action.

YIMMONIQUE R. SIMPSON
Captain, JA
Defense Appellate Division

KIRSTEN V.C. BRUNSON
Major, JA
Defense Appellate Division

DAVID A. MAYFIELD
LTC, JA
Deputy, Defense Appellate
    Division

ADELE H. ODEGARD
Colonel, JA
Chief, Defense Appellate
    Division

US ARMY JUDICIARY

2000 JUL 19 A 8:20

FILED
CLERK OF COURT

2000 JUL 19 P 1:53

RECEIVED
GOVERNMENT APPELLATE
DIVISION

14

# APPENDIX A

Pursuant to *U.S. v. Grostefon*, 12 M.J. 431 (C.M.A.1982),
appellant, through communication with counsel, personally
requests that this Honorable Court consider the following in
determining whether to approve the bad conduct discharge in his
case:

1. Lack of Complete Mental Responsibility for Offenses.

The previous version of R.C.M. 916(k) in effect before
November 14, 1986, reflected a two-tier approach. R.C.M.
916(k)(1) stated the then-prevailing "substantial capacity"
formula as a complete defense. R.C.M. 916(k)(1) provided:

> It is a defense to any offense that the accused was
> not mentally responsible for it. A person is not
> responsible for criminal conduct if at the time of
> such conduct as a result of mental disease or defect
> the person lacks substantial capacity to appreciate
> the criminality of that person's conduct or to conform
> that person's conduct to the requirements of law. As
> used in this rule, the terms "mental disease or
> defect" do not include an abnormality manifested only
> by repeated criminal or otherwise antisocial behavior.

R.C.M. 916(k)(2) articulated the incomplete defense of

*"Partial mental responsibility,"* described as follows:

> A mental condition not amounting to a general lack of
> mental responsibility under subsection (k)(1) of this
> rule but which produces a lack of mental ability at
> the time of the offense to possess actual knowledge or
> to entertain a specific intent or a premeditated
> design to kill is a defense to an offense having one
> of these states of mind as an element.

2

In 1988, the Court of Appeals for the Armed Forces (CAAF), recognized the defense of diminished mens rea continued to exist in the military courts in the case of where CAAF stated that the "all or nothing" set of options "raises obvious constitutional concerns" if RCM 916 was construed to keep the accused from attacking the *mens rea* element directly. *United States v. Curtis,* 44 MJ 406 (1996) citing *Ellis v. Jacobs*, 26 M.J. 90, 92 (1988).

Under article 50a, it is an affirmative defense in a trial by court-martial that at the time of the commission of the acts constituting the offense, the accused as a result of a sever mental disease or **defect**, was unable to appreciate **the nature and quality or** the wrongfulness of the acts. The current RCM 916(k) reflects this same rule.

It is a basis for ordering a post-trial hearing pursuant to *United States v. Dubay*, 37 CMR 411 (CMA 1967) where new evidence of an accused's mental capacity at the time of the offense or court-martial is discovered. *See generally*, *United States v. Thomas*, 34 MJ 788 (ACMR 1992). Post-trial diagnosis of paranoid schizophrenia, rendered approximately 6 weeks after trial, created sufficient doubt to warrant further inquiry into accused's mental capacity and original action would thus be set aside. *United States v. Massey*, 26 M.J. 671 (AFCMR 1988).

3

Since arriving at the Disciplinary Barracks, appellant was evaluated by mental health specialists and placed on various medications including:

1. Risperdal - a medication for treating schizophrenia and psychotic disorders,

2. Thorazine - an anti psychotic drug of low-potency used in the treatment of disorganized and psychotic thinking,

3. Lithium Carbonate - the primary treatment for manic depression,

4.  Desyrel - used to treat the symptoms of depression.

5.  Elavil - an antidepressant with sedative effects

6.  Paxil - used as an antidepressant

7.  Depakote - used to treat epilepsy, bipolar disorders and migraine headaches.

Additionally, appellant has undergone counseling to resolve his mental health issues. Appellant now realizes that at the time he committed the offenses he was not able to completely comprehend his unrecognized emotional and behavioral defects that in turn prevented him from fully understanding the nature and quality of his actions in light of the circumstances.

At the time that appellant shot PFC Bell, he unconsciously transferred all his unrecognized and built-up rage stemming from his childhood onto her. During the time prior to the shooting that appellant made plans to kill her, he did not really intend

4

to do so.  One part of appellant wanted and needed to continue
to be her friend but another part of him wanted to prove up the
status he claimed.  When PFC Bell sent her children back to the
States and lied to appellant about why she was not bringing them
back, appellant became enraged.

Appellant's childhood was horrible.  He does not wish what
he went through with his step-mother, Beverly, and father on
anyone.  He was kicked, beat, hit, yelled at and made to feel
like trash.  Throughout this torture, his father did nothing to
help.  Appellant felt that everyone had abandoned him.  He lived
in constant fear from the time he was about 3 years old until he
was about 11 years old and went to live with his mother.  Later,
appellant gave his father a second chance and went back to live
with him when his father promised that things would be better.
Tragically, this was a lie and all the abuse started again when
his father let Beverly return.  Appellant did not realize it
until later but he developed a intense hatred for his father.
He also didn't realize that he developed bitter feelings for his
mother who he blamed for abandoning him during the time he was
with his father.

Because appellant did not recognize his mental problems, he
could not resolve his emotions and control his impulses.  When
he developed a relationship with PFC Oie and learned that she
had been raped, appellant could not suppress his rage and sought

5

mental health counseling.  However, appellant never really dealt
with all his issues and grew angrier and angrier.

When appellant first learned of PFC Bell's situation, he
felt that he could help her and play up the image of a hitman
that others in his unit had of him.  He gathered material and
notified every one of his plans to carry out a hit on PFC Bell's
in-laws.  He never knew that she gave him false information
because he never checked.  He saw in PFC Bell his own mother and
wanted to help her get her children back.  When she finally got
custody of her children, appellant was personally happy because
he felt vindicated in a way.  However, PFC Bell soon sent her
children back allegedly because she could not take care of them.
When she lied to him that her son could not fly back to Germany
because of the cast, appellant lost control of his anger again.
Appellant did not understand why he could not let go of his
anger towards PFC Bell.  It was not about the money but about
appellant's feeling that PFC Bell's children were going to
suffer just like he did.  Instead of solving everything by
helping her get her children, appellant saw the situation as PFC
Bell giving her children hope that they would have a better life
and then snatching that hope away.  He did not know then but now
sees that he really saw his sister and himself.

As appellant told the trial judge during the court-martial,
throughout the months before the shooting occurred, he stalled

6

because he really didn't plan on carrying out the shooting.
Everyone thought he wanted money from PFC Bell but he knew she
didn't have $50,000. He couldn't stop the chain of events so he
played along never intending to use the poison or the bomb to
hurt PFC Bell. Near the end of that time, however, his anger
against PFC Bell evolved into a rage as he could not stop
thinking about what her children were going through. He did not
know of anything bad happening to them but he just kept thinking
that something would. On the day that appellant shot PFC Bell,
he was scared. He didn't mean to kill her but felt he had been
forced to carry out the plans other soldiers and him had been
talking about for months or they would think he was liar.  He
could not stop himself. The thought of failing in front of
those other soldiers gripped appellant like an ice fist around
his heart.  Appellant now realizes that his illogical fear came
from his uncontrollable compulsion never to be demeaned in front
of others like he had been with Beverly and his father.  This is
the same compulsion that had caused him so much pain when he
learned PVT Oie had been raped. He felt that her rapist got
away with it and appellant, as her protector, could do nothing
about it. He felt weak and helpless.

     After everything bad happened, appellant came to a point
where he tried to commit suicide. He just did not want to face

up to what he had done.  He sees that suicide is not the way out, however.

Appellant only discusses some of the problems that he was facing at the time he fired the shot at PFC Bell because he wants this Court to see that he did not and could not control himself.  He was not in a logical state of mind.  He knew what he was doing when he pulled the trigger but the mental, emotional and social situations surrounding him had overcome any sense of right or wrong.  He could not control himself. Appellant urges this Court to consider his mental state and documented background of abuse in deciding whether to affirm, reduce or set aside the findings and sentence in his case.

WHEREFORE, appellant respectfully requests that this Honorable Court reduce the sentence to confinement to no more than 10 years.  Ideally, appellant would like this court to set side the findings altogether.

## 2.  Unreasonable Multiplication of Charges

Charge I and Charge III were multiplicious and an unreasonable multiplication of charges.  The conspiracy to commit the attempted murder should have been merged into the attempted premeditated murder charge for sentencing.  What is basically one transaction should not be the basis for an unreasonable multiplication of charges against one person.  RCM (RCM)

307(c)(4) Discussion.  Also, if there was a unity of time and the existence of a connected chain of events, the offenses may not be separately punishable depending on all the circumstances, even if each required proof of a different element.  RCM 1003(c)(1)(C) Discussion.  Military judges must still exercise sound judgment to ensure that imaginative prosecutors do not needlessly pile on charges against a military accused.

That is what occurred in appellant's case.  The conspiracy to commit murder was part and parcel to the premeditation in involved in the attempted murder.  The attempt was the culmination of the conspiracy.  As such, appellant should not have been sentenced separately for these offenses.

WHEREFORE, appellant respectfully requests this Court to set aside and reassess his sentence.

# APPENDIX B

Copy  1
Volume $\underline{I}$ of $\underline{II}$

---

## VERBATIM

# R E C O R D   O F   T R I A L

*(and accompanying papers)*

### Of

**ROESELER, David M.**      **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**      **Specialist**
*(Name: Last, First, Middle Initial)*   *(Social Security Number)*   *(Rank)*

**A Company, 127th Aviation Support Battalion, U S Army, APO AE 09165**
*(Unit/Command Name)*          *(Branch of Service)*          *(Station or Ship)*

### By

# G E N E R A L   C O U R T - M A R T I A L

## Convened by  **T H E   C O M M A N D E R**
*(Title of Convening Authority)*

# V   C O R P S
*(Command of Convening Authority)*

### Tried At

**Hanau,**
**Federal Republic of Germany**      On      **28 July 1999**
*(Place or Places of Trial)*                    *(Date or Dates of Trial)*

---

ALLIED PAPERS

COMPANION CASES:

TARBOX, Roy P., ARMY 9900186 - P 3
    SPC, 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
    A Co, 127th ASB , US Army
    APO AE 09165
    *Height*

LUND, Jeremy J. ARMY9900116 - P 3
    PVT, 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
    A Co, 127th ASB , US Army
    APO AE 09165
    *DPC*

ARMANN, Kurtis E. ARMY9900316 - P3
    PV1, 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
    A Co, 127th ASB, US Army
    APO AE 09165
    *JES*

OIE, Monica S. ARMY9900436 - P3
    PVT, 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
    B Co, 127th ASB, US Army
    APO AE 09165
    *Hurt*

GIBSON, Scott D. ARMY9900593 - P 3
    PV1, 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
    B Co, 127th ASB, US Army
    APO AE 09165

*See inside back cover for instructions as to preparation and arrangement*

Copy  1
Volume $\underline{I}$ of $\underline{II}$

**DD Form 490, OCT 84**      *Previous editions are obsolete*      **Front Cover**

DEPARTMENT OF THE ARMY
Headquarters, V Corps
APO AE 09014

GENERAL COURT-MARTIAL ORDER
NUMBER                                   47

10 December 1999

SPC David M. Roeseler, 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, U.S. Army, A Company, 127th Aviation Support Battalion, APO AE 09165, was arraigned at Hanau, Germany, on the following offenses at a general court-martial convened by Commander, V Corps.

Charge I. Article 80. Plea: Guilty. Finding: Guilty.

Specification 1: Attempted premeditated murder with a firearm, at or near Hanau, Germany, on or about 10 October 1998. Plea: Guilty. Finding: Guilty.

Specification 2: Attempted conspiracy to commit premeditated murder, at or near Hanau, Germany, between on or about 1 February 1998 and 1 April 1998. Plea: Guilty. Finding: Guilty

Charge II. Article 81. Plea: Guilty. Finding: Guilty.

The Specification: Conspiracy to commit premeditated murder, at or near Hanau, Germany, between on or about 1 March 1998 and 10 October 1998. Plea: Guilty, except the words "and gather information on Private First Class Toni A. Bell's schedule", substituting therefore the words "and provide information on Private First Class Toni A. Bell". To the excepted words: Not Guilty. To the substituted words: Guilty. Finding: Guilty.

SENTENCE

Sentence was adjudged on 28 July 1999. To forfeit all pay and allowances, to be reduced to the grade of Private E1, to be confined for a period of 19 years, and to be discharged from the United States Army with a dishonorable discharge.

ACTION

Only so much of the sentence as provides for forfeiture of all pay and allowances, reduction to

GCMO No 47, HQ V Corps, APO AE 09014, dated 10 December 1999

the grade of E1, confinement for fifteen years, and a dishonorable discharge is approved and, except for the part of the sentence extending to a dishonorable discharge, will be executed.

BY COMMAND OF LIEUTENANT GENERAL RILEY:

DISTRIBUTION:

EVAN B. WYNN
SFC, USA
NCOIC, Criminal Law Division

1  Each Individ concern
1  LTC Wright (MJ)
1  CPT Coyne (TC)
1  CPT Zipf (DC)
1  Cdr, U.S. Army Disciplinary Barracks, Ft. Leavenworth, KS  66027-1363
1  Cdr, A Co, 127th Avn Sup Bn, APO AE  09165
1 Cdr,  127th Avn Sup Bn, APO AE  09165
1  Cdr, Det A, 55th PSB, (Attn: Records Section), APO AE  09165
2  SJA, V Corps, APO AE  09014
1  Record Set
1  Reference Set
1  Cdr, HQ Det, 39th Finance Battalion, APO AE 09165
1  Cdr, USAEREC, ATTN: PCRE-FS, Fort Benjamin Harrison, IN  46249
10  Clerk of Court (JALS-CC), Nassif Bldg, Falls Church, VA  22041-5013

Copy 1
Volume I of III

## VERBATIM

# RECORD OF TRIAL

*(and accompanying papers)*

Of

| | | |
|---|---|---|
| **TARBOX, Roy P.** | **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** | **Specialist** |
| *(Name: Last, First, Middle Initial)* | *(Social Security Number)* | *(Rank)* |

**A Company, 127th Aviation Support Battalion, US Army, APO AE 09165**

| | | |
|---|---|---|
| *(Unit/Command Name)* | *(Branch of Service)* | *(Station or Ship)* |

By

# GENERAL COURT-MARTIAL

## Convened by  THE COMMANDER

*(Title of Convening Authority)*

## V CORPS

*(Command of Convening Authority)*

Tried At

| | | |
|---|---|---|
| **Hanau,** | | |
| **Federal Republic of Germany** | **on** | **6, 28 and 29 January 1999** |
| *(Place or Places of Trial)* | | *(Date or Dates of Trial)* |

COMPANION CASES:

ARMY9900316-GmcR

ARMANN, Kurtis E.
Private, 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
A Co, 127th ASB
APO AE 09165

ARMY 9900116 - P.3

LUND, Jeremy J.
Specialist, 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
A Co, 127th ASB
APO AE 09165

Other Companion Cases To Follow Pending Referral

U.S. Army Judiciary

1999 JAN 14 P 3: 31

CLERK OF COURT
RECEIVED

*See inside back cover for instructions as to preparation and arrangement.*

**DD Form 490, OCT 84**          *Previous editions are obsolete*          **Front Cover**

DEPARTMENT OF THE ARMY
Headquarters V Corps
APO AE 09014

GENERAL COURT-MARTIAL ORDER
NUMBER                          22                          25 May 1999

SPC Roy P. Tarbox, 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, U.S. Army, A Company, 127th Aviation Support Battalion, APO AE 09165, was arraigned at Hanau, Germany, on the following offenses at a general court-martial convened by Commander V Corps.

*C* Charge I. Article 80. Plea: Not Guilty. Finding: Guilty.

The Specification: Attempted premeditated murder with a firearm, at Hanau, Germany, on or about 10 October 1998. Plea: Not Guilty. Finding: Guilty.

✓ Charge II. Article 81. Plea: Not Guilty. Finding: Not Guilty of conspiracy to commit premeditated murder, but Guilty of conspiracy to commit aggravated assault.

The Specification: Conspiracy to commit premeditated murder, at Hanau, Germany, between on or about 1 July 1998 and 10 October 1998. Plea: Not Guilty. Finding: Not Guilty of conspiracy to commit premeditated murder, but Guilty of conspiracy to commit aggravated assault.

SENTENCE

Sentence was adjudged on 29 January 1999. To be reduced to the grade of E1, to total forfeiture of all pay and allowances, to be confined for two (2) years, and to be dishonorably discharged from the service.

ACTION

The Sentence is approved and, except for the part of the sentence extending to a dishonorable discharge, will be executed.

BY COMMAND OF LIEUTENANT GENERAL HENDRIX:

DISTRIBUTION:
1  Each Individ concern
1  LTC Donna Wright (MJ)

*Amy M. Frisk*
AMY M. FRISK
LTC, JA
Chief, Criminal Law Division

GCMO No 22, HQ V Corps, APO AE 09014, dated 25 May 1999

1   CPT Carlene K. Christie (TC)
1   MAJ Craig A. Meredith (ATC)
1   CPT Jason B. Libby (DC)
1   Cdr, A Co, 127th Avn Spt Bn, APO AE 09165
1   Cdr, 127th Avn Spt Bn, APO AE 09165
1   Cdr, Det A, 55th PSB, (Attn: Records Section), APO AE 09165
2   SJA, V Corps, APO AE 09014
1   Record Set
1   Reference Set
1   Cdr, Hqs Det, 39th Finance Battalion, APO AE 09165
1   Cdr, USAEREC, ATTN: PCRE-FS, Fort Benjamin Harrison, IN 46249
10  Clerk of Court (JALS-CC), Nassif Bldg, Falls Church, VA 22041-5013

COPY ONE

*Copy 1*

VOL I OF III

---

## V E R B A T I M [1]

# RECORD OF TRIAL [2]

### (and accompanying papers)

of

| LUND, Jeremy J. | 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 | ~~Specialist~~ |
|---|---|---|
| (Name: Last, First, Middle Initial) | (Social Security Number) | (Rank) |

| Co A, 127th Avn Spt Bn | United States Army | ~~APO AE 09165~~ |
|---|---|---|
| (Unit/Command Name) | (Branch of Service) | (Station or Ship) |

By

### G E N E R A L  COURT-MARTIAL

Convened by   ~~THE COMMANDER~~
(Title of Convening Authority)

~~V  CORPS~~
(Unit/Command of Convening Authority)

Tried at

| Mannheim & Hanau, ~~Federal Republic of Germany~~ | on | 16 & 30 December, 1998 ~~14 January, 1999~~ |
|---|---|---|
| (Place or Places of Trial) | | (Date or Dates of Trial) |

---

## ALLIED PAPERS

COMPANION CASES:   PVT Kurtis Armann, 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 *Army 9900316 - CMCR*
SPC Roy P. Tarbox, 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 *Army 9900180 - P.3*

[1] insert "verbatim" or summarized" as appropriate. (This form will be used by the Army and Navy for verbatim records of trial only )

[2] See inside back cover for instructions as to preparation and arrangement.

DD Form 490, OCT 84                    Previous editions are obsolete.                    Front Cover

COPY ONE

VOL I OF III