IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KURTIS E. ARMANN, ) | |
| ) | Civil Action No. 04-118(E) |
| Petitioner, ) | |
| ) | |
| v. ) | Judge Sean J. McLaughlin |
| ) | Magistrate Judge Susan Paradise Baxter |
| WARDEN, FCI McKEAN, ) | |
| ) | |
| Respondent. ) | |

**RESPONSE TO MOTION FOR EVIDENTIARY HEARING**

AND NOW, comes Respondent, James Sherman, Warden, FCI McKean ("Respondent"), by his attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christy Wiegand, Assistant U.S. Attorney for said district, and respectfully responds to Petitioner's Motion for Evidentiary Hearing filed herein as follows:

**I. INTRODUCTION**

Petitioner, Kurtis Armann ("Petitioner"), a former member of the United States Army, was charged with, and pled guilty to, attempted premeditated murder with a firearm; conspiracy to commit premeditated murder; violation of a lawful general regulation which prohibited the possession of a weapon with a "silencer" and required registration of all weapons for U.S. military personnel stationed in Germany; and marijuana use. Petitioner was convicted in a general court-martial in March 1999, and sentenced to a dishonorable discharge, forfeiture of all pay, and confinement for 38 years.[1] See Respondent's Response, at 2. Petitioner appealed to the Army Court of Criminal Appeals ("ACCA"), challenging his firearm conviction and sentence. See Exhibit

---

[1] By pre-trial agreement, the sentence was modified to not exceed 35 years of confinement. See Exhibit A to Response.

D to Response. Additionally, in a separate Appendix "A" to his appeal to the ACCA, Petitioner asserted an absence of mental responsibility for his actions, and cited to seven medications which had been prescribed to him after his arrival in the Disciplinary Barracks. On April 24, 2001, the ACCA affirmed the trial court's decision. See Exhibit F to Response.

Petitioner subsequently petitioned the Court of Appeals for the Armed Forces ("CAAF"), the highest military court, for review of his conviction, again arguing against the validity of his firearm conviction and that mitigating factors warranted a reduction in his sentence. See Exhibit G to Response. Petitioner also petitioned for a new trial. See Exhibits H-J to Response. By court order, Petitioner was required to supplement his petition for grant of review, which he did, through counsel. See Exhibit M to Response. Included in Petitioner's "Supplement to Petition for Grant of Review" was an appendix, submitted pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982), in which Petitioner personally asserted that he lacked the mental capacity to stand trial due to medications he had been prescribed. See Appendix B to Exhibit M to Response. On July 24, 2002, the CAAF granted Petitioner's Petition for Grant of Review. After granting the Petition, the CAAF ordered that the ACCA's decision be affirmed and denied Petitioner's request for a new trial. See Exhibit N to Response.

On April 22, 2004, Petitioner filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Pennsylvania, in which he challenged his court-martial conviction and sentence on the basis that he had not been competent to stand trial at the time of his court-martial due to the prescription medications he was taking at the time. In his Response to the Petition, Respondent established that the military courts gave full and fair consideration to Petitioner's claims, and that, accordingly, Petitioner could not raise claims of

his competency before this Court.

Petitioner now attempts to preempt any determination this Court may make with regard to his Petition by filing the instant Motion for Evidentiary Hearing, in which he seeks to have this Court adjudicate his competency at his 1999 court-martial -- an issue which has previously been considered and determined by the military courts. Because the issue of Petitioner's competency received fair and full consideration before the military courts, this Court is without jurisdiction to consider the Petition, and it should be denied.

## II.  ARGUMENT

### A.  Petitioner is not entitled at this point in time to an evidentiary hearing on the issue of his competency.

In the instant motion, Petitioner asserts that he is entitled to an evidentiary hearing so that this Court may make a factual finding with respect to the issue of Petitioner's competency to stand trial at his military court-martial in March, 1999. Contrary to Petitioner's assertions, an evidentiary hearing at this point in time would be premature, and therefore beyond the scope of this Court's jurisdiction.

While an inmate who has been convicted in a military court-martial may, in certain circumstances, invoke a federal court's jurisdiction pursuant to 28 U.S.C. § 2241, federal courts have recognized that their scope of review in such instances is limited, and that great deference should be afforded a military court's prior determination, due, in part, to the unique culture in which military law has developed. In Burns v. Wilson, 346 U.S. 137 (1953), the Supreme Court stated that "in military habeas corpus the inquiry, the scope of matter open for review, has always been more narrow than in civil cases," and observed:

> Thus, the law which governs a civil court in the exercise of its jurisdiction over military habeas corpus applications cannot simply be assimilated to the law which governs the exercise of that power in other instances. It is sui generis; it must be so, because of the peculiar relationship between the civil and military law.
>
> Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment. This Court has played no role in its development; we have exerted no supervisory power over the courts which enforce it; the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers expressly entrusted that task to Congress.
>
> Indeed, Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights.
>
> \*       \*       \*
>
> In military habeas corpus cases, even more than in state hebeas [sic] corpus cases, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings -- of the fair determinations of the military tribunals after all military remedies have been exhausted.

Id. at 139-42; see also, Weiss v. United States, 510 U.S. 163, 177-78 (1994); Goldman v. Weinberger, 475 U.S. 503, 508 (1986)("'judicial deference . . . is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged.'" (quoting Goldman v. Weinberger, 475 U.S. 503, 508 1981)); Parker v. Levy, 417 U.S. 733, 743 (1974); Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 810 (10th Cir. 1993) ("Because of the independence of the military court system, special considerations are involved when federal civil courts collaterally review court-martial convictions"); Davis v. Marsh, 876 F.2d 1446, 1449 (9th Cir. 1999) ("Federal intrusion into courts-martial interferes with the military's power to punish offenders no less than the corresponding

intrusion into state prosecutions implicates concerns of federalism"); Calley v. Callaway, 519 F.2d 184, 203 (5th Cir. 1975) ("Decisions by reviewing courts within the military justice system must be given a healthy respect, particularly where the issue involves a determination of disputed issues of fact").

In light of these considerations, the Supreme Court in Burns held that when a military decision "has dealt fully and fairly with an allegation raised in [an application for habeas corpus], it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." Burns, 346 U.S. at 142. Accordingly, prior to any evaluation of Petitioner's competency at the time of his court-martial, this Court must first determine whether the issue of Petitioner's competency to stand trial was fully and fair considered by the military courts. Only if the Court concludes that the military courts did not give full and fair consideration to the issue of Petitioner's competency, may the Court then consider whether Petitioner was competent to stand trial at the time of his court-martial in March, 1999.

As Respondent detailed in his Response to the Petition for Writ of Habeas Corpus, and further demonstrates, below, Petitioner's claim of lack of capacity to stand trial received full and fair consideration by the military courts. Accordingly, this Court must deny the Motion for Evidentiary Hearing, and deny the Petition for Writ of Habeas Corpus.

    **B.**    **Because the military courts afforded full and fair consideration to Petitioner's claim that he lacked the capacity to stand trial, and this Court is barred from reconsidering such a factual matter, the instant Motion for Evidentiary Hearing must be denied.**

As noted above, the Supreme Court held in Burns that once a federal district court determines that military courts gave full and fair consideration to an issue, the matter is at an end, for it is not

the role of a civil district court to reevaluate evidence the military courts have considered. Burns, 346 U.S. at 142. Petitioner's claim that he is entitled to an evidentiary hearing rests on his assertion that this Court should disregard Burns, and instead evaluate whether the military courts' consideration of his competency was correct under Brosius v. Warden, U.S. Penitentiary, Lewisburg, 278 F.3d 239 (3rd Cir. 2002). In Brosius, the United States Court of Appeals for the Third Circuit reviewed the District Court's denial of an inmate's habeas petition which challenged his court-martial conviction. The Brosius petitioner challenged his military conviction on the ground that, because he had not been given pre-interview warnings prescribed by Miranda or Article 31(b) of the Uniform Code of Military Justice, evidence obtained during those interviews, as well as his subsequent confession, should have been suppressed. Because the court's determination in Brosius ultimately did not turn upon whether or not the inmate was entitled to such warnings,[2] and because of the differences of various courts in interpreting Burns, the Third Circuit apparently saw fit to engage, in dicta, in something of an academic exercise in analyzing whether the military court had properly determined that the petitioner in that case had not been "in custody" for purposes of Miranda. The court stated:

> In the present case, we find it unnecessary to attempt any further explication of Burns. Whatever Burns means, we have no doubt that at least absent a challenge to the constitutionality of the statute under which the defendant was convicted . . . our inquiry in a military habeas case may not go further than our inquiry in a state habeas case. See Burns, 346 U.S. at 142, 73 S.Ct. 1045 ("In military habeas corpus cases, <u>even more than in state habeas corpus cases</u>, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings . . .") (emphasis added). Thus,

---

[2]The court ultimately determined that, with respect to the claim of failure to suppress evidence, such a failure "was harmless under any standard"; and that the inmate's confession had been properly obtained following a subsequent Miranda warning. Brosius, 278 F.3d at 245-50.

6

> we will assume -- <u>but solely for the sake of argument</u> -- that we may review the determinations made by the military courts in this case as if they were determinations made by state courts. Accordingly, we will assume that 28 U.S.C. § 2254(e)(1) applies to findings of historical fact made by the military courts. Under this provision, "a determination of a factual issue made by a State court" is "presumed to be correct," and a habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." In considering other determinations made by the military courts, we will assume that 28 U.S.C. § 2254(d) applies.[3]

<u>Brosius</u>, 278 F.3d at 245 (all emphases in the original). The Third Circuit then proceeded to analyze whether the non-factual determination by the military court that Brosius was not "in custody" was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." <u>Id</u>. at 246.

Based on the hypothetical exercise undertaken in dicta in <u>Brosius</u>, Petitioner suggests that this Court should analyze Petitioner's case pursuant to 28 U.S.C. § 2254(e)(1). However, this argument is disingenuous, because Petitioner does not disclose to the Court that the <u>Brosius</u> court <u>did</u> <u>not</u> <u>hold</u> that a § 2254 analysis was required in the review of military court determinations, and, to the contrary, specifically emphasized that its undertaking of such an analysis was "solely for the sake of argument." <u>Brosius</u>, 278 F.3d at 245. Further, <u>Fell v. Zenk</u>, 139 Fed.Appx. 391 (3rd Cir.

---

[3]28 U.S.C. § 2254(d) states that:

> [an] application for a writ of habeas corpus on behalf of a person in custody pursuant to judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2005), to which Petitioner also cites in support of his proposed § 2254 analysis, is the only subsequent case to cite Brosius on this point, but Fell reiterates Brosius' "for the sake of argument" language, and is expressly nonprecedential. Both Brosius and Fell are further distinguishable from the instant case because their "assuming for the sake of argument" analysis concerned the court's analysis of non-factual issues determined by military courts, whereas the instant case concerns review of a factual issue determined by military courts.

Not only does Petitioner aver that Brosius requires this Court to conduct its analysis pursuant to § 2254; he goes one step further, and argues that Petitioner's military court was required to produce findings of fact on Petitioner's competency, and because it did not, its consideration of the issue cannot be said to be full and fair. In his Motion for Evidentiary Hearing, Petitioner claims: "So, if a ruling on the defendant's competency has been made, pursuant to 28 U.S.C. § 2254(e)(1), that finding is presumed to be correct. . . . However, if the military court never makes a factual finding it cannot be presumed to be correct. Zilich v. Reid, 36 F.3d 317, 322 (3rd Cir. 1994)." Motion at 11. With this statement, Petitioner would have this Court impose federal substantive law upon the military court system, and fault the military courts for not producing written findings of fact addressing Petitioner's competency, when, in fact, Petitioner has cited to no military authority which would require the military courts to do so.[4] Brosius does not direct district courts reviewing military court actions in habeas petitions to analyze those actions pursuant to § 2254, much less impose a fact-finding requirement on the military courts. Such a position would disrespect the separateness

---

[4]Petitioner misreads Zilich. Contrary to Petitioner's assertions, Zilich simply states that the presumption of correctness does not apply "where the merits of the habeas petitioner's claim were not resolved in the state court proceeding." Zilich v. Reid, 36 F.3d 317, 322 (3rd Cir. 2005). In the instant matter, Petitioner's claims were resolved on the merits by the military courts.

of military and civil jurisprudence.  See  Burns v. Wilson, 346 U.S. at 139-42; Parker v. Levy, 417 U.S. 733, 743; Section A, supra.

> 1.  **The Motion for Evidentiary Hearing should be denied because Petitioner's claims received full and fair consideration before the military courts**.

As Respondent established in his Response to the Petition for Writ of Habeas Corpus, Petitioner's claim, that he lacked the capacity to stand trial due to medication he was then taking, was fully addressed by the military courts which tried Petitioner and heard his appeals.    See Response at 12-17.  At the military trial level, just five weeks prior to trial, Petitioner underwent review by a court-ordered sanity board, which included a full review of all the Petitioner's medical records, and specifically addressed the question of whether Petitioner had sufficient mental capacity to understand the nature of the court-martial proceedings and to conduct his own defense, or cooperate intelligently in his own defense. See Exhibits O and P to Response.[5]   The sanity board determined that Petitioner did have sufficient mental capacity to understand the nature of the court-martial proceedings and to conduct his own defense or cooperate intelligently in his own defense. See Exhibits O and P to Response.

That the ACCA made no mention of Petitioner's competency to stand trial , or that Petitioner

---

[5]If Petitioner or his counsel believed that a change in condition or treatment in the time between the sanity board and trial warranted a re-evaluation, they were free to request such an evaluation, and it would have been granted.  Rule 706(a) of the Rules for Courts Martial ("RCM") states that, "[i]f it appears to any commander who considers the disposition of charges, or to any investigating officer, trial counsel, defense counsel, military judge, or member [juror] that there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial, that fact and the basis of the belief or observation shall be transmitted through appropriate channels to the officer authorized to order an inquiry in to the mental condition of the accused."  See also, RCM 706(c)(4) ("Additional examination may be directed under this rule at any stage of the proceedings as circumstances may require").

failed to raise that issue with that court, does not indicate that this issue was not considered during the course of Petitioner's appeal to that body. Pursuant to Article 66©) of the Uniform Code of Military Justice, the ACCA must independently review, de novo, the entire record of the court-martial, and it cannot approve any conviction or sentence which it believes is factually or legally incorrect. See 10 U.S.C. § 866; see also, United States v. Bright, 60 M.J. 936, 938 (U.C.C.A. 2005)(noting that, "[f]or cases that fall within the ambit of Article 66, UCMJ, Congress has given the Courts of Criminal Appeals enormous power and responsibility ro review the approved findings and sentence"; the Court of Criminal Appeals is required to independently review the entire record of the trial regardless of what issues an appellant raises on appeal); United States v. Martinez, 12 M.J. 801 (C.M.A. 1981) ("The Court of Military Review [predecessor to the to ACCA] can and must consider any and all evidence which relates to the issue of mental capacity regardless of whether that evidence was before the court-martial [citation omitted]. Our review of this issue must extend to a detailed re-examination of any and all relevant information, both on and off the record, which might affect the determination of competency to stand trial"). Consequently, regardless of the fact that Petitioner did not contest his mental capacity to stand trial before the ACCA, that body was nonetheless charged with the responsibility of reviewing the entire record of the proceedings below, which would have included the determination that Petitioner was competent to appear before the court-martial.[6]

With regard to the CAAF's consideration of Petitioner's competency, Petitioner petitioned the CAAF for review of the ACCA's decision affirming his conviction, as well as for a new trial.

---

[6]Had the ACCA had a concern regarding Petitioner's competency to stand trial, it would have ordered a DuBay evidentiary hearing for further evaluation. See United States v. DuBay, 1967 WL 4276 (C.M.A. 1967); see, e.g., United States v. Collins, 41 M.J. 610, 613 (A.C.C.A. 1994).

In support of his Petition for Review, Petitioner, through counsel, submitted a "Supplement to Petition for Grant of Review," which included a 33-page addendum brief prepared by Petitioner alone, pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982),[7] over fifteen pages of which were dedicated expressly to the competency issue Petitioner now asserts before this Court. See Appendix B to Exhibit M to Response. On July 24, 2002, the CAAF issued an order granting Petitioner's Petition for Grant of Review, but also affirming the ACCA's decision and denying the Petition for New Trial. See Exhibit N to Response. Because the CAAF granted, and did not deny, Petitioner's Petition for Grant of Review, the CAAF, a fortiorari, gave full and fair consideration to Petitioner's arguments, including his position that he lacked the competency to stand trial, prior to issuing its summary affirmance.[8]

### 2. Application of the factors in Calley v. Callaway prohibit this Court's review of the military courts' determinations.

Because Petitioner was afforded full and fair consideration by the military courts, this Court is without jurisdiction to re-evaluate evidence regarding Petitioner's competency to stand trial in March, 1999. This conclusion is reinforced by an analysis of Petitioner's claims under Calley v. Callaway, 519 F.2d 184 (5th Cir. 1975).

---

[7] United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982) requires that military appellate counsel must raise an accused's specified errors to the attention of the court, even if counsel regard those issues as non-meritorious. Id. at 435-36.

[8] Contrary to Petitioner's suggestion, the Tenth Circuit's decision in Watson v. McCotter, 782 F.2d 143 (10th Cir. 1986), does not require that an issue be briefed and argued prior to a military court's determination of that issue, even on summary affirmance, and Petitioner points to no case which imposes such a requirement. See also, Lundy v. Zelez, 1989 WL 47861, at *2 (D.Kan. 1989) (unpublished), aff'd, 908 F.2d 593 (10th Cir. 1990) (holding that military appellate court's refusal to grant review of petitioner's claims did not render his conviction constitutionally defective; rather, the denial served "sub silentio as affirmation of the lower courts' decisions, and constitutes full and fair consideration of the issues presented").

11

In Calley, the United States Court of Appeals for the Fifth Circuit attempted to clarify the state of the law within its districts regarding the scope of review in military habeas cases post-Burns. Under the Calley analysis, whether a federal court may review the validity of claims that errors in the military trial deprived the accused of due process of law depends on four factors: 1) that the asserted error is one of substantial constitutional dimension; 2) that the issue must be one of law rather than disputed fact; 3) that there are no military considerations which may warrant different treatment of constitutional claims; and 4) that the military courts failed to give adequate consideration to the issues involved or failed to apply the proper legal standards. Id. at 199-203; see also, Roberts v. Callahan, 321 F.3d 994 (10th Cir. 2003) (holding that the petitioner's claims had been full and fairly considered and stating that the four factors did not pose an additional jurisdictional hurdle, but were an aid in determining if claims had been fully and fairly considered, as required by Burns).

Petitioner argues that the Calley factors favor this Court's review of Petitioner's competency claim. However, Petitioner's case fails on at least two of the Calley factors. First, as Petitioner acknowledges, the determination of his competency by the court-martial is a factual issue, and therefore of the type of issue which Calley cautioned was unreviewable:

> The scope of review for violations of constitutional rights [in military court-martials], however, is more narrow than in civil cases. Thus, federal courts should differentiate between questions of fact and law and review only questions of law which present substantial constitutional issues. Accordingly, they may not retry the facts or reevaluate the evidence, their function in this regard being limited to determining whether the military has fully and fairly considered contested factual issues.

Id. at 203.

Second, Petitioner's argument that the military courts did not, per Calley, give adequate consideration to the issues involved also fails, for his argument rests solely on a fiction that the military courts did not consider Petitioner's competency to stand trial. As Respondent has demonstrated, this issue was indeed considered, by the trial court, during trial and with its sanity board review; by the ACCA, with its independent review of the law and facts, mandated by Article 66 of the UCMJ; and by the CAAF, to which Petitioner submitted his incompetency argument, and which granted review.

As the Supreme Court in Burns stated, "it is not the duty of the civil courts simply to repeat that process -- to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus. It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims." Burns, 346 U.S. at 144. Only if "the military courts refused to consider those claims, [was] the District Court was empowered to review them de novo." Id. at 142. As Respondents have demonstrated, and Petitioner cannot refute, the military courts did not "manifestly refuse" to consider Petitioner's claim of incompetency. Accordingly, this Court is not empowered to re-evaluate Petitioner's competency to stand trial in March, 1999, or the underlying facts, and it must deny the Motion for Evidentiary Hearing, and dismiss the Petition.

### III. CONCLUSION

For the foregoing reasons, the Motion for Evidentiary Hearing must be denied, and the Petition for Writ of Habeas Corpus should be dismissed.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


   s/  Christy Wiegand
CHRISTY WIEGAND
Assistant U.S. Attorney
U.S. Courthouse  and Post Office
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 644-3500

Counsel for the Respondent

## CERTIFICATE OF SERVICE

  I hereby certify that I have served this date a copy of the within *Response to Motion for Evidentiary Hearing,* by mail or electronic filing, upon the following:

Thomas W. Patton<br>
Federal Public Defender's Office<br>
1001 State Street<br>
1111 Renaissance Centre<br>
Erie, PA   16501

             s/ Christy Wiegand
             CHRISTY WIEGAND
             Assistant United States Attorney

Date:   February 16, 2006