IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KURTIS E. ARMANN,
     Petitioner

    v.          CIVIL ACTION NO. 04-118 ERIE

WARDEN, FCI MCKEAN
     Respondent

STATUS CONFERENCE

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Friday, June 2, 2006.

APPEARANCES:
     THOMAS W. PATTON, Assistant Federal Public
     Defender, (via Phone), appearing on behalf of
     the Petitioner.

CHRISTY WIEGAND, Assistant United States Attorney, (via Phone), appearing on behalf of the Respondent.

Ronald J. Bench, RMR - Official Court Reporter

2

1       P R O C E E D I N G S

2

3       (Whereupon, the proceedings began at 9:15 a.m., on

4  Friday, June 2, 2006.)

5

6       THE COURT:  All right, counsel, I wanted to take a

7  few minutes and chat with you about the state of the record in

8  United States v. Armann.

9       Just by way of brief background, as I reviewed the

10  file, it appeared to me that there were documents that were

11  referenced in the file that I had, but I didn't have the actual

12  documents.  Which we subsequently requested from the United

13  States to see if they could find and locate various documents,

14  and they forwarded those documents to me. Those would include

15  the brief in support of petition for new trial, filed by

16  counsel for Mr. Armann, in the United States Court of Appeals

17  for the Armed Forces.

18      We then also received by cover letter dated May 30,

19  2006, from the government, the United States, a document styled

20  motion to attach documents -- motion to attach documents with

21  various documents attached, prepared by Mr. Armann himself.

22      Finally, we received the brief on behalf of appellee

23  in response to appellant's petition for new trial, filed by the

24  United States in the Court of Appeals for the Armed Forces.

25      Now, in the file that I had, there is an order which

3

1  reads as follows: "On consideration of appellant's motion to

2  attach documents, motion to suspend the rules of the Court,

3  motion for leave to file out of time, and motion to admit

4  additional matters pursuant to United_States_v._Grostefon," I
   _____ _____ __ _____

5  guess that's how it's pronounced, "it is, by the Court, this

6  17th day of April, 2002, ordered that said motions are hereby

7  denied."

8        Here's my first question. Why did the court deny --

9   did the clerk deny Armann's motion to attach documents, which I

10  previously referenced, do you know, Ms. Wiegand?

11        MS. WIEGAND: Yes, I do, your Honor. Over the past

12  couple days, we've been able to put together what we think is

13  an accurate chronology of what Mr. Armann filed when, and the

14  court's actions on those filings.

15        THE COURT: Let me interrupt you for one quick

16  second and then I'll let you go ahead. We wouldn't be having

17  this conversation if we would have received the entire military

18  record. And, actually, when you were all before the magistrate

19  judge and I think quite innocently, nobody recognized it,

20  but you didn't have the full record there?

21        MS. WIEGAND: That's correct, your Honor. It has

22  taken some time for us to obtain the complete military record.

23  The record was in off-site storage, we certainly apologize for

24  the delay in obtaining that record. It did take some multiple

25  efforts to obtain that record and get it over to the Clerk's

4

1   Office and get the additional documentation and piece it

2  together.  There wasn't a clear docket sheet or clear easily

3  accessible military record.  But we do believe we have all the

4  relevant documents from the record.

5         THE COURT:  Now, I'm sorry I interrupted you, tell

6  me about what the clerk was denying there?

7         MS. WIEGAND:  Sure.  The order that you were

8  referring to was an order by the Court of Appeals for the Armed

9  Forces dated April 17, 2002.  That order was denying documents

10  filed by Mr. Armann on March 22, 2002.  Mr. Armann had filed

11  four documents on March 22, 2002, and the court denied those

12  filings on April 17, 2002.  So that the April 17, 2002 order

13  does not relate to the documents that you had requested from

14  the government and which the government has sent to you in this

15  case.

16         THE COURT:  What is there of record, I'm not

17  doubting your word at all because I know you made inquiries,

18  what is there of record that tells me that?

19         MS. WIEGAND:  Captain Ferris can correct me if I'm

20  wrong here, although the Court of Appeals for the Armed Forces

21  did not have an official docket relating to this case, they

22  were able to call from the computer database -- which is

23  similar to a docket which indicates dates particular parties

24  filed particular documents.  Also, the dates the court issued

25  orders on those documents.  So I did obtain that document, and

5

1  then together with Captain Ferris, we pieced together the dates

2  of relevant filings.  And then the court orders with respect to

3  those filings.

4           THE COURT:  Forgive me once again, I'm somewhat

5  unfamiliar, in fact I'm quite unfamiliar with the mechanics of

6  the military justice system.  But why wouldn't there be, as in

7  any other court proceeding, a docket maintained; isn't there a

8  docket, just like there would be on the civil side of the

9  fence, isn't there a court docket?

10          MS. WIEGAND:  I'll have to defer to Captain Ferris,

11  if he knows on that one?

12          CAPT. FERRIS:  Sir, there is.  There is, but for

13  instance, if you were to go into the Clerk's Office and asked

14  to see a case, asked to pull that case file, in my

15  experience -- and you opened up that case file, there is a

16  docket sheet right there starting from the beginning.  That's

17  not the case if you were to go to the Court of Appeals for the

18  Armed Forces.  They keep a full copy of every single filing

19  that comes in there.  So when you get a file, all you get is

20  those papers.  On their computers they have a database that is

21  used for tracking.  When printed out, it looks like just a

22  docket we see everywhere else.  So it's really a semantic

23  thing.  The sheet looks very much like a docket -- but they use

24  it for their tracking.

25         THE COURT:  Let me ask you, Ms. Wiegand, do I have

6

1  the motion to attach the four documents that you were

2  referencing, you said that was the motion that the April 17,

3  2002 order denied, is that right?

4         MS. WIEGAND:  Partially right, your Honor.  On March

5  22, 2002, Mr. Armann and his attorney filed four separate

6  documents.  And the April 17, 2002 order related to the four

7  documents that were filed by Mr. Armann and his attorney on

8  March 22, 2002.

9         THE COURT:  Do I have that motion?

10        MS. WIEGAND:  I do not believe you have that motion.

11    THE COURT: Why don't I have the entire file? I'm

12 not trying to be argumentative here, the issue in the case and

13 the issue that was before the magistrate judge was whether or

14 not under Third Circuit case law and other case law the highest

15 military court there gave, for instance, the issue of his

16 competency at time of trial fair and full consideration.

17 That's essentially the core of the issue -- if not, whether

18 there should be an evidentiary hearing, etc. Aren't I kind of

19 walking on one leg here unless I know I have the entire file?

20    MR. PATTON: Your Honor, I may be able to assist you

21 on this some. When I was appointed, we tried to contact the

22 JAG defense that represented Mr. Armann in his appeal. They

23 have since moved, but I got a hold of, I guess it would be the

24 defense side of the JAG appellant side. I have received a

25 seven-volume record that appears to be everything from trial

7

1 through the CAP. It's big.

2    MS. WIEGAND: Your Honor, if I could add to that.

3 My understanding is that the file is fairly voluminous and,

4 also, we did not have a complete copy of the file until the

5  past several days. In fact, I'm not certain that we have every

6  single document that was ever filed in the military court in

7  the case. We have tried, and maybe it was not the right thing

8  to do, we've tried to obtain the relevant documents and attach

9  the relevant documents to our court pleadings. But because the

10  military file has a lot of voluminous filings --

11          THE COURT: I understand.

12          MS. WIEGAND: We didn't submit the entire record

13  from the military court.

14          THE COURT: That's quite all right. To be sure,

15  probably 98 percent of this voluminous file would be irrelevant

16  concerning the issue that we have before us. But what I want

17  to confirm, maybe you can do it by joint stipulation, if you

18  folks have talked about it or independently know. Now that I

19  have received these additional three documents, do I now have,

20  to the best of each of your knowledge, all of the motions or

21  briefs that would have been submitted in the appellate process

22  or is there anything else out there that someone knows or

23  suspects I might be missing insofar as it might inform my

24  decision on the question of full and fair consideration?

25          MR. PATTON: I believe I have at least a couple --

1  one additional thing you may need, your Honor.

2      THE COURT: What's that?

3      MR. PATTON: The government sent you in their

4  facsimile two documents. Counsel's brief in support of

5  petition for new trial and counsel's motion to attach

6  documents.

7      THE COURT: Right.

8      MR. PATTON: Counsel's motion to attach documents

9  asks permission to admit Exhibits 1 through 18.

10     THE COURT: Hang on one second, let me grab this

11 document here.

12     MR. PATTON: This is the one that has the cover

13 sheet, cover letter of May 30, 2006.

14     THE COURT: Are you talking about the motion to

15 attach documents?

16     MR. PATTON: Correct. Exhibit 1 is the statement

17 and verification signed by Kurtis E. Armann. And then the

18 exhibit is actually attached.

19     THE COURT: Yes.

20     MR. PATTON: That exhibit contains three separate

21  arguments. The government filed a motion opposing --

22         THE COURT: Opposing the attached documents.

23         MR. PATTON: The motion itself, it's captioned

24  objection to appellant's motion to attach documents. There's

25  not a docket number attached to it, it was filed on November

9

1  20th of 2001, by Susana E. Watkins, appellate government

2  counsel.

3         THE COURT: In other words, that was a motion

4  opposing the proposed attachment of documents that would have

5  been filed by the petitioner, is that right?

6         MR. PATTON: That is correct.

7         THE COURT: All right. Now, do you know if the

8  appellate court ever ruled on that motion?

9         MS. WIEGAND: Your Honor, this is Christy Wiegand.

10  The appellate court did rule on that motion on January 7, 2002,

11  the Court of Appeals for the Armed Forces granted Mr. Armann's

12  motion to attach documents as to Exhibit 1.

13         THE COURT: What about Exhibits 2 through 18?

14         MS. WIEGAND: The court denied the motion with

15  respect to Exhibits 2 through 18.

16      THE COURT:  Okay.  So, then, here's my next

17  question.  It sounds to me like there is no dispute but that

18  the high court had before it the petitioner's motion -- excuse

19  me, the statement and verification signed by Kurtis E. Armann,

20  but it didn't have before it the other 17 exhibits, is that

21  right?

22      MR. PATTON:  I believe that's correct, your Honor.

23      MS. WIEGAND:  My understanding would be that those

24  other 17 exhibits would have been submitted to the court and

25  then the court refused to consider them.

10

1       THE COURT:  Okay.

2       MR. PATTON:  Judge, with regard to the one exhibit

3   that they let in, Exhibit 1 --

4       THE COURT:  Right.

5       MR. PATTON:  In this objection that the government

6   filed, they made a specific argument with respect to that

7   Exhibit 1, which was Mr. Armann's written verification.

8       THE COURT:  What did they say?

9      MR. PATTON: They said only a portion of Exhibit 1

10  has relevance to this issue, the statement of the case and the

11  accutane argument under the statement of facts. But it says --

12  the parts labeled argument two, substance induced psychosis,

13  and argument three, involuntary intoxication, that the

14  government argued those issues were not before the court in the

15  petition for new trial, so the court should not consider that

16  exhibit, as far as arguments two and three were concerned.

17      MS. WIEGAND: I think the bottom line there is the

18  CAPs granted that exhibit. That exhibit, the CAPs accepted it,

19  it was before the court. Regardless of what the government may

20  have argued with respect to that exhibit. The CAPs did grant

21  the petitioner's motion with respect to that Exhibit 1.

22      THE COURT: My purpose, really my purpose in the

23  call here is largely more procedural and housekeeping than it

24  was substantive. So I kind of want to avoid any argument on

25  whether it does or does not represent full and fair

11

1  consideration. I just wanted to make sure, can we all agree,

2  then, at least maybe this is a way to bring our discussion to a

3   close, that at least insofar as those documents that would

4   inform my decision as to the question of full and fair

5   consideration, I now have all of the relevant documents, save

6   perhaps the document that Mr. Patton was just reading to me; do

7   you agree with me, Mr. Patton?

8        MR. PATTON:  Yes.

9        THE COURT:  Do you agree with that, Ms. Wiegand?

10       MS. WIEGAND:  I believe so.  If I could ask Captain

11  Ferris if that's his understanding as well?

12       CAPT. FERRIS:  I believe you have everything that

13  the CAPs considered at this point.  Frankly, the reason you

14  don't have the original motion to attach is because they denied

15  that motion, it wasn't before them.

16       THE COURT:  Mr. Patton, would you send me a copy of

17  the documents you've been referring to that I don't have?

18       MR. PATTON:  Yes, sir.

19       THE COURT:  Then what I'm going to do then, is I'm

20  going to direct my clerk to file these additional documents.

21  Do you know if any of this military record has been filed in

22  the District Court yet?

23       MS. WIEGAND:  Your Honor, individual documents and

24  briefs and orders have been attached to various pleadings, I

25  believe Mr. Patton has attached documents, I've attached some

12

1   documents relating to specific pleadings.  But we sort of

2   attached huge sections of the record.

3         THE COURT:  I'm going to go ahead and direct my

4   clerk to file the documents that we have discussed here today,

5   and actually Mr. Patton can do it just as well.  Go ahead and

6   file the documents you have.  And then at least as I now go

7   through this thing, I know I have everything else.  All right,

8   I appreciate your time, thank you.

9

10        (Whereupon, at 9:35 a.m., the proceedings were

11  concluded.)

12

13              - - -

14

15

16

17

18

19

20

21

22

23

24

25

13

1      C E R T I F I C A T E

2

3

4

5    I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11

12  _____

13  Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25