# Exhibit F

**IN THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS**

| | |
|---|---|
| U N I T E D   S T A T E S<br>Appellee | BRIEF ON BEHALF OF APPELLANT |
| v. | Docket No. ARMY 9900316 |
| Private E1<br>**KURTIS E. ARMANN**<br>United States Army,<br>Appellant | Tried at Hanau and Mannheim, Germany on 14 and 25 January and 19 March 1999 before a general court-martial appointed by the Commander, Headquarters, V Corps, Lieutenant Colonel (LTC) Donna Wright and LTC William Barto, military judges, presiding. |

TO THE HONORABLE JUDGES OF THE UNITED STATES
ARMY COURT OF CRIMINAL APPEALS

Statement of the Case

On 14 & 25 January and 19 March 1999, Private E1 (PVT) Kurtis E. Armann [hereinafter appellant], was tried at Hanau and Mannheim, Germany, before a military judge sitting as a general court-martial. Pursuant to his plea, appellant was found guilty of attempted premeditated murder, conspiracy to commit premeditated murder, violation of a general regulation and wrongful use of marijuana in violation of articles 80, 81, 92 and 112a of the Uniform Code of Military Justice, 10 U.S.C. § 880, 881, 892 and 912a (1996)[hereinafter U.C.M.J.]. Appellant was sentenced to total forfeitures of all pay and allowances, confinement for thirty-eight years and a dishonorable discharge. Pursuant to a plea agreement, the convening authority approved

35 years confinement and the remainder of the sentence as adjudged.

## Statement of Facts

Appellant's convictions arose from the planning and attempted execution of the murder of another soldier, Private First Class (PFC) Bell. *See* Charge Sheet. Appellant was charged with and pled guilty to attempted premeditated murder, conspiracy to commit premeditated murder, violation of a general regulation by possessing an unregistered firearm on post and marijuana use. *Id.* All other facts necessary to resolution of the raised assignments of error are contained herein.

## Assignments of Error[1]

I

THE FINDINGS OF GUILTY AGAINST APPELLANT FOR VIOLATION OF A LAWFUL GENERAL REGULATION (THE SPECIFICACTION OF CHARGE III) MUST BE SET ASIDE AS THE EXISTENCE OF THE TWO REGULATIONS UNDERLYING THE ARTICLE 92, UCMJ CHARGE WERE NEVER JUDICIALLY NOTICED OR OTHERWISE ACCEPTED AS EVIDENCE IN THE RECORD DURING THE COURT-MARTIAL PROCEEDINGS.

II

THE TRIAL JUDGE IMPROPERLY ATTACHED A SEVEN-PAGE EXHIBIT AS APPELLATE EXHIBIT XVI AFTER TERMINATION OF THE COURT-MARTIAL PROCEEDINGS WHERE THE SEVEN-PAGE DOCUMENT WAS NOT ACCEPTED AS AN APPELLATE EXHIBIT DURING THE COURT-MARTIAL AND A SEPARATE DOCUMENT HAD PREVIOUSLY BEEN IDENTIFIED AND ATTACHED TO THE RECORD AS APPELLATE EXHIBIT XVI.

---

[1] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant, through communications with counsel, personally asserts the matters set forth in Appendix A.

2

The elements of the offense of violation of a lawful regulation pursuant to article 92, UCMJ, are:

(a) that there was in effect a certain lawful general regulation;
(b) that the accused had a duty to obey it; and
(c) that the accused violated or failed to obey the regulation.

The government must prove that the regulation in question existed at date and time of alleged violation and that both accused and his acts were within proscription of this regulation. *See United States v. Williams*, 3 M.J. 155 (CMA 1977). The government can not meet this burden by simply identifying the regulation on the charge sheet but must either introduce the regulation into evidence or request the trial judge to take judicial notice. *Williams*, 3 M.J. at 156.

Where an accused pleads guilty, the trial judge must conduct an appropriate interview of an accused to establish a clear and sufficient basis for determining that the acts of the accused constitute the offense to which he pleads guilty. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). The military judge must ask questions that elicit facts from which he or she can conclude that the legal standard has been met. It is not sufficient simply to secure an accused's acknowledgment of guilt in terms of legal conclusions. *United States v. Rios*, 32 M.J. 501, 504 (A.C.M.R. 1990), *pet. denied*, 37 M.J. 17

3

(C.M.A. 1992); *United States v. Goins*, 2 M.J. 458 (A.C.M.R. 1975).

Appellant was charged with violating UNITED STATES ARMY EUROPE (USAEUR) REG. 600-1, PERSONNEL GENERAL REGULATED ACTIVITIES OF MEMBERS OF THE U.S. FORCES, CIVILIAN COMPONENT, AND FAMILY MEMBERS, para. 13 (30 August 1990) and Change 3 to that regulation dated 21 October 1993. [hereinafter USAEUR Reg. 600-1]. *See* Charge Sheet. The basis for violation of this regulation was appellant's possession of a silencer and a firearm not registered in accordance with UNITED STATES ARMY EUROPE (USAEUR) REG. 190-6, MILITARY POLICE, REGISTRATION AND CONTROL OF PRIVATELY OWNED Firearms AND OTHER WEAPONS IN GERMANY (29 June 1993)[hereinafter USAEUR Reg. 190-6]. *Id.*

During the providence inquiry, the trial judge reviewed the elements of the charged Article 92, UCMJ offense with appellant. (R. at 89.) During this discussion, the trial judge verbally identified the two regulations cited in the Specification of Charge III but never requested or *sua sponte* took judicial notice of the regulations. (R. at 89-90, 113-16.) The trial judge did not read the applicable provisions of either USAEUR Reg. 600-1 or USAEUR Reg. 190-6 to appellant during this discussion. Without any indication in the record that appellant understood the prohibitions of the regulations, appellant agreed that the silencer and firearm he possessed was a weapon as

4

described in USAEUR Reg. 600-1 (R. at 113) and that he did not register those items in accordance with "USAEUR regulations.[2]" (R. at 114.)

The unsigned stipulation of fact in appellant's case references the relevant regulations but does not include any passages from the regulations. (See Prosecution Exhibit 1, attachment 1.) Prosecution exhibit 1 consists of 18 attachments, none of which are the charged regulations.

Defense counsel did not lodge any objection to this cursory inquiry or the trial judge's failure to receive the regulations into evidence. However, the trial judge's failure to adequately advise appellant of the elements of the charged regulations or judicially notice the regulations constitutes error. It is the responsibility of the trial judge to ensure the appellant's pleas of guilty are sufficient based on matters properly before the court-martial before making findings. See Rules for Courts-Martial 910(e) and 918(c).

After the court-martial terminated, the trial judge, LTC Barto, authenticated the record of trial on 4 June 1999. (R. at 386 - Authentication of Record). During his authentication of the record, the trial judge apparently recognized this problem and attempted to append excerpts of these regulations to the record as appellate exhibits. Id. On the authentication sheet,

---

[2] The trial judge did not identify to which USAEUR regulations he was

5

the trial judge indicated that he "attached AE XVI, a seven-page extract of USAEUR regulations used by the MJ in conducting the plea inquiry." *Id.* This discrepancy is not mentioned in the post-trial matters submitted by the trial defense counsel or the staff judge advocate. This act by the trial judge after the court-martial closed could not and did not remedy the legal insufficiency of the pleas. The attempt to attach this evidence post-trial was improper.

Moreover, the manipulation of the appellate exhibits by the trial judge improperly inserts a second AE XVI into the record. Appellate exhibit XVI identified at trial is the initial defense proposed stipulation of expected testimony reflecting comments of both parties arising during a mid-trial article 39(a), UCMJ, session. (R. at 170.)

WHEREFORE, appellant respectfully requests that this Honorable Court set aside and dismiss the finding of guilty to the Specification of Charge III and Charge III.

III
APPELLANT'S APPROVED SENTENCE TO 35 YEARS
CONFINEMENT IS SUBSTANTIALLY DISPROPORTIONATE UNDER
THE CIRCUMSTANCES WHEN EVIDENCE WAS PRESENTED TO THE
MILITARY JUDGE THAT APPELLANT UNDERWENT A PERSONAL
HISTORY RIDDLED WITH SUBSTANTIAL MENTAL AND PHYSICAL
ABUSE; MANIFESTED A MALADAPTIVE PERSONALITY DISORDER
AT THE TIME OF THE ATTEMPTED MURDER; STALLED FOR
SEVERAL MONTHS BEFORE CARRYING OUT THE ATTEMPTED
MURDER AFTER BEING RIDICULED BY FRIENDS AND LIKELY
TRANSFERRED HIS PENT-UP RAGE FROM HIS PERSONAL

---

referring.

HISTORY OF ABUSE TO THE VICTIM OF THE ATTEMPTED MURDER WHO HE THOUGHT WAS ABANDONING HER CHILDREN AS HIS PARENTS DID HIM.

Sentence appropriateness should be based on the "individualized consideration" of the particular accused "on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 10 C.M.A. 102, 27 C.M.R. 176, 180-181 (1959)). Accordingly, the punishment should fit the offender and not merely the crime. *United States v. Wright*, 20 M.J. 518 (A.C.M.R. 1985), *pet. denied*, 21 M.J. 309 (C.M.A. 1985).

In 1988, however, the Court of Appeals for the Armed Forces, in the landmark diminished mens rea case of *Ellis v. Jacob*, 26 M.J. 90 (CMA 1988) stated that such an "all or nothing" set of options "raises obvious constitutional concerns" if Rule for Courts-Martial (RCM) 916 was construed to keep the accused from attacking the mens rea element directly. *Id.* at 92. Mental status is a matter to be considered as a mitigating factor in sentencing hearings. *See United States v. Murphy*, 50 M.J. 4, 37 (1998); R.C.M. 1001(c)(1)(B). Although potentially not relevant in establishing an affirmative defense, whether an accused sincerely believes that his conduct is morally justified may be relevant as a matter in mitigation during sentencing. *United States v. Martin*, 48 M.J. 820 (Army Ct. Crim. App. 1998),

7

*remanded on other grounds*, No. 99-0232/AR, 2000 CAAF Lexis 337 (CAAF March 21, 2000)(remanded to determine whether the court-martial's finding that appellant did not prove lack of mental responsibility by clear and convincing evidence was correct both in law and in fact).

At trial, the defense presented evidence from appellant's mother and appellant in an unsworn statement that appellant had been physically and mentally abused by his stepmother from the age of 3 years old until the age of 11 years. (R. at 276-279, 293.) The defense also presented a stipulation of expected testimony from appellant's sister who was terminally ill from colon cancer at the time of trial. (D.E. F.) This stipulation detailed appellant's sister's remembrance of how their mother abandoned appellant and his sister after the parents divorced. *Id.* While living with their father and step-mother, appellant and his sister were physically and mentally abused by the step-mother with the father's acquiescence. *Id.* Appellant had bed wetting problems during the time that both he and his sister lived with their father and step-mother. *Id.* As punishment for wetting the bed, appellant's step-mother would make appellant stand naked in a corner or lie in the wet sheets every night. Appellant's sister was forced to sneak to change the sheets without the stepmother knowing. *Id.* This abuse did not stop until appellant moved in with his mother. *Id.*

8

As a result of this abuse, appellant testified that he developed an unexpressed hatred for his father that was suppressed and unrecognized until after the attempted murder. (R. at 292.) Lieutenant Commander (LCDR) Keith Caruso, a forensic psychologist, testified that appellant had a maladaptive personality disorder that stemmed from this childhood history of abandonment and abuse. (R. at 325-28.) LCDR Caruso diagnosed appellant with a narcissistic personality disorder with borderline features. (R. at 325.)

As a manifestation of this disorder, appellant does not develop a strong degree of trust in other people and has sensitivity to abandonment. (R. at 325-26.) Appellant also had severe self-esteem problems that caused him to be very susceptible to others' opinions and to support himself by looking to others for approval more so than the average person. (R. at 327-29.) LCDR Caruso believed that appellant unconsciously compared PFC Bell's struggle as a single mother to gain custody of her children with his mother's struggle to gain custody of him. (R. at 330-31.) As a result, appellant saw the murder of PFC Bell's "in-laws" as a way to make things right. *Id.*

When appellant learned PFC Bell was releasing custody of her children because she couldn't afford to physically care for them, his unrecognized rage at his mother surfaced. (R. at 331-

9

32.) When appellant realized that he would not get the opportunity to "make things right," he felt betrayed and began to see PFC Bell as a bad person, displacing his pent-up rage at his mother on PFC Bell. (R. at 333.) During his unsworn statement, appellant was able to admit that he became angry with PFC Bell when she sent her two children back to the United States because he felt she was abandoning them. (R. at 309.) Appellant compared the situation PFC Bell's children were undergoing to his own abandonment as a child. *Id.*

This dangerous emotional situation surrounding appellant's relation to PFC Bell was agitated by other stressors in appellant's life including the rape of his girlfriend. (R. at 266; D.E. A.) None of the factors referenced *supra* negate appellant's responsibility for committing the offenses but the factors are substantial mitigation.

The appellant urges the court to compare his sentence to the sentences of other individuals convicted of similar crimes within the military justice system. *See generally, United States v. Olinger*, 12 M.J. 458, 460 (C.M.A. 1982). This Court may examine disparate sentences when: (1) there is a direct correlation between each of the accused and their respective offenses; (2) the sentences are highly disparate; and (3) there are no good and cogent reasons for the differences in punishment. *United States v. Thorn*, 36 M.J. 955, 960 (A.F.C.M.R.

10

1993), *pet. denied* 38 M.J. 226 (CMA 1993)(citing *United States v. Kent*, 9 M.J. 836, 838-839 (A.F.C.M.R. 1980)).

Specifically in appellant's case, the primary co-actors received significantly less punishment. Appellant was one of six charged co-conspirators in the attempted premeditated murder of PFC Bell.[3] (*See* Prosecution Exhibit 1, attachment 1; R. at 157, 160.) PVT Roeseler, the primary conspirator, was convicted of two specifications of conspiracy to commit murder and one specification of attempted premeditated murder. It was PVT Roeseler who introduced appellant to PFC Bell and instigated the original plot to murder PFC Bell's alleged in-laws that eventually transmuted into a plot to kill PFC Bell. (R. at 161-63, 232-34) However, Private David Roeseler only received a twenty-five year adjudged sentence that was reduced to fifteen years pursuant to a pre-trial agreement. *See United States v. Roeseler*, Army 9900760 (V Corps, July 28, 1999). The second primary conspirator was PVT Lund, who actively participated in the months of planning and reviewing alternate methods of killing of PFC Bell prior to the attempted murder (R. at 148) but only received an adjudged sentence of twenty-five years of which fourteen were approved pursuant to a pretrial agreement. *See United States v. Lund*, Army No. 9900116 (V Corps, January

---

[3] The court-martial promulgating orders from each of the other five co-conspirators involved in appellant's case are attached at Appendix B.

11

14, 1999). Privates Roeseler and Lund were convicted of the same conspiracy to commit premeditated murder and attempt to commit premeditated murder of PFC Bell as was appellant. (See Charge Sheet; Appendix B) Private Roeseler was also convicted of an additional attempt to conspire to commit premeditated murder. (Appendix B.)[4]

These sentences are highly disparate, with the appellant receiving more than twice the approved sentence to confinement of either of these two co-conspirators whose core criminal conduct was absolutely identical to appellant's. Appellant's additional charges of violation of a regulation and marijuana use are minor offenses in the context of the attempted premeditated murder and do not account for the twenty-one year difference in sentences. In fact, the maximum punishment allowable for these two minor offenses amounts to no more than four years. It is inherently unjust to approve appellant's sentence when the sentences of his co-accuseds are so substantially lower. Serious disparities may be considered by this Court where there are no good and cogent reason for the

---

[4] The third conspirator was Private Roy Tarbox, the maker of the firearm used, who received only two years for his involvement. See *United States v. Tarbox*, Army No. 9900180 (V Corps, January 29, 1999). The fourth conspirator was PVT Oie, appellant's girlfriend and an instigator in conspiracy and attempted murder. (D.E. A) Private Oie was sentenced to ten years by a military judge. See *United States v. Oie*, Army 9900436 (Army Ct. Crim. App. filed 28 June 2000). The final conspirator was PVT Gibson who participated in the planning (R. at

12

substantial difference in punishment. *See United States v. Lomax*, 12 M.J. 1001, 1005, *pet. denied* 13 M.J. 467 (CMA 1982)(citing *United States v. Kent*, 9 M.J. 836 (A.F.C.M.R. 1980)) It is clear that there are no good and cogent reasons for this disparity in appellant's case. Appellant should receive no greater a sentence than the highest sentence of his principal co-conspirators, Privates Roeseler and Lund.

WHEREFORE, the appellant requests this Court to set aside and reassess his sentence, approving no more than 15 years confinement.

---

156) and received only a five-year sentence in a contested case. *See United States v. Gibson*, Army No. 9900573 (V Corps, June 3, 1999).

13

Conclusion

WHEREFORE, appellant requests that his Honorable Court take the above requested action.

JIMMONIQUE R. SIMPSON
Captain, JA
Defense Appellate Division

KIRSTEN V.C. BRUNSON
Major, JA
Defense Appellate Division

DAVID A. MAYFIELD
LTC, JA
Deputy, Defense Appellate Division

ADELE H. ODEGARD
Colonel, JA
Chief, Defense Appellate Division

US ARMY JUDICIARY

2000 JUL 19 A 8:20

FILED
CLERK OF COURT

2000 JUL 19 P 1:53

RECEIVED
GOVERNMENT APPELLATE DIVISION