# Exhibit K

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE ARMED FORCES

| | | |
|---|---|---|
| U N I T E D    S T A T E S, | ) | SUPPLEMENT TO PETITION FOR |
| Appellee | ) | GRANT OF REVIEW |
| v. | ) | |
| | ) | |
| | ) | Crim. App. Dkt. No. 9900316 |
| | ) | |
| Private E1 | ) | USCA Dkt. No. 01-0749/AR |
| **KURTIS E. ARMANN,** | ) | |
| 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, | ) | |
| United States Army, | ) | |
| Appellant | ) | |
| | ) | |

DAVID M. ABDALLA
Captain, JA
Appellate Defense Counsel
U.S. Army Legal Services Agency
901 N. Stuart Street
Arlington, Virginia  22203
(703) 588-6047


MARY M. McCORD
Major, JA
Appellate Defense Counsel


E. ALLEN CHANDLER, JR.
Lieutenant Colonel, JA
Deputy Chief, Defense Appellate
  Division


ADELE H. ODEGARD
Colonel, JA
Chief, Defense Appellate
  Division

RC+A

# INDEX OF BRIEF

                                                                    Page

Statement of the Case . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . 2

Issues and Argument . . . . . . . . . . . . . . . . . . . . . 2

### I

THE FINDINGS OF GUILTY AGAINST APPELLANT
FOR VIOLATION OF A LAWFUL GENERAL REGULATION
(THE SPECIFICATION OF CHARGE III) MUST BE
SET ASIDE AS THE EXISTENCE OF THE TWO
REGULATIONS UNDERLYING THE ARTICLE 92, UCMJ
CHARGE WERE NEVER JUDICIALLY NOTICED OR
OTHERWISE ACCEPTED AS EVIDENCE IN THE RECORD
DURING THE COURT-MARTIAL PROCEEDINGS.

Issues and Argument . . . . . . . . . . . . . . . . . . . . . 3

### II

THE TRIAL JUDGE IMPROPERLY ATTACHED A SEVEN-
PAGE EXHIBIT AS APPELLATE EXHIBIT XVI AFTER
TERMINATION OF THE COURT-MARTIAL PROCEEDINGS
WHERE THE SEVEN-PAGE DOCUMENT WAS NOT
ACCEPTED AS AN APPELLATE EXHIBIT DURING THE
COURT-MARTIAL AND A SEPARATE DOCUMENT HAD
PREVIOUSLY BEEN IDENTIFIED AND ATTACHED TO
THE RECORD AS APPELLATE EXHIBIT XVI.

Issues and Argument . . . . . . . . . . . . . . . . . . . . . 7

### III

APPELLANT'S APPROVED SENTENCE TO 35 YEARS
CONFINEMENT IS SUBSTANTIALLY
DISPROPORTIONATE UNDER THE CIRCUMSTANCES

WHEN EVIDENCE WAS PRESENTED TO THE MILITARY
JUDGE THAT APPELLANT UNDERWENT A PERSONAL
HISTORY RIDDLED WITH SUBSTANTIAL MENTAL AND
PHYSICAL ABUSE; MANIFESTED A MALADAPTIVE
PERSONALITY DISORDER AT THE TIME OF THE
ATTEMPTED MURDER; STALLED FOR MURDER AFTER
BEING RIDICULED BY FRIENDS AND LIKELY
TRANSFERRED HIS PENT-UP RAGE FROM HIS
PERSONAL HISTORY OF ABUSE TO THE VICTIM OF
THE ATTEMPTED MURDER WHO HE THOUGHT WAS
ABANDONING HER CHILDREN AS HIS PARENTS DID
HIM.

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . 14

**Case Law**

United States Court Appeals for the Armed Forces

*Ellis v Jacob*, 26 M.J. 90
(C.M.A. 1988) . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Care*, 18 U.S.C.M.A. 535,
40 C.M.R. 247 (1969). . . . . . . . . . . . . . . . . . 4

*United States v. Grostefon*, 12 M.J. 431
(C.M.A. 1982) . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Lomax*, 12 M.J. 1001, *pet. denied*
13 M.J. 467 (C.M.A. 1982) . . . . . . . . . . . . . . .13

*United States v. Mamaluy*, 10 C.M.A. 102,
27 C.M.R. 176 (1959). . . . . . . . . . . . . . . . . . 7

*United States v. Murphy*, 50 M.J. 4
(1998). . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Olinger*, 12 M.J. 458
(C.M.A. 1982) . . . . . . . . . . . . . . . . . . . . .11

*United States v. Snelling*, 14 M.J. 267
(C.M.A. 1982) . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Williams*, 3 M.J. 155
(C.M.A. 1977) . . . . . . . . . . . . . . . . . . . . . . . 3


## Courts of Criminal Appeals

*United States v. Goins*, 2 M.J. 458
(A.C.M.R. 1975) . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Kent*, 9 M.J. 836
(A.F.C.M.R. 1980) . . . . . . . . . . . . . . . . . . 11,13

*United States v. Lund*, Army No. 9900116
(V Corps, January 14, 1999) . . . . . . . . . . . . . . .12

*United States v. Martin*, 48 M.J. 820
(Army Ct. Crim App. 1998), *remanded on other grounds,*
No 99-0232/AR, 2000 CAAF Lexis 337
(CAAF March 21, 2000) . . . . . . . . . . . . . . . . . . 8

*United States v. Rios*, 32 M.J. 501
(A.C.M.R. 1990), *pet denied*, 37 M.J. 17
(C.M.A. 1992) . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Roeseler*, Army 9900760
(V Corps, July 28, 1999). . . . . . . . . . . . . . . . .12

*United States v. Thorn*, 36 M.J. 955
(A.F.C.M.R. 1993)*, pet denied* 38 M.J. 226
(C.M.A. 1993) . . . . . . . . . . . . . . . . . . . . . .11

*United States v. Wright*, 20 M.J. 518
(A.C.M.R. 1985),*pet. denied*, 21 M.J. 309
(C.M.A. 1985) . . . . . . . . . . . . . . . . . . . . . . 7


## Statutes and Other Authorities

## Manual for Courts-Martial, United States, 1998

R.C.M. 910(e) . . . . . . . . . . . . . . . . . . . . . . 6

R.C.M. 916. . . . . . . . . . . . . . . . . . . . . . . . 8

R.C.M. 918(c) . . . . . . . . . . . . . . . . . . . 6

R.C.M. 1001(c)(1)(B) . . . . . . . . . . . . . . . . 8

## Uniform Code of Military Justice

Art. 39(a), 10 U.S.C. § 839(a) (1996) . . . . . . . . 6

Art. 80, 10 U.S.C. § 880 (1996) . . . . . . . . . . . 5

Art. 81, 10 U.S.C. § 881 (1996) . . . . . . . . . . . 2

Art. 92, 10 U.S.C. § 892 (1996) . . . . . . . . . 2,3,4

Art. 112a, 10 U.S.C. § 912a (1996) . . . . . . . . . 2

## Publications

UNITED STATES ARMY EUROPE (USAREUR) REG. 600-1,
PERSONNEL GENERAL REGULATED ACTIVITIES OF MEMBERS OF
THE U.S. FORCES, CIVILIAN COMPONENT, AND FAMILY
MEMBERS, para. 13 (30 August 1990) . . . . . . . . . 4,5


UNITED STATES ARMY EUROPE (USAREUR) REG. 190-6,
MILITARY POLICE, REGISTRATIN AND CONTROL OF PRIVATELY
OWNED FIREARMS AND OTHER WEAPONS IN GERMANY
(June 29, 1993) . . . . . . . . . . . . . . . . . . 4,5

## IN THE UNITED STATES COURT OF APPEALS
### FOR THE ARMED FORCES

| | | |
|---|---|---|
| U N I T E D   S T A T E S | ) | SUPPLEMENT TO PETITION FOR |
| Appellee | ) | GRANT OF REVIEW |
| | ) | |
| v. | ) | Crim. App. Dkt. No. ARMY 9900316 |
| | ) | |
| Private E1 | ) | USA Dkt. No. 01-0749/AR |
| KURTIS E. ARMANN, | ) | |
| 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, | ) | |
| United States Army, | ) | |
| Appellant | ) | |

### TO THE JUDGES OF THE UNITED STATES COURT OF APPEALS
### FOR THE ARMED FORCES:

#### Statement of the Case

On January 14, 25 and March 19, 1999, Private E1 (PVT)
Kurtis E. Armann [hereinafter appellant], was tried at Hanau and
Mannheim, Germany, before a military judge sitting as a general
court-martial.  Pursuant to his plea, appellant was found guilty
of attempted premeditated murder, conspiracy to commit
premeditated murder, violation of a general regulation and
wrongful use of marijuana in violation of articles 80, 81, 92
and 112a of the Uniform Code of Military Justice, 10 U.S.C. §
880, 881, 892 and 912a (1996)[hereinafter U.C.M.J.].  Appellant
was sentenced to total forfeitures of all pay and allowances,
confinement for thirty-eight years and a dishonorable discharge.
Pursuant to a plea agreement, the convening authority approved
35 years confinement and the remainder of the sentence as
adjudged.

On April 24, 2001, the U.S. Army Court of Criminal Appeals affirmed the findings and the sentence. (Appendix A).

The undersigned military counsel have been designated by The Judge Advocate General of the Army to represent PVT Kurtis E. Armann and hereby enter their appearance. Pursuant to the Order of this Court, dated September 26, 2001, the undersigned military counsel hereby file a Supplement to the Petition for Grant of Review under Rule 21.

## Statement of Facts

Appellant's convictions arose from the planning and attempted execution of the murder of another soldier, Private First Class (PFC) Bell. *See* Charge Sheet. Appellant was charged with and pled guilty to attempted premeditated murder, conspiracy to commit premeditated murder, violation of a general regulation by possessing an unregistered firearm on post and marijuana use. *Id.* All other facts necessary to resolution of the raised assignments of error are contained herein.

## Issues and Argument[1]

### I

THE FINDINGS OF GUILTY AGAINST APPELLANT FOR VIOLATION OF A LAWFUL GENERAL REGULATION (THE SPECIFICACTION OF

---

[1] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant, through communications with counsel, personally asserts the matters set forth in Appendix B. Further, appellant hereby informs the Court of his desire to submit additional matters which will be forwarded to the Court by counsel upon receipt from appellant.

CHARGE III) MUST BE SET ASIDE AS THE EXISTENCE OF THE
TWO REGULATIONS UNDERLYING THE ARTICLE 92, UCMJ CHARGE
WERE NEVER JUDICIALLY NOTICED OR OTHERWISE ACCEPTED AS
EVIDENCE IN THE RECORD DURING THE COURT-MARTIAL
PROCEEDINGS.

II

THE TRIAL JUDGE IMPROPERLY ATTACHED A SEVEN-PAGE
EXHIBIT AS APPELLATE EXHIBIT XVI AFTER TERMINATION OF
THE COURT-MARTIAL PROCEEDINGS WHERE THE SEVEN-PAGE
DOCUMENT WAS NOT ACCEPTED AS AN APPELLATE EXHIBIT
DURING THE COURT-MARTIAL AND A SEPARATE DOCUMENT HAD
PREVIOUSLY BEEN IDENTIFIED AND ATTACHED TO THE RECORD
AS APPELLATE EXHIBIT XVI.

The elements of the offense of violation of a lawful

regulation pursuant to article 92, UCMJ, are:

    (a)   that there was in effect a certain lawful general
           regulation;
    (b)   that the accused had a duty to obey it; and
    (c)   that the accused violated or failed to obey the
           regulation.

The government must prove that the regulation in question

existed at the date and time of the alleged violation and that

both the accused and his acts were within the proscription of

this regulation.  *See United States v. Williams*, 3 M.J. 155 (CMA

1977).  The government cannot meet this burden by simply

identifying the regulation on the charge sheet, but must either

introduce the regulation into evidence or request the trial

judge to take judicial notice.  *Williams*, 3 M.J. at 156.

Where an accused pleads guilty, the trial judge must

conduct an appropriate interview of an accused to establish a

clear and sufficient basis for determining that the acts of the

3

accused constitute the offense to which he pleads guilty. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).  The military judge must ask questions that elicit facts from which he or she can conclude that the legal standard has been met.  It is not sufficient simply to secure an accused's acknowledgment of guilt in terms of legal conclusions.  *United States v. Rios*, 32 M.J. 501, 504 (A.C.M.R. 1990), *pet. denied*, 37 M.J. 17 (C.M.A. 1992); *United States v. Goins*, 2 M.J. 458 (A.C.M.R. 1975).

Appellant was charged with violating UNITED STATES ARMY EUROPE (USAREUR) REG. 600-1, PERSONNEL GENERAL REGULATED ACTIVITIES OF MEMBERS OF THE U.S. FORCES, CIVILIAN COMPONENT, AND FAMILY MEMBERS, para. 13 (30 August 1990) and Change 3 to that regulation dated 21 October 1993. [hereinafter USAREUR Reg. 600-1].  *See* Charge Sheet.  The basis for violation of this regulation was appellant's possession of a silencer and a firearm not registered in accordance with UNITED STATES ARMY EUROPE (USAREUR) REG. 190-6, MILITARY POLICE, REGISTRATION AND CONTROL OF PRIVATELY OWNED Firearms AND OTHER WEAPONS IN GERMANY (June 29, 1993)[hereinafter USAREUR Reg. 190-6].  *Id.*

During the providence inquiry, the trial judge reviewed the elements of the charged Article 92, UCMJ offense with appellant. (R. at 89.)  During this discussion, the trial judge verbally identified the two regulations cited in the Specification of

Charge III, but was never requested to or *sua sponte* took

judicial notice of the regulations.  (R. at 89-90, 113-16.)  The

trial judge did not read the applicable provisions of either

USAREUR Reg. 600-1 or USAREUR Reg. 190-6 to appellant during

this discussion.  Without any indication in the record that

appellant understood the prohibitions of the regulations,

appellant agreed that the silencer and firearm he possessed was

a weapon as described in USAREUR Reg. 600-1 (R. at 113) and that

he did not register those items in accordance with "USAREUR

regulations.[2]"  (R. at 114.)

The unsigned stipulation of fact in appellant's case

references the relevant regulations but does not include any

passages from the regulations.  (*See* Prosecution Exhibit 1,

attachment 1.)  Prosecution exhibit 1 consists of 18

attachments, none of which are the charged regulations.

Defense counsel did not lodge any objection to this cursory

inquiry or the trial judge's failure to receive the regulations

into evidence.  However, the trial judge's failure to adequately

advise appellant of the elements of the charged regulations or

judicially notice the regulations constitutes error.  It is the

responsibility of the trial judge to ensure the appellant's

pleas of guilty are sufficient based on matters properly before

---

[2] The trial judge did not identify to which USAREUR regulations he was
referring.

the court-martial before making findings.  *See* Rules for Courts-Martial 910(e) and 918(c).

After the court-martial terminated, the trial judge, Lieutenant Colonel Barto, authenticated the record of trial on June 4, 1999.  (R. at 386 - Authentication of Record).  During his authentication of the record, the trial judge apparently recognized this problem and attempted to append excerpts of the regulations to the record as appellate exhibits.  *Id.*  On the authentication sheet, the trial judge indicated that he "attached AE XVI, a seven-page extract of USAREUR regulations used by the MJ in conducting the plea inquiry."  *Id.*  This discrepancy is not mentioned in the post-trial matters submitted by the trial defense counsel or the staff judge advocate.  This act by the trial judge after the court-martial closed could not and did not remedy the legal insufficiency of the pleas.  The attempt to attach this evidence post-trial was improper.

Moreover, the manipulation of the appellate exhibits by the trial judge improperly inserts a second AE XVI into the record. Appellate exhibit XVI identified at trial is the initial defense proposed stipulation of expected testimony reflecting comments of both parties arising during a mid-trial article 39(a), UCMJ, session.  (R. at 170.)

6

WHEREFORE, appellant respectfully requests that this
Honorable Court set aside and dismiss the finding of guilty to
the Specification of Charge III and Charge III.

### III

APPELLANT'S APPROVED SENTENCE TO 35 YEARS
CONFINEMENT IS SUBSTANTIALLY DISPROPORTIONATE UNDER
THE CIRCUMSTANCES WHEN EVIDENCE WAS PRESENTED TO THE
MILITARY JUDGE THAT APPELLANT UNDERWENT A PERSONAL
HISTORY RIDDLED WITH SUBSTANTIAL MENTAL AND PHYSICAL
ABUSE; MANIFESTED A MALADAPTIVE PERSONALITY DISORDER
AT THE TIME OF THE ATTEMPTED MURDER; STALLED FOR
SEVERAL MONTHS BEFORE CARRYING OUT THE ATTEMPTED
MURDER AFTER BEING RIDICULED BY FRIENDS AND LIKELY
TRANSFERRED HIS PENT-UP RAGE FROM HIS PERSONAL
HISTORY OF ABUSE TO THE VICTIM OF THE ATTEMPTED
MURDER WHO HE THOUGHT WAS ABANDONING HER CHILDREN AS
HIS PARENTS DID HIM.

Sentence appropriateness should be based on the
"individualized consideration" of the particular accused "on the
basis of the nature and seriousness of the offense and the
character of the offender." *United States v. Snelling*, 14 M.J.
267, 268 (C.M.A. 1982)  (quoting *United States v. Mamaluy*, 10
C.M.A. 102, 27 C.M.R. 176, 180-181 (1959)).  Accordingly, the
punishment should fit the offender and not merely the crime.
*United States v. Wright*, 20 M.J. 518 (A.C.M.R. 1985), *pet.*
*denied*, 21 M.J. 309 (C.M.A. 1985).

In 1988 the then Court of Military Appeals, in the landmark
diminished mens rea case of *Ellis v. Jacob*, 26 M.J. 90 (CMA
1988) stated that an "all or nothing" set of options "raises
obvious constitutional concerns" if Rule for Courts-Martial

7

(RCM) 916 was construed to keep the accused from attacking the mens rea element directly. *Id.* at 92. Further, mental status is a matter to be considered as a mitigating factor in sentencing hearings. *See United States v. Murphy*, 50 M.J. 4, 37 (1998); R.C.M. 1001(c)(1)(B). Although potentially not relevant in establishing an affirmative defense, whether an accused sincerely believes that his conduct is morally justified may be relevant as a matter in mitigation during sentencing. *United States v. Martin*, 48 M.J. 820 (Army Ct. Crim. App. 1998), *remanded on other grounds*, No. 99-0232/AR, 2000 CAAF Lexis 337 (CAAF March 21, 2000)(remanded to determine whether the court-martial's finding that appellant did not prove lack of mental responsibility by clear and convincing evidence was correct both in law and in fact).

At trial, the defense presented evidence from appellant's mother and appellant in an unsworn statement that appellant had been physically and mentally abused by his step-mother from the age of 3 years old until the age of 11 years. (R. at 276-279, 293.) The defense also presented a stipulation of expected testimony from appellant's sister who was terminally ill from colon cancer at the time of trial. (D.E. F.) This stipulation detailed appellant's sister's remembrance of how their mother abandoned appellant and his sister after the parents divorced. *Id.* While living with their father and step-mother, appellant

8

and his sister were physically and mentally abused by the step-mother with the father's acquiescence. *Id.* Appellant had bed wetting problems during the time that both he and his sister lived with their father and step-mother. *Id.* As punishment for wetting the bed, appellant's step-mother would make appellant stand naked in a corner or lie in the wet sheets every night. Appellant's sister was forced to sneak to change the sheets without the step-mother knowing. *Id.* This abuse did not stop until appellant moved in with his mother. *Id.*

As a result of this abuse, appellant testified that he developed an unexpressed hatred for his father that was suppressed and unrecognized until after the attempted murder. (R. at 292.) Lieutenant Commander Keith Caruso, a forensic psychologist, testified that appellant had a maladaptive personality disorder that stemmed from this childhood history of abandonment and abuse. (R. at 325-28.) Lieutenant Commander Caruso diagnosed appellant with a narcissistic personality disorder with borderline features. (R. at 325.)

As a manifestation of this disorder, appellant does not develop a strong degree of trust in other people and has sensitivity to abandonment. (R. at 325-26.) Appellant also had severe self-esteem problems that caused him to be very susceptible to others' opinions and to support himself by looking to others for approval more so than the average person.

(R. at 327-29.)   Lieutenant Commander Caruso believed that
appellant unconsciously compared PFC Bell's struggle as a single
mother to gain custody of her children with his mother's
struggle to gain custody of him. (R. at 330-31.) As a result,
appellant saw the murder of PFC Bell's "in-laws" as a way to
make things right. *Id.*

When appellant learned PFC Bell was releasing custody of
her children because she could not afford to care for them, his
unrecognized rage at his mother surfaced.   (R. at 331-32.)
When appellant realized that he would not get the opportunity to
"make things right," he felt betrayed and began to see PFC Bell
as a bad person, displacing his pent-up rage at his mother on
PFC Bell.   (R. at 333.) During his unsworn statement, appellant
was able to admit that he became angry with PFC Bell when she
sent her two children back to the United States because he felt
she was abandoning them.   (R. at 309.)   Appellant compared the
situation PFC Bell's children were undergoing to his own
abandonment as a child.   *Id.*

This dangerous emotional situation surrounding appellant's
relation to PFC Bell was agitated by other stressors in
appellant's life including the rape of his girlfriend.   (R. at
266; D.E. A.)   None of the factors referenced *supra* negate
appellant's responsibility for committing the offenses, but the
factors are substantial factors in mitigation.

The appellant urges the court to compare his sentence to the sentences of other individuals convicted of similar crimes within the military justice system and in particular to the sentences of his co-actors. *See generally, United States v. Olinger*, 12 M.J. 458, 460 (C.M.A. 1982). This Court may examine disparate sentences when: (1) there is a direct correlation between each of the accused and their respective offenses; (2) the sentences are highly disparate; and (3) there are no good and cogent reasons for the differences in punishment. *United States v. Thorn*, 36 M.J. 955, 960 (A.F.C.M.R. 1993), *pet. denied* 38 M.J. 226 (CMA 1993)(citing *United States v. Kent*, 9 M.J. 836, 838-839 (A.F.C.M.R. 1980)).

Specifically in appellant's case, the primary co-actors received significantly less punishment. Appellant was one of six charged co-conspirators in the attempted premeditated murder of PFC Bell.[3] (*See* Prosecution Exhibit 1, attachment 1; R. at 157, 160.) Private Roeseler, the primary conspirator, was convicted of two specifications of conspiracy to commit murder and one specification of attempted premeditated murder. It was PVT Roeseler who introduced appellant to PFC Bell and instigated the original plot to murder PFC Bell's alleged in-laws that eventually transmuted into a plot to kill PFC Bell. (R. at 161-

---

[3] The court-martial promulgating orders from each of the other five co-conspirators involved in appellant's case are attached at Appendix C.

11

63, 232-34) However, Private David Roeseler only received a twenty-five year adjudged sentence that was reduced to fifteen years pursuant to a pre-trial agreement. *See United States v. Roeseler*, Army 9900760 (V Corps, July 28, 1999). The second primary conspirator was PVT Lund, who actively participated in the months of planning and reviewing alternate methods of killing of PFC Bell prior to the attempted murder (R. at 148), but only received an adjudged sentence of twenty-five years of which fourteen were approved pursuant to a pretrial agreement. *See United States v. Lund,* Army No. 9900116 (V Corps, January 14, 1999). Privates Roeseler and Lund were convicted of the same conspiracy to commit premeditated murder and attempt to commit premeditated murder of PFC Bell as was appellant. (*See* Charge Sheet; Appendix B)    Private Roeseler was also convicted of an additional attempt to conspire to commit premeditated murder. (Appendix B.) [4]

These sentences are highly disparate, with the appellant receiving more than twice the approved sentence to confinement of either of these two co-conspirators whose core criminal

---

[4] The third conspirator was Private Roy Tarbox, the maker of the firearm used, who received only two years for his involvement. *See United States v. Tarbox*, Army No. 9900180 (V Corps, January 29, 1999). The fourth conspirator was PVT Oie, appellant's girlfriend and an instigator in conspiracy and attempted murder. (D.E. A)  Private Oie was sentenced to ten years by a military judge. *See United States v. Oie*, Army 9900436 (Army Ct. Crim. App. filed 28 June 2000). The final conspirator was PVT Gibson who participated in the planning (R. at

conduct was absolutely identical to appellant's. Appellant's additional charges of violation of a regulation and marijuana use are minor offenses in the context of the attempted premeditated murder and do not account for the twenty-one year difference in sentences. In fact, the maximum punishment allowable for these two minor offenses amounts to no more than four years. It is inherently unjust to approve appellant's sentence when the sentences of his co-accuseds are substantially lower. Serious disparities may be considered by this Court where there are no good and cogent reason for the substantial difference in punishment. *See United States v. Lomax*, 12 M.J. 1001, 1005, *pet. denied* 13 M.J. 467 (CMA 1982)(citing *United States v. Kent*, 9 M.J. 836 (A.F.C.M.R. 1980)) It is clear that there are no good and cogent reasons for this disparity in appellant's case. Appellant should receive no greater a sentence than the highest sentence of his principal co-conspirators, Privates Roeseler and Lund.

WHEREFORE, the appellant requests this Court to set aside appellant's sentence and order a sentence rehearing.

---

156) and received only a five-year sentence in a contested case. *See United States v. Gibson*, Army No. 9900573 (V Corps, June 3, 1999).

Conclusion

WHEREFORE, appellant requests that this Honorable Court take the above requested action.

DAVID M. ABDALLA
Captain, JA
U.S. Army Legal Services Agency
Defense Appellate Division
901 N. Stuart Street
Arlington, Virginia  22203
(703) 588-6047

MARY M. McCORD
Major, JA
Defense Appellate Division

E. ALLEN CHANDLER, JR.
Lieutenant Colonel, JA
Deputy Chief, Defense Appellate
   Division

ADELE H. ODEGARD
Colonel, JA
Chief, Defense Appellate
   Division

14

## CERTIFICATE OF FILING AND SERVICE

I certify that a copy of the foregoing in the case of
<u>United States v. Armann</u>, ARMY Dkt. No. 9900316, USCA Dkt.
No. 01-0749/AR, was [delivered] [mailed] to the Court and
was delivered to the Government Appellate Division on

_____.

ERNIE J. JERNIGAN
Division Support Specialist
Defense Appellate Division
(703) 588-6071

RECEIVED
GOVERNMENT APPELLATE
DIVISION
2001 OCT 11 A II: 02

US ARMY JUDICIARY

RECEIVED
CLERK OF COURT
2001 OCT 11 A II: 03

# APPENDIX A

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOOMEY, CARTER, and HARVEY
Appellate Military Judges

**UNITED STATES, Appellee**

v.

**Private E1 KURTIS E. ARMANN**
**United States Army, Appellant**

ARMY 9900316

V Corps
D. M. Wright (arraignment) and W. T. Barto, Military Judges

For Appellant: Colonel Adele H. Odegard, JA; Lieutenant Colonel David A. Mayfield, JA; Major Kirsten V.C. Brunson, JA; Captain Jimmonique R. Simpson, JA (on brief).

For Appellee: Colonel David L. Hayden, JA; Lieutenant Colonel Edith M. Rob, JA; Captain Daniel G. Brookhart, JA; Captain Susana E. Watkins, JA (on brief).

24 April 2001

---------------
DECISION
---------------

Per Curiam:

On consideration of the entire record, including consideration of the issues personally specified by the appellant, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, those findings of guilty and the sentence are AFFIRMED.[*]

FOR THE COURT:

*Mary B. Dennis*
MARY B. DENNIS
Deputy Clerk of Court

-------------------------

[*] Appellant will be credited with 158 days of pretrial confinement against the sentence to confinement as ordered by the military judge.

MCXN-PHAR

MEMORANDUM THROUGH LTC SONJA THOMPSON, ACTING DCCS

FOR CPT ANDREW LANDERS AND CPT NEIL HEDDEN

SUBJECT: ARMANN, KURTIS (20/8350)

1. I have been requested by CPT Hedden and SSG Geisler to evaluate the following medications taken by Mr. Armann for   potential drug interactions and effects on the CNS:

> Paroxitine (Paxil®)
> Proclorperazine (Compazine®)
> Promethazine (Phenergan®)
> Gabapentin (Neurontin®)
> Isometheptene/dichloralphenazone/acetaminophen (Midrin®)
> Secobarbital (Seconal®)
> Hydroxyzine (Atarax®/Vistaril®)
> Meperadine (Demerol®)
> Butalbital/caffine/acetaminophen (Firocet®)
> Butalbital/caffine/aspirin (Fironal®)
> Sumatriptan (Immetrex®)
> Amitriptyline (Elavil®)

The patient's diagnosis of record is: Migraine Headaches

2. The following are potential drug interactions:

   a) Barbiturates (seconal and butalbital) may stimulate the metabolism and decrease serum concentration of amitriptyline. Central and respiratory depression may be an additive.
   b) Anticholinergic effects of amitriptyline, hydroyzine, prochlorperazine, and promethazine may be an additive.
   c) Paroxitine may increase the serum levels and pharmacologic (or toxic) effects of amitriptyline via inhibition of CYP2D6. Seratonin syndrome may develop with one or more agents that increase synaptic seratonin levels (e.g. tremor, agitation, delirium, rigidity, myoclonus, hyperthermia, and obtundation).
   d) Isometheptene (a sympathomimetic agent), in combination with amytriptyline, may potentially cause increased sympathetic activity.
   e) There have been reports of weakness, hyperreflexia, and incoordination in patients receiving sumatriptan and SSRI's (paroxitine).

3. Each of the agents listed above ( or a component of the combination agents) may cause CNS depression. These agents may be additive with or may potentiate the action of other CNS depressants. Although not considered a sedating medication, paroxitine may potentiate the actions of CNS depressants given concomitantly. Although sumatriptan penetrates the blood brain barrier poorly, it has been associated with drowsiness, sedation, fatigue, diziness, and vertigo.

> Judy Brown, Pham. D.
> Clinical Pharmacist
> DAC, GS-11