**IN THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS**

U N I T E D   S T A T E S      BRIEF ON BEHALF OF APPELLEE
            Appellee

                     DOCKET No. ARMY 9900316

       v.

Private $E$ |               Tried at Hanau and Mannheim,
**KURTIS E. ARMANN,**      Germany on 14 and 25 January
United States Army,        and 19 March 1999 before a
          Appellant general court-martial
                     appointed by Commander,
                     Headquarters, V Corps, D. M.
                     Wright and W. T. Barto,
                     military judges presiding

TO THE HONORABLE, THE JUDGES OF THE
UNITED STATES ARMY COURT OF CRIMINAL APPEALS:

### STATEMENT OF THE CASE

Pursuant to his pleas (R. 76), appellant was convicted of
four offenses: attempted premeditated murder, conspiracy to
commit premeditated murder, wrongful possession of a silencer
and firearm in violation of USAREUR Regulation 600-1, and
wrongful use of marijuana, (R. 131, Charge Sheet), in violation
of Articles 80, 81, 92, and 112a, Uniform Code of Military
Justice, 10 U.S.C. sections 880, 881, 892, and 912a (1988)
[hereinafter "UCMJ"]. Appellant was sentenced to a dishonorable
discharge, thirty-eight years confinement, and forfeiture of all
pay and allowances (R. 382). The convening authority approved
the adjudged sentence, except limited confinement to thirty-five
years, consistent with appellant's pretrial agreement (Action
and Appellate Exhibit [hereinafter AE] X).

**DEFENDANT'S
EXHIBIT**
_A_

### Statement of Facts

Appellant entered into a "contract for murder," agreeing to kill PFC Toni Bell's in-laws because they were seeking custody of her minor son (R. 96, 231, 234-8, 249, Prosecution Exhibit [hereinafter PE] 1 at p. 2-3).[1] PFC Bell later backed out of the deal, but appellant still tried to collect on the unpaid $5,000 downpayment (R. 96, 244, 255). PFC Bell's reluctance to pay led to appellant's attempt to kill her (R. 96). Prior to his consummating act of actually shooting PVT Bell on 10 October 1998, appellant planned and prepared for various ways in which to execute PVT Bell, enlisting various levels of assistance from at least six military servicemembers and one local national (PE 1 at p. 1-6, R. 97, 100-05, 147-54, 161-2, 169).

To carry out his planned shooting appellant constructed a makeshift rifle and silencer and acquired ammunition from a local national (R. 99-102, 113-14). On the night of the shooting, appellant dressed entirely in black to avoid detection, positioned himself in direct view of the guard shack on Fliegerhorst Kaserne where PFC Bell had duty, and waited (R.

---

[1] In fact, however, PFC Bell had no in-laws, as she had never been married (R. 231). PFC Bell only claimed to have in-laws, perhaps to avoid any embarrassment associated with having a child out of wedlock (id.). It was Gregory Strait, the father of her oldest son, who actually threatened to seek custody and at whom PFC Bell directed her animosity (R. 230, 235).

106-8). When PFC Bell arrived, appellant aimed the cross-hairs of his weapon's scope directly at PFC Bell's head and squeezed the trigger (R. 108). PFC Bell screamed (R. 109), began to shake, fell to her knees and then face down on the ground, blood coming from her neck (R. 251, PE 1 at p. 6).

By pure luck, PFC Bell had pulled up the collar of her Kevlar Vest that night, which slowed the velocity of the bullet (PE 1 at p. 6). The bullet wound was 1-2 cm. wide and penetrated 3-4 cm. stopping just .5 cm. from her spine (id.). Surgery left a 2-3 inch scar on PVT Bell's neck (R. 252). Prior to the shooting, appellant pretended to be good friends with PVT Bell and her children (R. 148-9).

After the shooting, appellant escaped the scene in the pre-arranged get-away car (R. 154, PE 1 at p. 6). He disassembled his weapon and threw the parts out the vehicle, along with his black clothing (PE 1 at p. 6). After a few drinks at a club, appellant returned to the Fliergerhorst Kaserne, and upon hearing of the shooting, feigned shock (id., R. 155). However, appellant was visibly upset in front of his fellow conspirators because PFC Bell was not dead; he wanted to go back and do it over again (R. 154-5, PE 1 at p. 6). In the aftermath of the shooting and throughout the investigation, appellant expressed no remorse (R. 141, 155, PE 1 at p. 6).

Immediately after the shooting, the Kaserne went to

Threatcon D (PE 1 at p. 7). Hundreds of soldiers were rousted

from bed to provide additional security (id.). Access was

denied to the Fliegerhorst Kaserne and curtailed at other Hanau

Kasernes (id.). Five service members, in addition to

appellant, were court-martialed as a result of appellant's

"contract for murder" (appellant's Brief at p. 12).

Additional facts necessary to resolve the assigned error are

set forth in the arguments below.

## Answer to Assignment of Error[2]

I.

THE FINDINGS OF GUILTY AGAINST APPELLANT FOR
VIOLATION OF A LAWFUL GENERAL REGULATION (THE
SPECIFICATION OF CHARGE III) MUST BE SET ASIDE AS
THE EXISTENCE OF THE TWO REGULATIONS UNDERLYING
THE ARTICLE 92, UCMJ CHARGE WERE NEVER JUDICIALLY
NOTICED OR OTHERWISE ACCEPTED AS EVIDENCE IN THE
RECORD DURING THE COURT-MARTIAL PROCEEDINGS.

II.

THE TRIAL JUDGE IMPROPERLY ATTACHED A SEVEN-PAGE
EXHIBIT AS APPELLATE EXHIBIT XVI AFTER
TERMINATION OF THE COURT-MARTIAL PROCEEDINGS
WHERE THE SEVEN-PAGE DOCUMENT WAS NOT ACCEPTED AS
AN APPELLATE EXHIBIT DURING THE COURT-MARTIAL AND

---

[2] Appellate defense counsel directs this Honorable Court's
attention to those errors personally raised by appellant. The
government has reviewed these claims and submits that all lack
merit. Should this Honorable Court, however, determine that the
issues raised by appellant have possible merit, the government
requests the opportunity to submit further pleadings thereon.
United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982).

4

A SEPARATE DOCUMENT HAD PREVIOUSLY BEEN
IDENTIFIED AND ATTACHED TO THE RECORD AS
APPELLATE EXHIBIT XVI.

## Combined Argument

Appellant argues that because the military judge failed to
take judicial notice of two regulations during the trial, his
corresponding plea was legally insufficient (Brief on Behalf of
Appellant [hereinafter appellant's Brief] at p. 5-6). However,
under the circumstances, it was unnecessary for the military
judge to judicially notice the two regulations. Moreover, this
Court can take judicial notice of the regulations now or can
order a Dubay hearing to remedy any deficiency.

## Law

It is unnecessary for the military judge to judicially
notice a military regulation when the appellant has entered into
a guilty plea, "admitt[ing] that the regulation existed, that he
had a duty to obey it, that it prohibited certain conduct, and
that he violated the regulation by engaging in [the] prohibited
conduct." United States v. Tenney, 15 M.J. 779, 781 (A.C.M.R.
1983); see also United States v. Johnson, 6 M.J. 936, 938 n.5
(A.C.M.R. 1979).

## Legal Analysis

It was not necessary for the military judge to take
judicial notice of the regulations underlying the appellant's
Article 92 offense during the guilty plea trial. Tenney at 781;

see also United States v. Chairez, 17 M.J. 787, 788-9

(A.F.C.M.R. 1983) (note omitted) (in judge alone contested case,

no error where military judge did not judicially notice

regulation when all essential elements of the crime were written

into specification and the Government proved the same); United

States v. Halley, 34 M.J. 1071, 1074 (A.C.M.R. 1992) (only when

domestic law "is a fact that is of consequence to the

determination of the action," must the parties then be notified

in open court of the judicial notification (citing M.R.E.

201A)).

Appellant's reliance upon United States v. Williams, 3 M.J.

155 (C.M.A. 1977) is misplaced. Williams was a contested case,

in which appellant was charged with violating a lawful

regulation that was not entered into evidence, nor judicially

noticed. Williams at 156. In that case, the former Court of

Military Appeals held that in the absence of a clear indication

on the record that the military judge had taken judicial notice

of the regulation, there was no evidence that what appellant did

was a crime. Id. at 157.

In contrast, appellant pled guilty pursuant to a pre-trial

agreement in this case (R. 76, AE X). Prior to acceptance of

the plea, appellant admitted the existence of the two

regulations in question, that the regulations prohibited

possessing a silencer and an unregistered weapon, that he had a

6

duty to obey the regulations, and that he violated the regulations by engaging in the prohibited conduct (R. 113-5). See Tenney, 15 M.J. at 781. Appellant also admitted similar facts in a stipulation signed by all parties, which was entered into the record of trial (R. 82).[3]

As such, appellant's guilt was established by his pleas and it was unnecessary for the military judge to take judicial notice of the regulation on the record. Tenney, 15 M.J. 779, 781 (A.C.M.R. 1983); see also United States v. Johnson, 6 M.J. 936, 938 note 5 (A.C.M.R. 1979) (content of regulations need not be proven, nor judicially noted where appellant pleads guilty). Additionally, under these circumstances the military judge's post-trial attachment of the regulations was neither necessary, nor improper. As such, appellant's second assignment of error lacks merit.

However, in the event this Court finds that judicial notice is still necessary, then this Court, itself, can take judicial notice of the overlooked regulations. Mead 16 M.J. at 273; Brown, 18 M.J. at 361 (dictum); MCM, M.R.E. 201(f) ("Judicial notice may be taken at any stage of the proceeding"). This

---

[3] For reasons not apparent, both Appellate Government Counsel and Appellate Defense Counsel were provided with unsigned versions of the Stipulation of Fact. However, the original Stipulation of Fact, found in the Court's copy of the record, is signed by all parties.

Court can also order a Dubay hearing "so that a trial judge

[can] take judicial notice of relevant facts." Brown, 18 M.J.

at 361 (dictum) (citing United States v. Williams, 14 M.J. 428

(C.M.A. 1983), and 17 M.J. 207 (C.M.A. 1984)).

For all the reasons stated herein, appellant is entitled to

no relief on this assigned error.

### Answer to Assignment of Error

> APPELLANT'S APPROVED SENTENCE TO 35 YEARS
> CONFINEMENT IS SUBSTANTIALLY DISPROPORTIONATE
> UNDER THE CIRCUMSTANCES WHEN EVIDENCE WAS
> PRESENTED TO THE MILITARY JUDGE THAT APPELLANT
> UNDERWENT A PERSONAL HISTORY RIDDLED WITH
> SUBSTANTIAL MENTAL AND PHYSICAL ABUSE; MANIFESTED
> A MALADAPTIVE PERSONALITY DISORDER AT THE TIME OF
> THE ATTEMPTED MURDER; STALLED FOR SEVERAL MONTHS
> BEFORE CARRYING OUT THE ATTEMPTED MURDER AFTER
> BEING RIDICULED BY FRIENDS AND LIKELY TRANSFERRED
> HIS PENT-UP RAGE FROM HIS PERSONAL HISTORY OF
> ABUSE TO THE VICTIM OF THE ATTEMPTED MURDER WHO
> HE THOUGHT WAS ABANDONING HER CHILDREN AS HIS
> PARENTS DID HIM.

### Argument

Appellant argues that his sentence is disproportionate in

comparison to the sentences received by his co-conspirators, and

in light of his own childhood background of abuse and

abandonment (appellant's Brief at pp. 6-7). However, appellant

has failed to meet his burden of proof.

### Law

"The power to review a case for sentence appropriateness,

including relative uniformity, is vested in the Courts of

Criminal Appeal. . ." United States v. Lacy, 50 M.J. 286, 288

(citations omitted). An appellant must show the Courts of

Criminal Appeal that any cited cases are "'closely related'" and

that the sentences are "highly disparate." Id. at 288 (citation

omitted); see also United States v. Olinger, 12 M.J. 458, 460

(C.M.A. 1982). If this burden is met, then the Government must

show that there is a "rational basis" for the disparity. Lacy,

50 M.J. at 288; see also United States v. Fee, 50 M.J. 290, 291

(1999); United States v. Sothen, 2001 CAAF LEXIS 11, 5 (January

5, 2001).

## Legal Analysis

Appellant compares his sentence with his two primary co-

conspirators, Specialists Roeseler and Lund, in arguing that his

sentence is disproportionate (appellant's Brief at pp. 11-2).[4]

While these three cases may be "closely related" because the

misconduct focused on PFC Bell's murder, there are "good and

cogent reasons" for any sentence disparity. See United States

v. Alvarado, 1997 CCA LEXIS 170, 3 (A.F. Ct. Crim. App. May 28,

1997) (citation omitted), aff'd in part, modified in part on

---

[4] SPC Roeseler was sentenced to 25 years confinement, which was
reduced to 15 years pursuant to his pre-trial agreement (Allied
Papers, Promulgating Order re: SPC Roeseler, dated 10 December
1999) (Appendix A). SPC Lund was sentenced to 25 years
confinement, which was reduced to 14 years pursuant to his pre-
trial agreement (Allied Papers, Promulgating Order re: SPC Lund,
dated 25 May 1999) (Appendix B).

9

other grounds, 49 M.J. 146 (1998) (Appendix C); see also United States v. Lacy, 50 M.J. 286, 288 (1999) (Government must show rational basis for sentence disparity).

The most striking difference between appellant's culpability and that of his co-conspirators is that appellant is the one who actually pulled the trigger (R. 108). Neither Specialists Roeseler, nor Lund took that final step, although they engaged in other serious criminal conduct (R. 97, 100-02, 105, 147-54, 161-2, 169, PE 1 at pp. 3-6). Cf. United States v. Alvarado, 1997 CCA LEXIS 170 at 3-4 (that appellant digitally penetrated victim and attempted sodomy and intercourse, while his cohort did not, was adequate rationale for sentence disparity).

The egregious nature of appellant's shooting, and resulting near-fatal injuries to PFC Bell (R. 106-9, 252, PE 1 at pp. 5-6), alone, justifies the sentence disparity. See United States v. Schnitzer, 41 M.J. 603, 605 (Army Ct. Crim. App. 1994), sentence set aside on other grounds, 44 M.J. 380 (1996) (despite 14 year sentence difference in closely related cases, nature of crime and extent of injuries (sex crimes and attempted premeditated murder) warranted 29 year sentence).

Additionally, it is clear that appellant was the "mastermind" of all criminal activity against PFC Bell (R. 96-7, 100-06, 147-52, 167-8). It was appellant alone who entered into

10

the contract to kill PFC Bell's "in-laws" (R. 96).  Appellant,

alone, had animosity toward PFC Bell when the contract for

murder fell through (id.).  The other conspirators were enlisted

by appellant to carry out appellant's revenge (PE 1 at p. 1-6,

R. 97, 100-05, 147-54, 161-62, 169).

    Thus, appellant as the "mastermind" provides another

rationale for any sentence disparity.  See United States v.

Turner, 30 M.J. 1276, 1284 (N-M.C.M.R. 1990) (appellant as

"ring-leader" was factor in explaining sentencing disparity);

United States v. Wilson, 1997 CCA LEXIS 391, 4 (A.F. Ct. Crim.

App. July 21, 1997) (Appendix D) (appellant as "mastermind"

justified sentence disparity).

    Indeed, in all likelihood, were it not for appellant's

direction (R. 147-52), none of his co-conspirators would have

initiated any plans or action to murder PFC Bell.  See Turner,

30 M.J. 1276, 1284 (appellant's recruitment of others a factor

bearing on sentence appropriateness); United States v. Sanders,

1998 CCA LEXIS 245, 3 (A.F. Ct. Crim. App. May 12, 1998)

(Appendix E) (that appellant engaged another to initiate his

fraud helped explain the sentence disparity); cf. United States

v. Roland, 1997 CCA LEXIS 444, 4 (A.F. Ct. Crim. App. August 11,

1997) (Appendix F) (that appellant brought drugs onto base and

pressured servicemember to use, was good reason for sentence

disparity).

Finally, appellant pled guilty pursuant to a pre-trial agreement (R. 76, AE X). Based on his crimes, appellant faced confinement for life without parole (R. 64). He bargained for a 35 year limit on his confinement (AE X). Appellant cannot now complain about the fairness of his bargain. Turner, 30 M.J. 1276 at 1284; see also United States v. Hendon, 6 M.J. 171, 175 (C.M.A. 1979) (citation omitted) ("Absent evidence to the contrary, accused's own sentence proposal is a reasonable indication of its probable fairness to him.")

For all the reasons stated herein, appellant is entitled to no relief on this assigned error.

## Sentence Appropriateness and Conclusion

The Government submits that the sentence as approved by the convening authority is appropriate.

WHEREFORE, the Government respectfully submits that the
approved findings and sentence should be affirmed by this
Honorable Court, or in the alternative, as to judicial notice
that this Court take judicial notice of the overlooked
regulations at the appellate level, or order a Dubay hearing so
that a trial judge can take judicial notice of the relevant
facts.

SUSANA E. WATKINS
Captain, JA
Appellate Government Counsel

DANIEL G. BROOKHART
Captain, JA
Appellate Government Counsel

EDITH M. ROB
Lieutenant Colonel, JA
Appellate Government Counsel

DAVID L. HAYDEN
Colonel, JA
Appellate Government Counsel

## CERTIFICATE OF SERVICE AND FILING

I certify that I served or caused to be served a copy of the foregoing on this Honorable court and appellate defense counsel by hand on this the  7th  day of  February  , 2001.

DARLINE D. BOWMAN
Paralegal Specialist
Government Appellate Division
(703) 588-6104

'01 FEB -7 10:43

RECEIVED

14

# Appendix A

Get a Document - by Party Nar    United States AND Sothen

Source: All Sources : / . . . / : Federal and State Caselaw 🌐
Terms: name(united states and sothen) (Edit Search)

*2001 CAAF LEXIS 11, \**

**UNITED STATES**, Appellee v. Galen E. **SOTHEN**, Jr., Aviation Ordnanceman First Class, U.S. Navy, Appellant

No. 00-0200

UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES

2001 CAAF LEXIS 11

October 12, 2000, Argued
January 5, 2001, Decided

**NOTICE: [\*1]** THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

**SUBSEQUENT HISTORY:** As Amended January 11, 2001.

**PRIOR HISTORY:** Crim. App. No. 98-0738. Military Judge: James. D. Rockwell.

**DISPOSITION:** Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant sought review from the judgment of the United States Navy-Marine Corp Court of Criminal Appeals, which affirmed appellant's conviction and sentence, for conspiracy to commit murder and solicitation to commit murder, by the a general court-martial. Appellant claimed that his disparate sentence was affirmed without cogent reasons.

**OVERVIEW:** Appellant entered into an affair and with his lover sought to have his wife murdered. Appellant was convicted by a general court-martial of conspiracy to commit murder, solicitation to commit murder, and adultery. Appellant challenged his sentence on the grounds that it was highly disparate from the sentence received by his civilian co-actor. Appellant's sentence was affirmed by the Court of Criminal Appeals, and appellant sought further review. However, judgment of the criminal appeals court was affirmed. There was legally sufficient justification for the disparity between appellant's and his civilian co-actor's sentences. Appellant's and co-actor's cases were tried in different sovereigns, military and civilian, respectively. Moreover, appellant was convicted of multiple serious offenses and contested the charges against him. Furthermore, the co-actor's sentence was based on a voluntary, negotiated plea agreement and reflected her agreement to testify against appellant. Consequently, appellant's sentence was not an abuse of discretion or a miscarriage of justice.

**OUTCOME:** Judgment affirmed. There was legally sufficient justification for the disparity between appellant's and his civilian co-actor's sentences. Appellant's and co-actor's cases were tried in different sovereigns, military and civilian, respectively. Appellant was convicted of multiple serious offenses and contested the charges against him. The co-actor's sentence was based on a voluntary, negotiated plea agreement.

### CORE CONCEPTS - ♦ Hide Concepts

📄 Criminal Law & Procedure : Sentencing : Appeals
📄 Governments & Legislation : Military & Veterans Affairs : Military Affairs : Armed Services
⚓ Art. 66(c) of the Unif. Code Mil. Justice, 10 U.S.C.S. § 866, provides the Courts of
  Criminal Appeals with broad discretion to determine whether a sentence "should be
  approved," a power that has no direct parallel in the federal civilian sector. The power
  to review a case for sentence appropriateness, which reflects the unique history and
  attributes of the military justice system, includes but is not limited to, considerations of
  uniformity and evenhandedness of sentencing decisions.

📄 Criminal Law & Procedure : Sentencing : Appeals
📄 Governments & Legislation : Military & Veterans Affairs : Military Affairs : Armed Services
⚓ The Courts of Criminal Appeals are required to engage in sentence comparison only in
  those rare instances in which sentence appropriateness can be fairly determined only
  by reference to disparate sentences adjudged in closely related cases.

📄 Criminal Law & Procedure : Sentencing : Appeals
📄 Governments & Legislation : Military & Veterans Affairs : Military Affairs : Armed Services
⚓ An appellant who asks the Court of Criminal Appeals to engage in sentence comparison
  bears the burden of demonstrating that any cited cases are "closely related" to the
  appellant's case, and that the sentences are "highly disparate." If the appellant meets
  that burden, or if the court raises the issue on its own motion, the burden shifts to the
  government to show a rational basis for the disparity.

📄 Criminal Law & Procedure : Sentencing : Appeals
📄 Governments & Legislation : Military & Veterans Affairs : Military Affairs : Armed Services
⚓ Appellate review of decisions by the Courts of Criminal Appeals on issues of sentence
  appropriateness is limited to the narrow question of whether there has been an obvious
  miscarriage of justice or abuse of discretion.

**COUNSEL:** For Appellant: David P. Sheldon (argued); Eugene R. Fidell and Lieutenant Mari-
Rae Sopper, JAGC, USNR (on brief).

For Appellee: Lieutenant Commander Philip Sundel, JAGC, USNR (argued); Colonel Kevin M.
Sandkuhler, USMC (on brief).

Amicus Curiae Urging Reversal: Lieutenant Colonel Adele H. Odegard, Lieutenant Colonel
David A. Mayfield, Major Jonathan F. Potter, and Captain Kevin J. Mikolashek - For the United
States Army Defense Appellate Division.

**JUDGES:** EFFRON, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and
SULLIVAN, GIERKE, and BAKER, JJ., joined.

**OPINIONBY:** EFFRON

**OPINION:**

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant,
contrary to his pleas, of conspiracy to commit murder, two specifications of solicitation to
commit murder, and adultery, in violation of Articles 81 and 134, Uniform Code of Military
Justice, 10 USC §§ 881 and 934, respectively. He was sentenced to a dishonorable discharge,
  **[*2]**  confinement for 25 years, total forfeitures, and reduction to E-1. The convening
authority suspended all adjudged forfeitures greater than $ 600 pay per month for 6 months

and waived the automatic forfeiture of pay for 6 months, directing payment of all such monies via allotment to appellant's wife. The Court of Criminal Appeals affirmed in an unpublished opinion.

On appellant's petition, we granted review of the following issues:

> WHETHER APPELLANT'S APPROVED SENTENCE TO CONFINEMENT CONSTITUTES AN OBVIOUS MISCARRIAGE OF JUSTICE OR AN ABUSE OF DISCRETION BECAUSE HIS SENTENCE OF 25 YEARS WAS MORE THAN EIGHT TIMES GREATER THAN HIS CO-DEFENDANT'S SENTENCE OF 3 YEARS.

> WHETHER THE GOVERNMENT FAILED TO MEET ITS BURDEN TO PROVE A RATIONAL BASIS FOR THE HIGHLY DISPARATE SENTENCES GIVEN TO APPELLANT AND HIS CO-DEFENDANT.

> WHETHER, IN PERFORMING ITS SENTENCE APPROPRIATENESS ANALYSIS GIVEN TWO "CLOSELY RELATED CASES," THE COURT OF CRIMINAL APPEALS ERRED IN DISREGARDING THE SENTENCE OF A CIVILIAN CO-DEFENDANT BECAUSE THE MILITARY AND CIVILIAN SYSTEMS HAVE DIFFERING APPROACHES TO SENTENCING PRINCIPLES AND THE ADMINISTRATION OF PUNISHMENT.

For the reasons set forth below, **[*3]** we affirm the decision of the Court of Criminal Appeals.

I. Background

Appellant, who enlisted in the Navy in 1978, was married in 1979 and remained married to his wife Judy during his military service through the events pertinent to this appeal. In 1995, they purchased a house in her hometown of Knoxville, Tennessee. When appellant received orders to the Naval Support Activity, Memphis, his wife and their son remained in Knoxville while he lived approximately 200 miles away in Memphis. Appellant anticipated retiring and returning to Knoxville upon completion of his assignment at Memphis.

In 1996, appellant entered into an intimate relationship with Ms. Marney Steen while in Memphis. As the relationship deepened, appellant and Steen took steps to terminate appellant's marriage by arranging for the murder of appellant's wife. Appellant, in Ms. Steen's presence, asked James Warthen to commit the murder. Warthen declined, but said that he knew of a person, Baxter Holland, who would do so. Warthen arranged for appellant and Steen to meet with Holland, who, unbeknownst to them, was an informant for the Shelby County Police Department. These arrangements resulted in a series of meetings **[*4]** involving appellant, Steen, and Holland, at which Holland wore a hidden recording device. At these meetings, appellant and Steen engaged in various conversations about the proposed murder, which resulted in the arrest of both appellant and Steen. Steen pled guilty in Tennessee state court proceedings to one count of solicitation to commit murder, which resulted in a sentence to 3 years' confinement and a $ 500 fine. As noted above, appellant's sentence included confinement for 25 years, total forfeitures, reduction to E-1, and a dishonorable discharge.

II. Review of Sentences by the Courts of Criminal Appeals

⊤Article 66(c) of the UCMJ, 10 USC § 866, provides the Courts of Criminal Appeals with broad discretion to determine whether a sentence "should be approved," a power that has no direct parallel in the federal civilian sector. See United States v. Lacy, 50 M.J. 286, 287-88 (1999). The power to review a case for sentence appropriateness, which reflects the unique

history and attributes of the military justice system, includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions. See id.; see also **[*5]** United States v. Boone, 49 M.J. 187, 191-92 (1998).

The Courts of Criminal Appeals are required to engage in sentence comparison only "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." United States v. Ballard, 20 M.J. 282, 283 (CMA 1985)(quoting lower court's unpublished opinion). An appellant who asks the Court of Criminal Appeals to engage in sentence comparison bears the burden of demonstrating that any cited cases are "closely related" to the appellant's case, and that the sentences are "highly disparate." Lacy, supra at 288. If the appellant meets that burden, or if the court raises the issue on its own motion, the burden shifts to the Government to show a rational basis for the disparity. Id.

Our review of decisions by the Courts of Criminal Appeals on issues of sentence appropriateness is limited to the narrow question of whether there has been an "obvious miscarriage[]of justice or abuse[]of discretion." Id., quoting United States v. Dukes, 5 M.J. 71, 73 (CMA 1978).

III. Sentence Comparison by the **[*6]** Court of Criminal Appeals

The Court of Criminal Appeals concluded that appellant's case was "closely related" to that of his civilian co-actor, Ms. Steen. The court also found the respective sentences to be highly disparate. The court concluded, however, that there were "many good and cogent reasons in the record of trial that explain the disparity between the two sentences awarded." Unpub. op. at 6. The court cited the following reasons: (1) the parties were tried by two different sovereigns; (2) while it is appropriate to consider closely related civilian cases, sentence comparison between civilian and military cases is less persuasive than comparison among courts-martial in light of the differences between civilian and military approaches to sentencing and punishment; (3) appellant was convicted of multiple serious offenses, while his co-actor was convicted only of a single count of solicitation; (4) the charges against appellant were contested, while the conviction of the civilian co-actor was based on a voluntary, negotiated plea of guilty; and (5) the sentence of appellant's co-actor reflected the fact that she had agreed to assist the prosecution by testifying against appellant. **[*7]**

Appellant contends that the lower court abused its discretion in affirming his sentence without "cogent reasons." Appellant takes the position that the reasons articulated by the court below do not justify the significant disparity in the sentences, that the court placed too much emphasis on Ms. Steen's guilty plea, and that the court did not give sufficient weight to her culpability or to appellant's record of service. The Government, on the other hand, contends that any deficiency in sentence comparison is immaterial because, in the Government's view, it is not permissible for the Courts of Criminal Appeals to compare military and civilian sentences.

With respect to the Government's argument, we note that there is nothing in the plain language of Article 66, in its legislative history, or in our case law that would preclude the Courts of Criminal Appeals from engaging in sentence comparison when there is a closely related case (e.g., a civilian co-actor) with a highly disparate sentence. To the extent that Article 66's legislative history and much of our case law discuss sentence uniformity within the military justice system, this simply reflects the fact that most closely related **[*8]** cases involve military relationships. It does not preclude consideration of cases involving military and civilian co-actors. With respect to appellant's argument, we note that all of the factors cited by appellant involve pertinent considerations on the question of sentence appropriateness, but they do not demonstrate that the decision of the court below constituted an abuse of discretion or an obvious miscarriage of justice. See Lacy, supra.

The considerations articulated by the court below provide a legally sufficient justification for

the disparity between the two sentences. The court properly considered the treatment of appellant's co-actor under the civilian justice system, and noted a number of variances that could have reasonably accounted for the differential sentences. These factors, specifically enumerated by the court, meet the rational basis standard set forth in Lacy.

IV. Conclusion

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

Source: All Sources : / . . . / : Federal and State Caselaw ⓘ
Terms: name(united states and sothen)  (Edit Search)
View: Full
Date/Time: Wednesday, January 31, 2001 - 2:17 PM EST

About LEXIS-NEXIS | Terms and Conditions


Copyright © 2001 LEXIS-NEXIS Group.  All rights reserved.

# Appendix B

DEPARTMENT OF THE ARMY
Headquarters, V Corps
APO AE 09014

GENERAL COURT-MARTIAL ORDER                    10 December 1999
NUMBER                    47

SPC David M. Roeseler, 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, U.S. Army, A Company, 127th Aviation Support
Battalion, APO AE 09165, was arraigned at Hanau, Germany, on the following offenses at a
general court-martial convened by Commander, V Corps.

Charge I. Article 80. Plea: Guilty. Finding: Guilty.

Specification 1: Attempted premeditated murder with a firearm, at or near Hanau, Germany, on
or about 10 October 1998. Plea: Guilty. Finding: Guilty.

Specification 2: Attempted conspiracy to commit premeditated murder, at or near Hanau,
Germany, between on or about 1 February 1998 and 1 April 1998. Plea: Guilty. Finding:
Guilty

Charge II. Article 81. Plea: Guilty. Finding: Guilty.

The Specification: Conspiracy to commit premeditated murder, at or near Hanau, Germany,
between on or about 1 March 1998 and 10 October 1998. Plea: Guilty, except the words "and
gather information on Private First Class Toni A. Bell's schedule", substituting therefore the
words "and provide information on Private First Class Toni A. Bell". To the excepted words:
Not Guilty. To the substituted words: Guilty. Finding: Guilty.

SENTENCE

Sentence was adjudged on 28 July 1999. To forfeit all pay and allowances, to be reduced to the
grade of Private E1, to be confined for a period of 19 years, and to be discharged from the United
States Army with a dishonorable discharge.

ACTION

Only so much of the sentence as provides for forfeiture of all pay and allowances, reduction to

9 9 0 0 7 6 0

GCMO No 47, HQ V Corps, APO AE 09014, dated 10 December 1999

the grade of E1, confinement for fifteen years, and a dishonorable discharge is approved and, except for the part of the sentence extending to a dishonorable discharge, will be executed.

BY COMMAND OF LIEUTENANT GENERAL RILEY:

DISTRIBUTION:
1  Each Individ concern
1  LTC Wright (MJ)
1  CPT Coyne (TC)
1  CPT Zipf (DC)
1  Cdr, U.S. Army Disciplinary Barracks, Ft. Leavenworth, KS  66027-1363
1  Cdr, A Co, 127th Avn Sup Bn, APO AE  09165
1 Cdr,  127th Avn Sup Bn, APO AE  09165
1  Cdr, Det A, 55th PSB, (Attn: Records Section), APO AE  09165
2  SJA, V Corps, APO AE  09014
1  Record Set
1  Reference Set
1  Cdr, HQ Det, 39th Finance Battalion, APO AE  09165
1  Cdr, USAEREC, ATTN: PCRE-FS, Fort Benjamin Harrison, IN  46249
10 Clerk of Court (JALS-CC), Nassif Bldg, Falls Church, VA  22041-5013

EVAN B. WYNN
SFC, USA
NCOIC, Criminal Law Division

2

# Appendix C

DEPARTMENT OF THE ARMY
Headquarters V Corps
APO AE 09014

GENERAL COURT-MARTIAL ORDER                                     25 May 1999
NUMBER                              23

SPC Jeremy J. Lund, 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, U.S. Army, A Company, 127th Aviation Support Battalion, APO AE 09165, was arraigned at Mannheim, Germany, on the following offenses at a general court-martial convened by Commander V Corps.

Charge I. Article 80. Plea: Guilty. Finding: Guilty.

The Specification. Attempted premeditated murder with a firearm, at Hanau, Germany, on or about 10 October 1998. Plea: Guilty. Finding: Guilty.

Charge II. Article 81. Plea: Guilty. Finding: Guilty.

The Specification. Conspiracy to commit premeditated murder, at Hanau, Germany, between on or about 1 March 1998 and on or about 10 October 1998. Plea: Guilty. Finding: Guilty.

SENTENCE

Sentence was adjudged on 14 January 1999. To be reduced to the grade of E1, to forfeit all pay and allowances, to be confined for 25 years, and to be discharged from the service with a dishonorable discharge.

ACTION

Only so much of the sentence as provides for reduction to the grade of E1, forfeiture of all pay and allowances, confinement for 14 years, and a dishonorable discharge is approved and, except for the part of the sentence extending to a dishonorable discharge, will be executed.

BY COMMAND OF LIEUTENANT GENERAL HENDRIX:

DISTRIBUTION:                              AMY M. FRISK
1  Each Individ concern                    LTC, JA
1  COL Peter E. Brownback III (MJ)         Chief, Criminal Law Division
1  CPT Carlene Christie (TC)
1  MAJ Craig Meredith (ATC)

# Appendix D

Source: All Sources : Combined Federal & State Case Law - U.S. : Federal and State Caselaw 🛈
Terms: military and sentence w/10 disparate w/10 closely  (Edit Search)

*1997 CCA LEXIS 170, \**

UNITED STATES v. Airman Basic SEAN C. ALVARADO, United States Air Force

ACM 32305

UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

1997 CCA LEXIS 170

May 28, 1997, Decided

**PRIOR HISTORY: [\*1]**  Sentence adjudged 19 April 1996 by GCM convened at Sheppard Air Force Base, Texas. **Military** Judge: Linda S. Murnane. Approved sentence: Bad-conduct discharge and confinement for 15 months.

**DISPOSITION:** AFFIRMED.

**CORE TERMS:** sentence, confinement, severe, consensual, sodomy, disparate, appropriateness, intercourse, intoxicated, penetrated, forfeiture, digitally, breasts, floor, sex

**COUNSEL:** Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, Major Gerald R. Bruce, and Captain W. Craig Mullen.

Appellate Counsel for the United States: Colonel Theodore J. Fink and Captain Libby A Brown.

**JUDGES:** Before ROTHENBURG, SCHREIER, and STARR, Appellate **Military** Judges.

**OPINION:**

PER CURIAM:

Appellant was initially charged with rape, attempted forcible sodomy, and indecent assault. Contrary to his pleas, members convicted appellant of attempted consensual sodomy and indecent acts and sentenced him to a bad-conduct discharge and confinement for two years. The convening authority reduced the confinement to 15 months but otherwise approved the sentence. Appellant now argues that his sentence is too severe and that Articles 57 and 58b, UCMJ, violate the *ex post facto* clause of the United States Constitution. Finding no error, we affirm.

A brief recitation of the facts is necessary to set the stage for our analysis of the sentence  **[\*2]** appropriateness issue. Five airmen (four male and one female) rented a motel room to drink, relax, and get away from the base. During the course of the evening alcohol was consumed and JB, the female victim, became intoxicated. She was dizzy and laid down on the floor. She said she blacked out. While the other two men were out of the room, appellant and Airman Perez lifted JB from the floor to the bed, kissed her, and fondled her breasts. Then appellant attempted intercourse and anal sodomy and digitally penetrated her. JB testified that she was vaguely aware of what was happening and described appellant's actions. However, she was unable to call out or do anything apparently because of her intoxicated state. The other two men returned and one of them broke up the situation when he saw that JB was nonresponsive.

Appellant argues that his sentence is too severe for two reasons. First, Airman Perez was court-martialed for his part in the incident and received a sentence of only 100 days confinement, forfeitures, and a reprimand. Appellant argues that we must compare sentences and reduce his to a level comparable to Airman Perez. Next, appellant argues that the sentence is too severe  **[\*3]**  for consensual sex.

An appellant's **sentence** may be compared to **sentences** in other cases only when there are highly **disparate sentences** in **closely** related cases. _United States v. Olinger, 12 M.J. 458, 460 (C.M.A. 1982)._ Once this threshold requirement is met, the reviewing court must determine if there are good and cogent reasons for the sentence disparity. _United States v. Kent, 9 M.J. 836, 839 (A.F.C.M.R. 1980)._ Sentence comparison is but one aspect of the total picture used to determine the appropriateness of a particular sentence. _United States v. Snelling, 14 M.J. 267, 268 (C.M.A. 1982)._

This court has reviewed the General Court-Martial Order concerning Airman Perez. _Compare United States v. Brock, 4 M.J. 11 (1997)._ We find that his offense is closely related to appellant's case. They involve the same woman, at the same time and place, and initially they acted in unison with both of them kissing her and fondling her breasts. We further note that their sentences are highly disparate in that Airman Perez received no punitive discharge, 100 days confinement, and a forfeiture. However, the facts of this case provide more than sufficient explanation  **[\*4]**  for the difference in sentence. Appellant digitally penetrated JB and he attempted both intercourse and sodomy. The other offender did not take such liberties with the victim.

Next, appellant argues that his sentence is too severe for consensual acts. In many cases, appellant's argument, taken in isolation, might be persuasive. However, the failure of the members to convict on the forcible aspect of appellant's offenses does not convert this incident to one involving mutually participating lovers enjoying private recreational sex. We must still consider the facts and circumstances surrounding this incident. _United States v. Snelling, 14 M.J. at 268._ Having considered those facts as well as appellant's youth, we are nonetheless persuaded that appellant's sentence is not inappropriate. _United States v. Peoples, 29 M.J. 426 (C.M.A. 1990)._

We have previously resolved the _ex post facto_ issue adversely to appellant. _United States v. Pedrazoli, 45 M.J. 567 (A.F. Ct. Crim. App. 1997)._

After examining the record of trial, the assignment of errors, and the government's reply, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate,  **[\*5]**  and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Source: All Sources : Combined Federal & State Case Law - U.S. : Federal and State Caselaw
Terms: military and sentence w/10 disparate w/10 closely  (Edit Search)
View: Full
Date/Time: Monday, January 22, 2001 - 12:40 PM EST

Copyright © 2001 LEXIS-NEXIS Group.  All rights reserved.

Search - 102 Results - military and sentence w/10 disparate w/10 closely

# Appendix E

Source: <u>All Sources</u> : <u>Combined Federal & State Case Law - U.S.</u> : **Federal and State Caselaw** 🛈
Terms: **military and sentence w/10 disparate w/10 closely**  (<u>Edit Search</u>)

*1997 CCA LEXIS 391, ***

UNITED STATES v. Airman Basic DESMOND Q. WILSON, United States Air Force

ACM 32347

UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

1997 CCA LEXIS 391

July 21, 1997, Decided

**PRIOR HISTORY:  [*1]**  Sentence adjudged 20 February 1996 by GCM convened at Malmstrom Air Force Base, Montana. **Military** Judge: Martha H. Bowers. Approved sentence: Dishonorable discharge and confinement for 5 years.

**DISPOSITION:** Findings of guilty and the sentence, as modified, AFFIRMED.

**CORE TERMS:** sentence, confinement, military, pamphlet, disparate, dishonorable discharge, convicted, larceny, severe, appropriateness, credit cards, reassessed, mastermind, sentencing, forfeitures, partial, admit

**COUNSEL:** Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, Major Gerald R. Bruce, Captain W. Craig Mullen, and Captain Earl F. Martin.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, Major Allen G. Erickson, and Captain Mitchel Neurock.

**JUDGES:** Before ROTHENBURG, SCHREIER, and STARR, Appellate **Military** Judges. Chief Judge ROTHENBURG and Judge STARR concur.

**OPINIONBY:** SCHREIER

**OPINION:**

OPINION OF THE COURT

SCHREIER, Senior Judge:

Contrary to his pleas, members convicted appellant of attempted larceny, conspiracy, three specifications of larceny, and forgery. He was sentenced to a dishonorable discharge and 5 years confinement. Appellant asserts two errors arguing that the **military** judge erred in not admitting certain sentencing evidence and that his sentence is too severe. We agree that his sentence is too severe and reassess.  [*2]

Appellant and several others falsified credit card applications using the names of **military** officers. They obtained temporary credit cards and used these cards to purchase items totalling approximately $ 1600. Several of the others identified appellant as the mastermind of the scheme. Although appellant denied guilt, he was found guilty of all charges.

During sentencing, trial defense counsel offered a pamphlet titled "Beyond Crime and Punishment--Restorative Justice." The pamphlet was produced by the Prison Fellowship organization and contained their vision of justice based on biblical principles. The **military**

judge refused to admit the pamphlet. Appellant now asserts this was error.

A trial judge's decision to exclude evidence is reviewed under an abuse of discretion standard. _United States v. Murphy_, 26 M.J. 454, 457 (C.M.A. 1988). Mitigation evidence is evidence which will be helpful to the court in determining an appropriate sentence or will serve as a ground for a later recommendation of clemency. _United States v. Simmons_, 44 M.J. 819, 822 (A.F. Ct. Crim. App. 1996).

The pamphlet in question provides a general philosophical approach to justice. There is but one **[*3]** brief reference to the relationship between imprisonment and those who commit property crimes. There is nothing specific to appellant's case, the **military** justice system, or **military** confinement facilities. Under the circumstances of this case, we concur with the **military** judge's decision that the evidence was not relevant and was not admissible.

Next, appellant argues that his sentence is too severe and urges that we compare his sentence to that of two of his companions who were convicted of substantially the same offenses. One received a bad-conduct discharge, two years confinement, and partial forfeitures of pay. Another received a bad conduct discharge, two months confinement, and partial forfeitures of pay.

**Sentence** appropriateness is determined without reference to other cases unless there are highly **disparate sentences** in **closely** related cases. _United States v. Olinger_, 12 M.J. 458, 460 (C.M.A. 1982). If the cases are closely related, the reviewing court must determine if there are good and cogent reasons for the sentence disparity. _United States v. Kent_, 9 M.J. 836, 839 (A.F.C.M.R. 1980). Sentence comparison is but one aspect of the total picture used to determine **[*4]** the appropriateness of a particular sentence. _United States v. Snelling_, 14 M.J. 267, 268 (C.M.A. 1982).

All three airmen were part of the same conspiracy to commit larceny and, on occasion, were together when the fraudulent credit cards were used. We find that the cases are **closely** related. Moreover, we find that the **sentences** are highly **disparate** in that appellant's **sentence** to confinement and dishonorable discharge is substantially higher than the **sentences** of the others. However, the facts provide some explanation for the disparate sentences. Appellant was the alleged "mastermind" of the scheme, recruited the others to join him, and was convicted of more offenses than the others. Furthermore, appellant did not admit his offenses as the others did. Nonetheless, we do not believe that these facts are sufficient to justify the substantial differences in the sentences. We find appropriate only so much of the sentence as includes a dishonorable discharge and confinement for 48 months. _United States v. Healy_, 26 M.J. 394 (C.M.A. 1988).

After examining the record of trial, the assignment of errors, and the government's reply, we conclude that the findings and the sentence, **[*5]** as reassessed, are correct in law and fact, the sentence, as reassessed, is appropriate, and no error prejudicial to appellant's substantial rights has occurred. Accordingly, the findings of guilty and the sentence, as modified, are AFFIRMED.

Chief Judge ROTHENBURG and Judge STARR concur.

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2001 LEXIS-NEXIS Group.  All rights reserved.

# Appendix F

Source: All Sources : Combined Federal & State Case Law - U.S. : Federal and State Caselaw ⓘ
Terms: military and sentence w/10 disparate w/10 closely  (Edit Search)

*1998 CCA LEXIS 245, *￼

UNITED STATES v. Airman First Class KYLE L. SANDERS, United States Air Force

ACM S29469

UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

1998 CCA LEXIS 245

May 12, 1998, Decided

**NOTICE: [*1]** NOT FOR PUBLICATION

**PRIOR HISTORY:** Sentence adjudged 31 July 1997 by SPCM convened at Lackland Air Force Base, Texas. **Military** Judge: Amy M. Bechtold.

Approved sentence: Bad-conduct discharge, confinement for 3 months, and reduction to E-1.

**DISPOSITION:** AFFIRMED.

**CORE TERMS:** sentence, co-conspirator, confinement, lease, forged document, bad-conduct, reduction, disparate, cogent, grade, pet, apartment manager, permanent change, fraudulent, station, unduly, severe, duty

**COUNSEL:** Appellate Counsel for Appellant: Colonel Douglas H. Kohrt and Lieutenant Colonel Kim L. Sheffield, and Major Michael C. Barrett.

Appellate Counsel for the United States: Colonel Brenda J. Hollis, and Lieutenant Colonel Michael J. Breslin, and Captain Tony R. Roberts.

**JUDGES:** Before ROTHENBURG, SENANDER, and SPISAK, Appellate **Military** Judges.

**OPINION:**

PER CURIAM:

The appellant was convicted, in accordance with his pleas, by a special court-martial composed of officer members, of conspiracy to present a forged document and uttering a forged document. Articles 81 and 123, UCMJ, 10 U.S.C. §§ 881, 923 (1994). His approved sentence is a bad-conduct discharge, 3 months confinement, and reduction to the grade of E-1. The appellant asserts his sentence is disproportionate when compared to his co-conspirator. We find his sentence appropriate and affirm.

FACTS

The appellant signed a lease for an apartment for his wife and himself. A **[*2]** few months later she moved out and divorced him. He was ordered to pay most of the marital debts and shortly thereafter he lost his second job. He attempted to move to another apartment unit in the same apartment complex in order to reduce his rent, but the apartment manager would not release him from his lease. The appellant sought the assistance of Senior Airman M who prepared fraudulent permanent change of station orders for the appellant. The appellant presented the fraudulent travel orders to the apartment manager who released him from his

lease.

SENTENCE APPROPRIATENESS

The appellant alleges that his sentence was inappropriate and unduly severe. He contends that because his co-conspirator received only hard labor without confinement for 90 days and a reprimand, his own sentence which includes both confinement and a bad-conduct discharge, is unduly severe. We do not agree.

We will **closely** examine a **sentence** for appropriateness when there is a **closely** related case in which a highly **disparate sentence** was imposed and there is no "good and cogent reason for the difference in punishment." _United States v. Thorn_, 36 M.J. 955, 959 (A.F.C.M.R.), _pet. denied_, 38 M.J. 226 **[*3]** (C.M.A. 1993); _United States v. Kent_, 9 M.J. 836, 838-839 (A.F.C.M.R. 1980). However, the sentence must also be judged on an individual basis, taking into consideration both the nature and seriousness of the offenses involved and the offender's character. _United States v. Snelling_, 14 M.J. 267, 268 (C.M.A. 1982). The weight to be given any sentence comparison is left to the discretion of the reviewing court. _United States v. Ballard_, 20 M.J. 282 (C.M.A. 1985); _United States v. Chenery_, 29 M.J. 565 (A.F.C.M.R. 1989), _pet. denied_, 30 M.J. 218 (C.M.A. 1990).

Applying these principles to the appellant's case, we find that sentence comparison does not benefit the appellant. On its face, the sentences of these two conspirators is disparate, but a closer look at the record clearly reveals the basis for the difference in sentence. The appellant initiated the idea of deceiving his landlord by having another airman fraudulently prepare permanent change of station orders for his benefit. In addition, the appellant's past record reflects this same character defect of dishonesty. He received an Article 15, UCMJ, punishment in 1994 for stealing food from the in-flight kitchen. **[*4]** More recently, he received an Article 15 punishment for dereliction in the performance of his duties by improperly using the American Express Government Charge Card for personal cash advances not related to temporary duty. He also failed to repay American Express for several months and was again punished with a vacation of a suspended reduction in grade imposed as part of the previous Article 15 punishment. On the other hand, his co-conspirator had a good record which was marred by only two letters of counseling. Therefore, we find there are "good and cogent" reasons for the appellant's sentence and that it is appropriate.

CONCLUSION

We conclude the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Source: <u>All Sources</u> : <u>Combined Federal & State Case Law - U.S.</u> : **Federal and State Caselaw**
Terms: **military and sentence w/10 disparate w/10 closely** (<u>Edit Search</u>)
View: Full
Date/Time: Monday, January 22, 2001 - 12:21 PM EST

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2001 LEXIS-NEXIS Group.  All rights reserved.

# Appendix G

Source: All Sources : Combined Federal & State Case Law - U.S. : Federal and State Caselaw ⓘ
Terms: military and sentence w/10 disparate w/10 closely  (Edit Search)

*1997 CCA LEXIS 444, \**

UNITED STATES v. Airman JASON S. ROLAND, United States Air Force

ACM 32485

UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

1997 CCA LEXIS 444

August 11, 1997, Decided

**PRIOR HISTORY:** **[\*1]**  Sentence adjudged 30 October 1996 by GCM convened at McChord Air Force Base, Washington. **Military** Judge: Willard L. Pope, Jr. (sitting alone). Approved sentence: Bad-conduct discharge, confinement for 9 months, and reduction to E-1.

**DISPOSITION:** AFFIRMED.

**CORE TERMS:** sentence, methamphetamine, grade, court-martial, military, enlisted, specification, multiplicious, serving, convening, convicted, multiplicity, military installation, disparate, pet, sentencing, commander, nominate, senior, bought, staff, master sergeant, wrongful use, multiplication, culpability, confinement, duplicative, misconduct, reduction, sergeant

**COUNSEL:** Appellate Counsel for Appellant: Lieutenant Colonel Kim L. Sheffield and Captain Marge A. Overly.

Appellate Counsel for the United States: Major LeEllen Coacher and Major Allen G. Erickson.

**JUDGES:** Before ROTHENBURG, GAMBOA, and SENANDER, Appellate **Military** Judges. Chief Judge ROTHENBURG and Judge GAMBOA concur.

**OPINIONBY:** SENANDER

**OPINION:**

OPINION OF THE COURT

SENANDER, Judge:

The appellant was convicted, in accordance with his pleas, by a general court-martial composed of officer and enlisted members, of wrongful use, wrongful distribution and wrongful introduction of methamphetamine onto a **military** installation. Article 112a, UCMJ, 10 U.S.C. § 912a (1994). His approved sentence is a bad-conduct discharge, confinement for 9 months, and reduction to E-1. The appellant asserts four errors. We find no error and affirm.

The appellant invited Airman (Amn) CBD to go to an off-base bar to celebrate Amn CBD's 21st birthday. They arrived **[\*2]** around midnight and stayed for two hours. The appellant admitted to the Air Force Office of Special Investigations (AFOSI) that he went to the rest room and bought one methamphetamine pill for $ 19.00 from an unknown individual. The appellant claims he only went back and bought the drug after Amn CBD asked him to see if the individuals in the rest room would sell them methamphetamine. Amn CBD testified that

he was unaware of any drug use at the bar and first saw the appellant crushing a pill near the medicine cabinet after they returned to the appellant's dormitory room.

Amn CBD testified that he declined to use the methamphetamine when first asked. The appellant then cut two lines of the drug and snorted one. According to Amn CBD, the appellant then said, "that I had to do it now because he already did. He thought that I might tell or whatever. I might sell him out. So after a little more argument I gave in and I did it also."

Amn CBD was convicted, by a special court-martial, of wrongful use of methamphetamine and sentenced to hard labor without confinement for 3 months, reduction to the grade of E-1, and restriction to base for 2 months.

## I. SENTENCE APPROPRIATENESS

The appellant's **[*3]** first assertion of error is that his sentence is inappropriately severe when compared to the sentence of Amn CBD, who he claims committed the same offense. The standard of review in determining sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. _United States v. Healy_, 26 M.J. 394 (C.M.A. 1988). Sentence appropriateness is to be determined without reference or comparison to **sentences** in other cases unless there are highly **disparate sentences** in connected or **closely** related cases. _United States v. Olinger_, 12 M.J. 458, 460 (C.M.A. 1982); _United States v. Gill_, 40 M.J. 835, 837 (A.F.C.M.R. 1994), _pet. denied_, 42 M.J. 100 (1995).

We have indicated **disparate sentences** would be examined **closely** when (1) there is a direct correlation between each of the accused and their respective offenses, (2) the sentences are highly disparate, and (3) there are no good and cogent reasons for the difference in punishment. _United States v. Kent_, 9 M.J. 836, 838-39 (A.F.C.M.R. 1980). The appellant's misconduct is not the same as Amn CBD's misconduct in that he has been convicted of wrongful introduction **[*4]** of methamphetamine onto a **military** installation and wrongful distribution of methamphetamine. Simplistically, it can be argued that they shared the same tablet of methamphetamine, but the court members had good reason to view the appellant's culpability as greater because he bought it, brought it onto the base and pressured Amn CBD to use the methamphetamine. We find a significant difference in their offenses and culpability and will not engage in sentence comparison. We do not find the sentence inappropriate.

## II. COURT MEMBER SELECTION

The appellant moved for dismissal of the charges or a stay in the proceedings until a proper jury selection could be made. He asserted that enlisted members below the grade of E-5 were impermissibly excluded from consideration as court members in his case. The basis of his assertion was an August 21, 1996 letter from the staff judge advocate to commanders of six different organizations on McChord Air Force Base (AFB) asking for court member nominations. The letter advised the commanders to nominate their best people and to use age, education, training, experience, length of service and judicial temperament as the criteria. The letter referenced **[*5]** Article 25, UCMJ, as the source of the criteria. The letter then requested each organization to nominate a certain number of individuals serving in specific grades. For instance, the 62 Logistics Group was requested to nominate 5 individuals serving in the grade of O-4 through O-6, 5 individuals serving in the grade of O-1 through O-3, 6 individuals serving in the grade of E-8 through E-9 and 12 individuals serving in the grade of E-5 through E-7. There was no request for individuals serving in lower grades to be included in the court member pool.

The **military** judge found no evidence of improper motive on the part of anyone or any attempt to affect the outcome of this or any other court-martial by the nomination system

used at McChord AFB. He relied on the stipulation of expected testimony of the special court-martial convening authority in which Colonel McNabb related that he was aware of his ability to select court members of any rank senior to the appellant and chose not to do so. The October 24, 1996 memorandum to the general court-martial convening authority requesting him to chose four names from the six enlisted members submitted, stated in bold print, "You may replace any **[*6]** of the proposed enlisted members with another enlisted member under your command or made available by his or her commander and who meets the above-mentioned Article 25 criteria."

The question of whether a court panel has been selected free from institutional bias is a question of law reviewed *de novo* by this Court. *United States v. Beehler*, 35 M.J. 502 (A.F.C.M.R. 1992), *pet. denied*, 38 M.J. 174 (C.M.A. 1993). We find no evidence that the general court-martial convening authority chose members on any basis other than the Article 25(d)(2) criteria. It is not improper for the convening authority to look to officers or enlisted members of senior rank because they are more likely to be best qualified by reason of age, education, training, experience, length of service and judicial temperament. *United States v. Townsend*, 12 M.J. 861, 862 (A.F.C.M.R. 1981). The convening authority chose a senior master sergeant, a master sergeant and two staff sergeants as the enlisted membership of the appellant's court-martial. One of the staff sergeants had only 18 months time in grade. This certainly reflects a balanced court-martial panel and not one designed to achieve a particular **[*7]** result. This error is without merit.

III. MULTIPLICITY

The appellant asserts the **military** judge erred in failing to rule that specification 1, wrongful distribution of methamphetamine, and specification 3, wrongful introduction of methamphetamine onto a **military** installation with intent to distribute, were multiplicious for findings. The appellant pled guilty to both offenses and did not raise an objection to the offenses being multiplicious. During the sentencing phase of the trial he requested the **military** judge find the two specifications multiplicious for sentencing purposes. The **military** judge granted the motion and instructed the court members that specification 1 and 3 should be considered one transaction for sentencing purposes.

Multiplicity claims are effectively waived by unconditional guilty pleas, except where the record shows that the challenged offenses are "facially duplicative." *United States v. Lloyd*, 46 M.J. 19, 20 (1997). We find the two specifications at issue are not facially duplicative. Even though they involve the same methamphetamine, these are two separate offenses which are distinct in time and place. The wrongful introduction offense was complete **[*8]** when the appellant entered the installation and the distribution occurred later. Each offense could be committed without committing the other.

Decisions of the Court of Appeals for the Armed Forces and this Court have eliminated multiplicity for sentencing as a distinct multiplicity subissue. *United States v. Morrison*, 41 M.J. 482, 483-84 (1995); *United States v. Lenoir*, 39 M.J. 751, 752 (A.F.C.M.R.), *pet. denied*, 40 M.J. 276 (C.M.A. 1994). To the extent the **military** judge considered these two specifications multiplicious in the constitutional sense, he erred. Just because two offenses may not be multiplicious, and may fairly and constitutionally be charged and be convicted upon separately without offending the constitutional precepts of *United States v. Blockburger*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932), *Ball v. United States*, 470 U.S. 856, 84 L. Ed. 2d 740, 105 S. Ct. 1668 (1985), and *United States v. Teters*, 37 M.J. 370 (C.M.A. 1993), a **military** judge may nonetheless exercise his inherent equitable authority to adjust the maximum sentence based upon the admonition in R.C.M. 307(c)(4) (Discussion) against unreasonable multiplication of charges. *United States v. Earle*, ___ M.J. ___, 1997 CCA LEXIS 171, ACM 32366, (A.F. Ct. Crim. **[*9]** App. May 29, 1997). We find the two specifications were not constitutionally multiplicious but that the **military** judge was free to find charging both to be an unreasonable multiplication of charges.

## IV. EX POST FACTO

The appellant asserts that the change to Article 57 and the addition of Article 58b, UCMJ, violate the *Ex Post Facto* Clause of the Constitution. That issue has been previously resolved adverse to the appellant. *United States v. Pedrazoli*, 45 M.J. 567 (A.F. Ct. Crim. App. 1997).

## V. CONCLUSION

We conclude the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Chief Judge ROTHENBURG and Judge GAMBOA concur.

Source: All Sources : Combined Federal & State Case Law - U.S. : Federal and State Caselaw ⓘ
Terms: **military and sentence w/10 disparate w/10 closely**  (Edit Search)
View: Full
Date/Time: Monday, January 22, 2001 - 12:30 PM EST

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2001 LEXIS-NEXIS Group.  All rights reserved.